Nicole Perry, Esq., *Pro Hac Vice*
JONES DAY
717 Texas Street, Suite 3300
Houston, TX 77002
Telephone: (832) 239-3939
Facsimile: (832) 239-3600
Email: nmperry@jonesday.com

Bethany Biesenthal, Esq., *Pro Hac Vice*
Allison McQueen, Esq., *Pro Hac Vice*
JONES DAY
110 North Wacker Drive, Suite 4800
Chicago, IL 60606
Telephone: (312) 782-3939
Facsimile: (312) 782-8585
Email: bbiesenthal@jonesday.com
        amcqueen@jonesday.com

Emily F. Knox (State Bar No. 307035)
JONES DAY
555 California Street, 26th Floor
San Francisco, CA 94104
Telephone:    (415) 626-3939
Facsimile:    (415) 875-5700
Email: egoldbergknox@jonesday.com

Attorneys for Defendant
*Hilton Domestic Operating Company Inc.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| JANE DOE (K.R.D.),<br><br>Plaintiff,<br><br>v.<br><br>HILTON DOMESTIC OPERATING COMPANY INC., et al.,<br><br>Defendants. | Case No. 5:24-cv-06993-PCP-VKD<br><br>**DEFENDANT HILTON DOMESTIC OPERATING COMPANY INC.'S MOTION TO DISMISS THE COMPLAINT UNDER RULE 12(B)(6)**<br><br>**ORAL ARGUMENT REQUESTED**<br><br>Date: February 20, 2025<br>Time: 10:00 a.m.<br>Judge: Hon. P. Casey Pitts.<br>Courtroom: 8 |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**NOTICE OF MOTION AND MOTION**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on February 20, 2025 at 10:00 a.m., or as soon thereafter as counsel may be heard, counsel will appear for a hearing in Courtroom 8 of this Court, located at 280 South First Street, San Jose, CA, 95113, before the Honorable P. Casey Pitts.

Defendant Hilton Domestic Operating Company, Inc. ("Hilton") moves for an order dismissing Plaintiff's Complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).

This motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, any reply memorandum Hilton may file, any arguments of counsel, and any other matter that the Court deems appropriate.

Dated: January 6, 2025

Respectfully submitted,

JONES DAY

By:  */s/ Nicole M. Perry*
        Nicole M. Perry

Attorney for Defendant
HILTON DOMESTIC OPERATING
COMPANY INC.

HILTON'S MOT. TO DISMISS COMPLAINT
CASE NO. 5:24-cv-060993-PCP-VKD

# TABLE OF CONTENTS

**Page**

RELIEF REQUESTED ................................................................................................ 1

STATEMENT OF ISSUES TO BE DECIDED ........................................................... 1

INTRODUCTION ....................................................................................................... 1

BACKGROUND ......................................................................................................... 3

LEGAL STANDARD .................................................................................................. 6

ARGUMENT ............................................................................................................... 6

I.      Plaintiff Has No Viable "Participant" Claim. ................................................. 7

        A.      Plaintiff Does Not Plausibly Allege Participation in Any Venture That
                Trafficked Her. .................................................................................... 7

        B.      Plaintiff Does Not Plausibly Allege Actual or Constructive Knowledge of a
                TVPRA Violation. ............................................................................... 12

II.     Plaintiff Has No Viable "Perpetrator" Claim Against Hilton. ...................... 16

III.    Plaintiff Has No "Vicarious Liability" Claim Against Hilton. ...................... 18

CONCLUSION ........................................................................................................... 19

1

## **<u>TABLE OF AUTHORITIES</u>**

2

**Page**

3

4

**CASES**

*A.B. v. Hilton Worldwide Holdings Inc.*,
   484 F. Supp. 3d 921 (D. Or. 2020) ........................................ 3, 12, 14, 18

*A.B. v. Wyndham Hotel & Resorts, Inc.*,
   532 F. Supp. 3d 1018 (D. Or. 2021) ................................................ 9

*A.S. v. Wyndham Hotels & Resorts*,
   No. 6:23-cv-00033-C (N.D. Tex. June 10, 2024) ............................ 11

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ....................................................................... 6

*B.J. v. G6 Hosp., LLC*,
   2023 WL 3569979 (N.D. Cal. May 19, 2023) ......................... passim

*B.J. v. G6 Hosp., LLC*,
   2023 WL 6120682 (N.D. Cal. Sept. 18, 2023) ........................... 3, 18

*B.M. v. Wyndham Hotels & Resorts, Inc.*,
   2020 WL 4368214 (N.D. Cal. July 30, 2020) .................................. 9

*Bell Atl. v. Twombly*,
   550 U.S. 544 (2007) ....................................................................... 6

*C.K. v. Wyndham Hotels & Resorts, Inc.*,
   No. 3:19-cv-01412 (M.D. Fla. July 7, 2020) .................................... 3

*D. v. MGM Resorts Int'l*,
   2024 WL 4839744 (D. Nev. Nov. 19, 2024) .................................. 18

*Does I thru XXIII v. Adv. Textile Corp.*,
   214 F.3d 1058, 1069 (9th Cir. 2000)............................................... 1

*Doe #1 v. Red Roof Inns, Inc.*,
   21 F.4th 714 (11th Cir. 2021).................................................. passim

*Doe 1 v. Apple Inc.*,
   96 F.4th 403 (D.C. Cir. 2024) ....................................... 8, 9, 12, 16

*Doe 1 v. Red Roof Inns, Inc.*,
   2020 WL 1872335 (N.D. Ga. Apr. 13, 2020) .................................. 3

*Doe 2 v. Red Roof Inns, Inc.*,
   2020 WL 1872337 (N.D. Ga. Apr. 13, 2020) .................................. 3

*Doe 3 v. Red Roof Inns, Inc.*,
   2020 WL 1872333 (N.D. Ga. Apr. 13, 2020) .................................. 3

*Doe 4 v. Red Roof Inns, Inc.*,
   2020 WL 1872336 (N.D. Ga. Apr. 13, 2020) .................................. 3

*Doe (K.B.) v. G6 Hosp., LLC*,
   2023 WL 8650785 (N.D. Ga. Dec. 14, 2023) .................................. 9

*Doe (K.S.) v. Brisam Clinton, LLC*,
   No. 1:23-cv-04032 (S.D.N.Y. June 26, 2023) .................................. 3

*Does 1-6 v. Reddit, Inc.*,
   51 F.4th 1137 (9th Cir. 2022)..................................................... 7, 15

*G.G. v. Salesforce.com*,
   76 F.4th 544 (7th Cir. 2023)................................................ 8, 10, 15

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

HILTON'S MOT. TO DISMISS COMPLAINT
CASE NO. 5:24-CV-060993-PCP-VKD

*G.N.C. v. Uniquest Hosp.*,
  2024 WL 4149251 (S.D.N.Y. Sept. 11, 2024) ................................................................. 3, 18

*Gustafson v. Alloyd Co., Inc.*,
  513 U.S. 561 (1995) ......................................................................................................... 16

*H.G. v. Inter-Cont'l Hotels Corp.*,
  489 F. Supp. 3d 697 (E.D. Mich. 2020) ............................................................................ 5

*In re Century Alum. Co. Sec. Litig.*,
  729 F.3d 1104, 1108 (9th Cir. 2013) ............................................................................... 13

*In re Countrywide Fin. Corp.*,
  601 F. Supp. 2d 1201 (S.D. Cal. 2009) ...................................................................... 11, 12

*J.B. v. G6 Hosp., LLC*,
  2020 WL 4901196 (N.D. Cal. Aug. 20, 2020) ..................................................... 12, 14, 17

*J.C. v. Choice Hotels Int'l, Inc.*,
  2020 WL 6318707 (N.D. Cal. Oct. 28, 2020) .................................................................. 15

*J.G. v. Northbrook Indus., Inc.*,
  619 F. Supp. 3d 1228 (N.D. Ga. 2022) ....................................................................... 5, 14

*K.H. v. Riti, Inc.*,
  2024 WL 505063 (11th Cir. Feb. 9, 2024) ............................................................ 9, 11, 15

*K.R.D. v. Hilton Resorts Corp.*,
  No. 5:24-cv-03499 (N.D. Cal. June 10, 2024) ............................................................... 2, 3

*L.H. v. Marriott Int'l, Inc.*,
  604 F. Supp. 3d 1346 (S.D. Fla. 2022) .......................................................................... 3, 9

*M.A. v. Wyndham Hotels & Resorts, Inc.*,
  425 F. Supp. 3d 959 (S.D. Ohio 2019) ........................................................................... 15

*Noble v. Weinstein*,
  335 F. Supp. 3d 504 (S.D.N.Y. 2018) ............................................................................ 16

*Ratha v. Phatthana Seafood Co., Ltd.*,
  2017 WL 8293174 (C.D. Cal. Dec. 21, 2017) ................................................................ 16

*Reyes v. Waples Mobile Home Park Ltd. P'ship*,
  91 F.4th 270 (4th Cir. 2024) ..................................................................................... 16, 17

*Ricchio v. McLean*,
  853 F.3d 553 (1st Cir. 2017) ...................................................................................... 5, 14

*Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A.*,
  30 F.3d 339 (2d Cir. 1994) ............................................................................................. 11

*T.R.S. v. Wyndham Hotels & Resorts, Inc.*,
  2024 WL 3088722 (E.D. Cal. June 20, 2024) ................................................................. 18

*United States v. Bestfoods*,
  524 U.S. 51 (1998) .......................................................................................................... 18

*United States v. Love*,
  743 F. App'x 138 (9th Cir. 2018) ........................................................................ 12, 13, 14

*United States v. Tydingco*,
  909 F.3d 297 (9th Cir. 2018) ..................................................................................... 16, 17

**STATUTES**

18 U.S.C. § 1591 ................................................................................................... passim
18 U.S.C. § 1595 ................................................................................................... passim
28 U.S.C. § 1927 ............................................................................................................. 3

**OTHER AUTHORITIES**

Fed. R. Civ. P. 11(b) ................................................................................................. 3, 18
Federal Rule of Civil Procedure 12(b)(6) ............................................................. 1, 1, 19
*Harbor*, MERRIAM-WEBSTER ONLINE DICTIONARY, https://www.merriam-
        webster.com/dictionary/harbor; ............................................................................ 16

**RELIEF REQUESTED**

Defendant Hilton Domestic Operating Company, Inc. ("Hilton") respectfully requests that this Court dismiss Plaintiff's Complaint, ECF No. 1, for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).

**STATEMENT OF ISSUES TO BE DECIDED**

Whether the Complaint fails to state a claim for relief against Hilton under the Trafficking Protection Reauthorization Act ("TVPRA"), 18 U.S.C. § 1595, as there are no well-pleaded allegations that Hilton participated in a venture that criminally trafficked Plaintiff, knew or should have known about Plaintiff's trafficking, knowingly benefited from that participation, or is otherwise vicariously liable under the statute.

**INTRODUCTION**

Under the Trafficking Victims Protection Reauthorization Act ("TVPRA"), Congress gave trafficking victims a civil cause of action against both the criminal "perpetrator" and "whoever knowingly benefits . . . from participation in a venture which that person knew or should have known has engaged in" criminal trafficking in violation of 18 U.S.C. § 1591(a). 18 U.S.C. § 1595(a). This case is the latest of many cases filed in recent years that seeks to hold the hospitality industry liable under § 1595(a) for sex trafficking allegedly carried out by criminals at hotels. Relevant here, Plaintiff Doe (K.R.D.)[1] alleges that her romantic-partner-turned-trafficker caused her to have sex with men at various hotels, including the San Jose DoubleTree, a Hilton-branded hotel in San Jose, California. But rather than name her *trafficker* as a defendant, Plaintiff claims that *Hilton Domestic Operating Company Inc. (Hilton)*—a Delaware corporation based in Virginia—is liable for participating in (and benefitting from) "ventures" with her trafficker and/or HLT San Jose LLC (HLT) that, in turn, trafficked her. She further claims that Hilton somehow directly perpetrated her trafficking and that Hilton is vicariously liable for any supposed TVPRA violations by HLT.

---

[1] Plaintiff has not moved to proceed under a pseudonym, as Ninth Circuit custom dictates. *See Does I thru XXIII v. Adv. Textile Corp.*, 214 F.3d 1058, 1069 (9th Cir. 2000). Even assuming such a motion is granted, however, Hilton preserves all rights to ensure the use and disclosure of Plaintiff's identity does not violate its due process rights, including the right to investigate these claims.

While trafficking is abhorrent in all its forms, complaints like Plaintiff's improperly seek to impose strict liability for sex trafficking on any hospitality company whenever a hotel merely rents a room to a person after a hotel employee "should have known" the person was involved with trafficking. That theory is not at all what Congress had in mind when it enacted the TVPRA. Hilton thus moves to dismiss Plaintiff's Complaint, ECF No. 1 (Compl.), with prejudice.

*First*, there is no well-pleaded allegation that Hilton (or any of its employees) participated in a "venture"—"a common undertaking involving risk or profit," *Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714, 727 (11th Cir. 2021)—that violated the TVPRA, much less that they actually perpetrated her trafficking.

The Complaint suggests that Hilton and HLT were somehow in a venture with her traffickers or each other. But there is no non-conclusory allegation that any of these Defendants held in "common" the goal of trafficking Plaintiff. To the contrary, Plaintiff actually admits that Hilton's brand policy is "Hilton Worldwide must never allow any of its properties, products, or services to be used in [any] manner that supports or enables any form of abuse and exploitation." Compl. ¶ 51. And she even concedes that Hilton had *anti*-trafficking policies and training. In all events, there is no well-pleaded allegation that *any* relevant venture existed in connection with the San Jose DoubleTree. Finally, even if Hilton (or HLT) had knowingly participated in some venture with each other or Plaintiff's alleged traffickers, there is no well-pleaded allegation that they actually or constructively *knew* of her trafficking. Given that Plaintiff cannot plausibly allege that Hilton participated in a venture that trafficked her, the allegation that Hilton itself perpetrated her trafficking also fails. Indeed, Plaintiff at no point alleges how Hilton (as opposed to her traffickers) could have knowingly "harbor[ed]" her or knowingly aided anyone in furtherance of criminal sex trafficking at the San Jose DoubleTree. 18 U.S.C. §§ 1591(a)(1), (a)(2).

Because Plaintiff fails to advance any viable theory, her complaint should be dismissed. Indeed, this same Plaintiff lacked any basis to name Hilton in a prior TVPRA complaint filed in this district. *K.R.D. v. Hilton Resorts Corp.*, No. 5:24-cv-03499 (N.D. Cal. June 10, 2024), ECF

HILTON'S MOT. TO DISMISS COMPLAINT
Case No. 5:24-cv-060993-PCP-VKD

No. 1.[2] Numerous other courts—including one in this District—have recognized complaints like this one against Hilton-branded affiliates fail as a matter of law.[3] And for the few cases that have gone to discovery, Hilton continues to show that allegations like the ones advanced here lack any factual basis. *See, e.g.*, Stipulation of Voluntary Dismissal, *Doe (K.S.) v. Brisam Clinton, LLC*, No. 1:23-cv-04032 (S.D.N.Y. June 26, 2023), ECF No. 43 (case voluntarily dismissed with prejudice after discovery). This case should go the way of the others. Accordingly, Hilton asks the Court to dismiss the Complaint against it with prejudice.

## BACKGROUND

According to the Complaint, Defendant Hilton Domestic Operating Company Inc. "owned," "operated," and "managed" the San Jose DoubleTree, a Hilton-branded franchised hotel at 2050 Gateway Place, San Jose, California. Compl. ¶ 17. The Complaint alleges that Plaintiff was "trafficked" at the San Jose DoubleTree "from March 1, 2014 to July 18, 2015." *Id.* ¶ 32; *see id.* ¶¶ 60–151 (allegations pertaining to "San Jose DoubleTree"). Plaintiff also alleges that she was trafficked at non-Hilton-branded hotels over a longer period, but does not name them. *See, e.g.*, *id.* ¶¶ 30–31 ("March 1, 2014 to December 31, 2016").

The Complaint contains boilerplate allegations that often appear in substantially the same complaint template used by Annie McAdams PC and the Provost Umphrey Law Firm. The template generally begins something like this one: "The Hotel Industry's Role in Sex Trafficking and

---

[2] In *K.R.D. I*, Plaintiff sued a Hilton affiliate for alleged trafficking at a different property. After the affiliate provided proof that the other property was not even operated as a Hilton during the alleged trafficking period, Plaintiff *voluntarily dismissed* the complaint rather than amend it to name the other company that operated the other property. *See id.*, ECF 7. Plaintiff's counsel's decision to re-file the same template complaint against Hilton in this case—and insistence on advancing claims against Hilton to the apparent exclusion of at least one other company and property—raises questions. *Cf.* Fed. R. Civ. P. 11(b)(1); 28 U.S.C. § 1927.

[3] *See, e.g.*, *G.N.C. v. Uniquest Hosp.*, 2024 WL 4149251, at *4 (S.D.N.Y. Sept. 11, 2024); *B.J. v. G6 Hosp., LLC*, 2023 WL 6120682 (N.D. Cal. Sept. 18, 2023); *L.H. v. Marriott Int'l, Inc.*, 604 F. Supp. 3d 1346 (S.D. Fla. 2022); *A.B. v. Hilton Worldwide Holdings Inc.*, 484 F. Supp. 3d 921 (D. Or. 2020); Order, *C.K. v. Wyndham Hotels & Resorts, Inc.*, No. 3:19-cv-01412 (M.D. Fla. July 7, 2020), ECF No. 125; *Doe 1 v. Red Roof Inns, Inc.*, 2020 WL 1872335 (N.D. Ga. Apr. 13, 2020); *Doe 2 v. Red Roof Inns, Inc.*, 2020 WL 1872337 (N.D. Ga. Apr. 13, 2020); *Doe 3 v. Red Roof Inns, Inc.*, 2020 WL 1872333 (N.D. Ga. Apr. 13, 2020); *Doe 4 v. Red Roof Inns, Inc.*, 2020 WL 1872336 (N.D. Ga. Apr. 13, 2020) (all granting Hilton's motions to dismiss).

Defendants' Knowledge of the Problem," *id.* ¶¶ 35–53, "Sex Trafficking Has Long Been Prevalent at Hilton Hotels and Hilton Defendants have Known About It," *id.* ¶¶ 54–59, and "The Hilton Defendants and HLT San Jose LLC had actual and constructive knowledge of widespread and ongoing sex trafficking at the San Jose DoubleTree," *id.* ¶¶ 61–79. *See, e.g.*, Compl., *K.R.D. I*, No. 5:24-cv-03499 (N.D. Cal. June 10, 2024), ECF No. 1; Amend. Compl., *G.N.C.*, No. 1:23-cv-07980 (S.D.N.Y. Oct. 31, 2023), ECF No. 91; Amend. Compl., *K.S.*, No. 1:23-cv-04032 (S.D.N.Y. June 26, 2023), ECF No. 43; *supra*.

Initially, much of the Complaint amounts to boilerplate allegations of generalized knowledge of sex trafficking in the hotel industry but not specifically as to Plaintiff. For example, Plaintiff alleges that Hilton knew of "the problem of sex trafficking in the hotel industry," including "at its properties." *E.g.*, Compl. ¶ 54. She also says Hilton "had a duty to exercise reasonable prudence to detect ongoing sex trafficking at the subject hotels [sic] and to make a reasonable investigation in response to signs of potential sex trafficking." *Id.* ¶ 78. "If [Hilton and HLT] had used ordinary prudence, they would have been aware of the widespread and ongoing trafficking at the San Jose DoubleTree and that they were benefiting from such trafficking." *Id.* None of these allegations are relevant to Plaintiff.

The Complaint then sandwiches relatively few allegations specific to the Plaintiff and the San Jose DoubleTree, before continuing with still more boilerplate and legal conclusions. *See* Compl. ¶¶ 80–96 (allegations relating to Plaintiff at the San Jose DoubleTree); *id.* ¶¶ 97–131 (other boilerplate and legal conclusions superficially relating to Plaintiff); *see also id.* ¶¶ 132–51 ("Defendants' Benefit From Ventures at the San Jose DoubleTree"); *id.* ¶¶ 152–62 ("HLT San Jose LLC Operated as Hilton's Agent"); *id.* ¶¶ 163–166 ("Hilton Brand Defendants Are Jointly Responsible for the Trafficking of Jane Doe (K.R.D.)".); *id.* ¶¶ 165–66 ("Defendants Are Jointly and Severally Liable for Jane Doe (K.R.D.)'s Damages."). After alleging that she was "repeatedly trafficked" at the San Jose DoubleTree over a period of time beginning in early 2014,[4] she says that

---

[4] The Complaint offers contradictory timelines: Paragraphs 60 and 81 allege that Plaintiff was trafficked from April 2014 until May 2016; Paragraph 32 alleges that she was trafficked at the San Jose DoubleTree from March 2014 until July 2015. Regardless, Plaintiff filed her complaint on October 4, 2024, so any alleged trafficking prior to October 4, 2014, is plainly "time-barred." *See*

1    "there were open and obvious signs of her trafficking that matched up with industry recognized red

2    flags." *Id.* ¶ 81.

3        By way of example, she points to things like her trafficker "wait[ing] in the parking lot,"

4    "request[ing] a key, and "smoking marijuana" "in the outside parking lot." *E.g.*, *id.* ¶¶ 83, 88. She

5    claims that there was "heavy foot traffic in and out of [the] room." *Id.* ¶ 87. She also cites her lack

6    of "possessions" and "provocative clothing." *Id.* ¶¶ 84, 85. And she cites unspecified "effects on

7    [her] appearance, demeanor, movements throughout the hotels [sic]." *Id.* ¶ 89. She calls all of these

8    things and others "obvious signs" and "red flags." *E.g.*, *id.* ¶¶ 80–96.

9        Plaintiff also brings a slew of other conclusory allegations that she says prove that Hilton

10   and HLT were part of what she calls a "venture with sex traffickers" or a venture only with Hilton

11   and HLT that, in turn, perpetrated sex trafficking, *see, e.g.*, *id.* ¶¶ 109, 136, 147—even while

12   acknowledging that Hilton-branded properties had *anti*-trafficking training even well prior to 2014.

13   *E.g.*, *id.* ¶ 101 ("sex trafficking notice and training"), ¶ 109 ("training hotel staff on detecting and

14   responding to human trafficking"), ¶ 113 ("anti-trafficking training"). At bottom, Plaintiff's theory

15   posits that Hilton and/or HLT "*failed to exercise reasonable care* with regard to the hiring, training,

16   and supervision of [] employees given the specific risks . . . of human trafficking occurring at the

17   San Jose DoubleTree," and that their "failure to train and supervise their agents and employees . . .

18   *enabled and contributed* to the sex trafficking of K.R.D. *See, e.g.*, *id.* ¶¶ 98, 178 (emphasis added).

19       Missing from the Complaint, however, are any facts showing that Hilton employees

20   engaged in or witnessed force, fraud, or coercion in connection with commercial sex that would

21   indicate *trafficking* (as opposed to prostitution or other criminal activity). By way of example, she

22   does not allege that Hilton employees ever heard any "plea[s] for help" or the trafficker's visible,

23   violent attempts to prevent her from escaping. *See, e.g.*, *Ricchio v. McLean*, 853 F.3d 553, 557 (1st

24   Cir. 2017). Nor does she allege facts that Hilton employees ever acted as lookouts or otherwise

25   knowingly aided or concealed her trafficking. *See, e.g.*, *J.G. v. Northbrook Indus., Inc.*, 619 F.

26   Supp. 3d 1228, 1232 (N.D. Ga. 2022). While Plaintiff lists numerous "red flags" of sex trafficking

27

28   *H.G. v. Inter-Cont'l Hotels Corp.*, 489 F. Supp. 3d 697, 710 (E.D. Mich. 2020) (noting that claims
     under the TVPRA must be brought within ten years of when the cause of action arose).

HILTON'S MOT. TO DISMISS COMPLAINT
CASE NO. 5:24-cv-060993-PCP-VKD

within her boilerplate allegations that might indicate some individual was being "forced" to "engage in commercial sex," Compl. ¶ 39, she tellingly never alleges which "red flags" Hilton (or HLT) saw or should have seen, much less any red flags about which they knew or should have known. Instead, Plaintiff merely states over and over again that "red flags" were "obvious" and therefore Hilton violated the TVPRA.

## LEGAL STANDARD

To survive a motion to dismiss, a plaintiff's complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. v. Twombly*, 550 U.S. 544, 546 (2007)). A claim is plausible "when the plaintiff pleads content that allows the court to draw the reasonable inference that the defendant is liable." *Id.* This standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility' of entitlement to relief." *Id.* (quoting *Twombly*, 550 U.S. at 546).

A "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels," "conclusions," and "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. The court is "not bound to accept as true a legal conclusion couched as a factual allegation," *Iqbal*, 556 U.S. at 678; nor is it bound to accept "conclusory statements" in "support[]." *Id.* at 663. Above all, the court must "draw on its judicial experience and common sense." *Id.* at 679.

## ARGUMENT

The TVPRA provides a trafficking victim a civil cause of action against the "perpetrator" (also known as "perpetrator liability") or "whoever knowingly benefits . . . from participation in a venture which that person knew or should have known has engaged in an act [of trafficking] in violation of this chapter" (also known as "participant liability"). 18 U.S.C. § 1595(a); *see id.* § 1591(a) (requiring, among other things, "harbor[ing]" a victim for "commercial sex" by "force, fraud, or coercion"). The Complaint asserts three federal-law claims against Hilton, alleging in Count II that Hilton is a "beneficiary" from (or "participant" in) a venture that engaged in sex

trafficking, in Count I that Hilton is a "perpetrator" of sex trafficking, and in Count III that Hilton is "vicariously liable" for "the acts of HLT San Jose LLC"—all in violation of 18 U.S.C. §§ 1595(a) and 1591(a). *See* Compl. ¶¶ 171–72 ("participa[nt]"); *id.* ¶¶ 167–70 ("perpetrator"); *id.* ¶¶ 173–79 ("vicarious liability"). But the Complaint fails to plausibly plead that Hilton (or HLT) violated the TVPRA as a perpetrator or participant under any of these theories.

## I.    Plaintiff Has No Viable "Participant" Claim.

Beginning with participant liability, § 1595(a) establishes civil liability for whoever "(1) knowingly benefited (2) from taking part in a common undertaking or enterprise involving risk and potential profit, (3) that the undertaking or enterprise violated the TVPRA as to the plaintiff, and (4) that the defendant had constructive or actual knowledge that the undertaking or enterprise violated the TVPRA as to the plaintiff." *Red Roof Inns*, 21 F.4th at 719 (citing 18 U.S.C. § 1595(a)). The Ninth Circuit has emphasized that "**the most important component [in the § 1595(a) analysis] is the [defendant's] own conduct—its 'participation in the venture,**'" which, in turn, violated the TVPRA. *Does 1-6 v. Reddit, Inc.*, 51 F.4th 1137, 1142 (9th Cir. 2022). Only then does the analysis turn to knowledge—*i.e.*, whether the defendant "knew or should have known" that the "venture" "engaged in an act in violation of this chapter" as to the plaintiff. 18 U.S.C. § 1595(a); *Red Roof Inns*, 21 F.4th at 725 (noting that in this context "constructive knowledge" must be "as to the [plaintiff]"). Plaintiff satisfies none of these elements.[5]

### A.    Plaintiff Does Not Plausibly Allege Participation in Any Venture That Trafficked Her.

Plaintiff must first plausibly establish that Hilton knowingly "participated in a venture" under § 1595(a) that, in turn, "engaged in an act in violation of" § 1591(a). 18 U.S.C. § 1595(a); *see Does 1-6*, 51 F.4th at 1142. Because § 1595(a) does not define "participation in a venture," courts assign "the phrase" its "ordinary meaning": "[T]he phrase 'participation in a venture'

---

[5] As for the first ("knowingly benefits") element, Hilton notes that the defects in the second through fourth elements moot the remaining inquiry under § 1595(a)—whether Hilton knowingly benefited from participation in a venture that it knew or should have known criminally trafficked Plaintiff. Because the Complaint does not plausibly make out the participation in a venture and knew or should have known elements, it necessarily follows that the Complaint also does not sufficiently allege that Hilton knowingly benefited from such participation in a venture.

HILTON'S MOT. TO DISMISS COMPLAINT
CASE NO. 5:24-cv-060993-PCP-VKD

1  requires that the [plaintiff] allege that the [defendant] took part in a common undertaking or

2  enterprise involving risk and potential profit." *Red Roof Inns*, 21 F.4th at 725. The phrase "engaged

3  in an act in violation of this subchapter," in this context, requires the plaintiff to allege that the

4  "venture" *itself* trafficked her. *Id.* (instructing that "the venture . . . must have violated the TVPRA

5  as to the plaintiff," and dismissing participant claims against hotel franchisors because "observing

6  [signs of possible sex trafficking] is not the same as participating in it"); *see also Doe 1 v. Apple*

7  *Inc.*, 96 F.4th 403, 406 (D.C. Cir. 2024) (cautioning that the "venture" must actually have "engaged

8  in" an act made "unlawful" by the TVPRA); *G.G. v. Salesforce.com*, 76 F.4th 544 (7th Cir. 2023)

9  (noting "the venture" itself must have "violated Section 1591"). Plaintiff proposes two venture

10  theories dubbed "Venture 1" and "Venture 2." Both fail.

11       ***Venture 1***. Plaintiff's first theory is that Hilton (and HLT) were part of a venture "with sex

12  traffickers." Compl. ¶ 172. **This Venture 1 theory is not valid because she has not established**

13  **a *venture* at all**. To allege a defendant "knowingly benefit[ed] . . . *from participation in a venture*,"

14  a plaintiff must establish that the defendant participated in a *common* undertaking. That requires

15  *actual knowledge* of the common purpose. The D.C. Circuit's recent decision in *Doe 1 v. Apple* is

16  instructive. There, the court reconciled circuit cases that analyze the TVPRA's meaning of

17  participation in a venture.

18       Beginning with the language, the Court reinforced "participation in a venture" means

19  knowingly "taking part or sharing in an enterprise or undertaking that involves danger, uncertainty,

20  or risk, and potential gain." *Doe 1*, 96 F.4th at 415. In holding the complaint failed to state a forced-

21  labor claim, the court held that merely "conduct[ing] business with [*others*] who facilitate[] forced

22  labor," even on an ongoing basis, does not suffice under a venture theory. *Id.* at 414. At bottom,

23  "participation in a [business] venture" under the TVPRA requires "something more than engaging

24  in an ordinary buyer-seller transaction," especially where the parties "are on opposite sides of an

25  arms-length transaction." *Id.* at 415.

26       Plaintiff has alleged no more here. The Complaint defines "Venture 1" as a "continuous

27  business relationship and implicit understanding with sex traffickers at the subject hotels [sic] by

28  renting them hotel rooms [sic] and providing them related services despite the fact that each

HILTON'S MOT. TO DISMISS COMPLAINT
Case No. 5:24-cv-060993-PCP-VKD

1   Defendant knew or should have known these traffickers were using the San Jose DoubleTree

2   engage [sic] in violations of 18 U.S.C. § 1591(a)(1) and 18 U.S.C. § 1591(a)(2), including the

3   trafficking of K.R.D." Compl. ¶ 172. And she further defines the "common purpose" as "the rental

4   of hotel rooms and the making of profits." *Id.*; *see, e.g.*, *id.*¶¶ 106–08.

5          But, of course, Plaintiff does not establish that Hilton (or HLT) and her *trafficker* somehow

6   had a *common* purpose. *See Doe 1*, 96 F.4th at 415. **Plaintiff cannot say that Hilton (or HLT)**

7   **took part in any sex-trafficking business like her traffickers**. That was the fatal defect in

8   numerous other TVPRA cases where plaintiffs implausibly asserted that hospitality defendants

9   were in "sex-trafficking ventures" with the actual criminal traffickers. *See, e.g.*, *Red Roof Inns*, 21

10  F.4th at 726–27, *B.J. v. G6 Hosp., LLC*, 2023 WL 3569979, at *4 (N.D. Cal. May 19, 2023); *L.H.*,

11  604 F. Supp. 3d at 1360; *Doe (K.B.) v. G6 Hosp., LLC*, 2023 WL 8650785, at *11–12 (N.D. Ga.

12  Dec. 14, 2023); *see infra* Section II (addressing perpetrator theory). Indeed, Plaintiff concedes

13  Hilton and its affiliates *oppose* trafficking: "Hilton Worldwide must never allow any of its

14  properties, products, or services, to be used in [any] manner that supports or enables any form of

15  abuse and exploitation." Compl. ¶ 51. And she even goes so far as to concede that Hilton had *anti-*

16  *trafficking* policies and training. *See, e.g.*, *id.* ¶ 113.[6]

17         **Nor can Plaintiff say her traffickers took part in the *hospitality-industry* business like**

18  **Hilton (or HLT)**. "[R]enting hotel rooms to [] sex traffickers" does "nothing to show" "a common

19  undertaking involving risk or profit that violated the TVPRA." *Red Roof Inns*, 21 F.4th at 727; *see,*

20  *e.g.*, *K.H. v. Riti, Inc.*, 2024 WL 505063, at *4 (11th Cir. Feb. 9, 2024) ("observing signs of sex

21  trafficking 'is not the same as participating in it'"). To the contrary, renting a room (even to a

22  supposed "trafficker") is an "arms-length transaction." *Doe 1*, 96 F.4th at 415. Plaintiff has thus

23  failed to plausibly allege that Hilton or HLT and her traffickers participated in a "common

24

---

25  [6] In any event, contrary to Plaintiff's assertion that Hilton (and HLT) had a "duty" to "detect" and

26  "make a reasonable investigation in response to signs of potential sex trafficking," Compl. ¶ 96,
    "[t]he TVPRA does not impose an affirmative duty to police and prevent sex trafficking." *A.B. v.*

27  *Wyndham Hotel & Resorts, Inc.*, 532 F. Supp. 3d 1018, 1027 (D. Or. 2021); *B.M. v. Wyndham*
    *Hotels & Resorts, Inc.*, 2020 WL 4368214, at *7 (N.D. Cal. July 30, 2020) ("To be clear, the [c]ourt

28  does not read section 1595 of [the] TVPRA [as] requiring hotels or their franchisors to affirmatively
    stop sex trafficking.").

HILTON'S MOT. TO DISMISS COMPLAINT
CASE NO. 5:24-cv-060993-PCP-VKD

1    undertaking." *Red Roof Inns*, 21 F.4th at 725; *see G.G.*, 76 F.4th at 554.

2        ***Venture 2***. Plaintiff's second theory is that Hilton and HLT (sans traffickers) were

3    "participating in a commercial venture with one another operating the San Jose DoubleTree" based

4    on "a longstanding business relationship . . . with a shared goal of maximizing revenue, including

5    gross room revenue." Compl. ¶¶ 147–48; *see id.* ¶ 172.  Plaintiff claims this venture (Hilton and

6    HLT) directly "violated the TVRPA [sic] through the widespread sex trafficking at [the] San Jose

7    DoubleTree." *Id.* ¶ 150. Plaintiff's allegation appears to be that Hilton and HLT operated a hotel,

8    and by extension, that venture perpetrated Plaintiff's sex trafficking. *See id.*

9        **The main flaw in Plaintiff's Venture 2 theory is that she has not plausibly alleged that**

10   ***someone* in this supposed venture—*i.e.*, Hilton or HLT—criminally trafficked her**. Plaintiff

11   must "sufficiently alleg[e] the existence of a venture that violated Section 1591." *G.G.*, 76 F.4th at

12   553; *Red Roof Inns*, 21 F.4th at 725 ("The third element . . . is that the venture in which the

13   defendant participated and from which it knowingly benefited must have violated the TVPRA as

14   to the plaintiff."). Therefore, a venture member must have violated § 1591(a) by trafficking

15   Plaintiff. But Plaintiff does not even allege that either Hilton or HLT trafficked her within this

16   count. *See* Compl. ¶ 172. And elsewhere, the Complaint all but confirms that they did not. *See, e.g.*,

17   *id.* ¶ 101 (averring that the hotel only "implicitly encourag[ed] the activities of traffickers by

18   creating an environment where they did not need to incur the burden of taking significant steps to

19   conceal their activities"). She later concedes that neither Hilton nor HLT trafficked her by alleging

20   that "[V]enture [2] violated the TVPRA through the widespread sex trafficking that occurred at

21   each of [sic] the subject hotels [sic]." *Id.* ¶ 172. Notice, Plaintiff never alleges that Hilton and HLT

22   "participated in a venture" *together* to traffic her—instead she contends only that sex trafficking

23   "occurred" at the hotel and therefore Hilton and HLT are liable under the TVPRA.  Not so.

24        As the *four conclusory* paragraphs dedicated to her perpetrator claim suggest, the participant

25   claim lacks merit because Plaintiff never alleges that Hilton or HLT had a *common purpose* to

26   traffic her. *Id.* ¶¶ 167–70; *see also infra* Section II (addressing perpetrator allegations). Instead,

27   Plaintiff offers more boilerplate language from §§ 1591 and 1595 to contend that Hilton and HLT

28   worked together to violate the TVPRA. She does not offer any plausible, non-conclusory

HILTON'S MOT. TO DISMISS COMPLAINT
CASE NO. 5:24-cv-060993-PCP-VKD

1    allegations as to how Hilton and HLT joined together to violate the TVPRA as to her (because she

2    cannot), and her attempt to bootstrap a participant claim onto an inadequately alleged perpetrator

3    claim necessarily fails.

4        And for all the reasons Hilton (and HLT) could not have even constructively known about

5    Plaintiff's trafficking, *infra* Section I.B., there is no basis to say that Hilton (or HLT) knowingly

6    "harbor[ed]" her or knowingly "facilitat[ed]" her trafficking. Compl. ¶ 169.  Indeed, Plaintiff

7    concedes the same when she alleges that "trafficking resulted from [a] failure to exercise ordinary

8    care operating the hotel," *id.* ¶ 77, and that the "venture" only "violated the TVPRA" merely

9    because trafficking "occurred at [the] hotel[]," *id.* ¶ 172. Trafficking at the hands of whom? The

10    "traffickers," of course, who are not part of alleged Venture 2. *Id.*

11        Contrary to Plaintiff's suggestions, *see, e.g.*, *id.*, the constructive-knowledge ("should have

12    known") requirement does not apply to the antecedent question of whether the defendant knowingly

13    participated in a venture in the first place. As the Eleventh Circuit confirmed, "allegations of

14    financial benefit alone are not sufficient to establish that the defendant participated in a sex

15    trafficking venture and observing signs of sex trafficking 'is not the same as participating in it.'"

16    *K.H.*, 2024 WL 505063, at *4 (citing *Red Roof Inns*, 21 F.4th at 726); *accord, e.g.*, *A.S. v. Wyndham

17    Hotels & Resorts*, No. 6:23-cv-00033-C (N.D. Tex. June 10, 2024), ECF No. 67 (citing *K.H.*, 2024

18    WL 505063, at *4).

19        Plaintiff's "Venture 2" theory fails for still other reasons, too. To the extent HLT acted as

20    Hilton's agent (it did not), they cannot be in a venture with *themselves*. Compl. ¶ 172 (alleging a

21    "venture" in "operating the San Jose DoubleTree"). In other contexts, courts have rejected that

22    notion for decades. *See, e.g.*, *Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A.*, 30 F.3d

23    339, 344 (2d Cir. 1994) (rejecting "enterprise" liability where the plaintiff "alleg[ed] a RICO

24    enterprise that consists merely of a corporate defendant associated with its own employees or agents

25    carrying on the regular affairs of the defendant"); *In re Countrywide Fin. Corp.*, 601 F. Supp. 2d

26    1201, 1213 (S.D. Cal. 2009) (collecting circuit cases for the same basic proposition). That principle

27    is equally applicable to the TVPRA, as the TVPRA's definition of "venture" also requires "a

28    common undertaking or enterprise" "(*with others*)" "involving risk and potential profit." *Red Roof*

HILTON'S MOT. TO DISMISS COMPLAINT
CASE NO. 5:24-cv-060993-PCP-VKD

1  *Inns*, 21 F.4th at 725 (emphasis added). And that principle is fatal to Plaintiff's theory here.

2  Moreover, similar to a RICO enterprise, a TVPRA venture requires "something more" than

3  two entities engaging in otherwise lawful commercial activity. *See Doe 1*, 96 F.4th at 415; *In re*

4  *Countrywide*, 601 F. Supp. 2d at 1213 (rejecting RICO liability where two affiliates "engaged in

5  nothing more than a legitimate corporate and financial relationship"). And even according to

6  Plaintiff's own allegations, Hilton and HLT have engaged in *nothing* more than "a legitimate

7  corporate and financial relationship" with each other in the hospitality business.  *See In re*

8  *Countrywide*, 601 F. Supp. 2d at 1213; *see also, e.g.*, Compl. ¶ 172 (alleging a "business

9  relationship" "to operate the San Jose DoubleTree with a common objective of maximizing revenue

10  at the hotels [sic]").  That is insufficient.

11  In sum, Plaintiff has not met her burden to establish participation—the very first step in any

12  participation claim.

13  **B.**    **Plaintiff Does Not Plausibly Allege Actual or Constructive Knowledge of a**

14  **TVPRA Violation.**

15  In any event, there is no well-pleaded basis to infer that Hilton "knew or should have

16  known" that any purported venture of which it was supposedly apart would "cause [Plaintiff] to

17  engage in a commercial sex act" through "force," in violation of §§ 1591(a)(1) or (a)(2). 18 U.S.C.

18  § 1591(a); *see Red Roof Inns*, 21 F.4th at 725 (requiring knowledge "as to the [plaintiffs]" in this

19  context). In this context, "force" means "violence or such threat or display of physical aggression

20  toward a person as reasonably inspires fear of pain, bodily harm, or death." *United States v. Love*,

21  743 F. App'x 138, 139 (9th Cir. 2018).

22  As many courts in the Ninth Circuit have recognized, a plaintiff fails to plead the requisite

23  knowledge under the TVPRA where her allegations would have equally suggested to a hotel

24  employee that other criminal activity was occurring, such as prostitution, rather than sex trafficking.

25  *See, e.g., B.J.*, 2023 WL 3569979, at *6 ; *J.B. v. G6 Hosp., LLC*, 2020 WL 4901196, at *11 (N.D.

26  Cal. Aug. 20, 2020); *A.B.*, 484 F. Supp. 3d at 941. As the court in *B.J.* put it, if a plaintiff "alleg[es]"

27  that an employee "observed" conduct "equally consistent with criminal conduct other than sex

28  trafficking, e.g., prostitution," the claim necessarily fails. 2023 WL 3569979, at *6. That principle

HILTON'S MOT. TO DISMISS COMPLAINT
CASE NO. 5:24-cv-060993-PCP-VKD

1  flows directly from *Twombly* and *Iqbal*: "Where alleged conduct has 'two possible explanations,

2  only one of which can be true and only one of which results in liability . . . [s]omething more is

3  needed, such as facts tending to exclude the alternative possibility that the alternative explanation

4  is true.'" *Id.* (quoting *In re Century Alum. Co. Sec. Litig.*, 729 F.3d 1104, 1108 (9th Cir. 2013),

5  which cites *Twombly*, 550 U.S. at 554, 557, and *Iqbal*, 556 U.S. at 678)).

6         Here, as previewed above, Plaintiff fails to allege facts sufficient to show that hotel staff

7  knew or should have known that she was being forced to engage in sex trafficking, as none of the

8  allegations specific to Plaintiff's time at the San Jose DoubleTree would have even remotely

9  suggested that she was being "forced" to "engage in commercial sex." Compl. ¶ 88; *see Love*, 743

10  F. App'x at 139. True, Plaintiff lists—as part of her boilerplate allegations that do not pertain to

11  her, Hilton, or HLT—numerous "red flags" that she says clearly indicate "warning signs and

12  indicators of sex trafficking" across the hospitality industry. Compl. ¶ 39. But Plaintiff never

13  alleges, other than in a conclusory fashion, that staff at the San Jose Double Tree saw or should

14  have seen these red flags indicating she was "forced" to "engage in a commercial sex act." *See*

15  Compl. ¶¶ 80–92. For instance, Plaintiff never alleges that she appeared fearful, anxious, or

16  physically abused in front of hotel staff.  She does not allege that her trafficker or others subjected

17  her to "verbal threats, emotional abuse, and/or [] treated in a demeaning way," such that hotel staff

18  would have noticed. She also never claims that her room was filled with "bulk sexual

19  paraphernalia," that her trafficker used multiple cell phones, or that she or anyone allegedly entering

20  her room showed "signs of malnourishment, poor hygiene, [or] fatigue." Thus, while Plaintiff offers

21  a general litany of "red flags" that she says evidence a victim being "forced" to "engage in

22  commercial sex," *see* Compl. ¶ 39, she never actually alleges that Hilton or HLT staff saw, or

23  should have seen, these signs or that these signs were even present at the hotel.

24         Instead, Plaintiff merely recycles her conclusory allegation that hotel staff was willfully

25  blind to "obvious" "recognized red flags," which fails to meet *Twombly* and *Iqbal*'s plausibility

26  standard. *E.g.*, Compl. ¶ 62 ("Defendants knew or should have known [because of] obvious

27  indicators of [sex trafficking]"); Compl. ¶ 64 ("[T]here were obvious signs . . . victims were being

28  trafficked); Compl. ¶ 73 ("Hilton observed obvious signs of ongoing criminal activity, including

red flags of sex trafficking activity."). Even when trying to confect her definitions of Venture 1 and Venture 2, Plaintiff alleges only that Hilton and HLT "ignore[ed] the obvious signs of [Plaintiff's] trafficking in order to "maintain[] a continuous business relationship" and rent hotel rooms to Plaintiff's traffickers. Compl. ¶ 172. But stating that these "red flags" were "obvious" does not make them so.

When considering the very few facts that Plaintiff actually alleges, the *most* hotel staff might have speculated about Plaintiff is she was there to engage in prostitution—not that she was a sex trafficking victim.  Compl. ¶¶ 80–96. (alleging, *e.g.*, "provocative clothing," "heavy foot traffic," and the like). But again, even that speculation would have been insufficient, as Plaintiff fails to show that hotel staff should have known she was being "forced to engage in a commercial sex act" as opposed to some other criminal activity or prostitution. *See, e.g.*, *Red Roof Inns*, 21 F.4th at 725; *J.B.*, 2020 WL 4901196, at *11; *A.B.*, 484 F. Supp. 3d at 941; *B.J.*, 2023 WL 3569979, at *6.  And relative to other cases in which a court has found allegations sufficient to survive a motion to dismiss, this Complaint falls well short. *E.g.*, *Ricchio*, 853 F.3d at 557; *J.G.*, 619 F. Supp. 3d at 1232; *supra* note 5.

The other "industry" wide or even brand-specific allegations (all outside San Jose), *see, e.g.*, Compl. ¶¶ 55–57, do not alter the knowledge calculus. *See Red Roof Inns*, 21 F.4th at 725 (requiring plaintiff-specific knowledge in the context of a single plaintiff alleging trafficking at a single hotel). In fact, all of the reviews and articles cited in the Complaint relate to other properties—none of them deal with Hilton Domestic Operating Company Inc., HLT San Jose LLC, or the San Jose DoubleTree. *See, e.g.*, Compl. ¶ 56.

Taken together, Plaintiff fails to allege plausible, non-conclusory facts showing that hotel staff at the San Jose Double Tree knew or should have known that she was "forced" to "engage in a commercial sex act." *See Love*, 743 F. App'x at 139. Further, she does not allege how or why hotel staff would have known that she was being forced to engage in a commercial sex act as opposed to some other criminal activity or prostitution. Therefore, the Complaint is due to be dismissed because there is no well-pleaded basis to infer that Hilton "knew or should have known" that any purported venture of which it was supposedly apart would "cause [Plaintiff] to engage in

1  a commercial sex act" through "force," in violation of the TVPRA.

2                                      *      *      *

3       In response, Plaintiff will likely point to a line of caselaw based on *M.A. v. Wyndham Hotels*

4  *& Resorts, Inc.*, 425 F. Supp. 3d 959, 968 (S.D. Ohio 2019); *accord, e.g.*, *J.C. v. Choice Hotels*

5  *Int'l, Inc.*, 2020 WL 6318707, at *7 (N.D. Cal. Oct. 28, 2020) (citing *M.A.*, 425 F. Supp. 3d at 968).

6  In *M.A.*, the court essentially imposed a strict liability standard on hotels for participant claims:

7  continuing to rent rooms to people that hotels "should have known" were engaging in sex

8  trafficking suffices to demonstrate that the hotels "participated in a venture" that violated the

9  TVPRA. *See M.A.*, 425 F. Supp. 3d at 968.

10      Since that time, some district courts have uncritically adopted that standard.  But that

11  standard is wrong; and it is worth observing the court in *M.A.* committed two fundamental mistakes

12  that infected its entire analysis. First, the court did not define critical statutory terms like "venture"

13  and "participation," tainting its subsequent efforts to apply those terms to the facts alleged. Second,

14  and making things worse, the court reversed the logical progression of the § 1595(a) analysis.

15  Instead of starting with the venture and the defendants' participation in it, *M.A.* left those issues for

16  last. *Id.* at 964–71. Yet it is fundamentally unsound to ask whether a defendant knew or should

17  have known about a venture's § 1591(a) violation, or whether a defendant participated in a venture,

18  *before* identifying the alleged venture and the specific defendant's role in it. In short, by distorting

19  the logical relationship among the statutory terms and leaving those terms undefined, *M.A.*

20  fundamentally confused the analysis—and that confusion has persisted among some district courts.

21      Thankfully, a few federal circuit courts have provided a different roadmap.  The Ninth

22  Circuit has instructed that "the most important component [in the § 1595(a) analysis] is the

23  [defendant's] own conduct—its 'participation in the venture.'" *Does 1–6*, 51 F.4th at 1142. The

24  Seventh Circuit has noted that someone in the alleged venture must have actually trafficked the

25  plaintiff and thereby violated § 1591(a). *See G.G.*, 76 F.4th at 553. The Eleventh Circuit has held

26  that "allegations of financial benefit" "from renting hotel rooms to [a] trafficker" "alone are not

27  sufficient to establish that the defendant participated in a sex trafficking venture and observing

28  signs of sex trafficking 'is not the same as participating in it.'"  *K.H.*, 2024 WL 505063, at *4

(quoting *Red Roof Inns*, 21 F.4th at 726). And the D.C. Circuit has confirmed that arms-length transactions between companies or even with traffickers does not alone qualify as "participation in a [commercial] venture" or otherwise. *Doe 1*, 96 F.4th at 416. Applying these principles or even any one of them should result in dismissal of Plaintiff's TVPRA claim. *See supra* 10–17.

## II.    Plaintiff Has No Viable "Perpetrator" Claim Against Hilton.

For the same reasons Plaintiff has not plausibly alleged liability against Hilton under the lesser § 1595(a) participant-in-a-venture theory, she certainly has not plausibly alleged perpetrator liability under §§ 1595(a) and 1591(a). Section 1591(a) principally establishes criminal penalties (including up to life imprisonment) for a "perpetrator" of sex trafficking:

> (1) "Whoever knowingly" "harbors" a person, knowing or recklessly disregarding that "force, fraud, [or] coercion . . . will be used to cause the person to engage in [] commercial sex," 18 U.S.C. § 1591(a)(1); or

> (2) "Whoever knowingly" "benefits, financially," "from participation in a venture which has engaged in an act described in violation of [(a)(1)]"—i.e., "knowingly assisting, supporting, or facilitating a violation of [(a)(1)]"—knowing or recklessly disregarding that "force, fraud, [or] coercion . . . will be used to cause the person to engage in [] commercial sex," *id.* §§ 1591(a)(2), (e)(4).

The mental state required by § 1591(a) is that of a criminal offense—actual knowledge or reckless disregard that the plaintiff was harbored *and* that force, fraud, or coercion caused the plaintiff's sex-trafficking. *Noble v. Weinstein*, 335 F. Supp. 3d 504, 517–18 (S.D.N.Y. 2018). Indeed, § 1591(a) imposes criminal liability only on a party for the *specific sex trafficking acts* with which it is charged. *See, e.g.*, *Ratha v. Phatthana Seafood Co., Ltd.*, 2017 WL 8293174, at *5 (C.D. Cal. Dec. 21, 2017). The Complaint fails to satisfy these elements.

*First*, there is no well-pleaded basis in the Complaint to infer that Hilton "harbor[ed]" Plaintiff in violation of § 1591(a). *E.g.*, Compl. ¶ 169. In the context of § 1591(a)'s list of unlawful acts, "harbor" means "to receive secretly and conceal." *Harbor*, MERRIAM-WEBSTER ONLINE DICTIONARY, https://www.merriam-webster.com/dictionary/harbor; *see Reyes v. Waples Mobile Home Park Ltd. P'ship*, 91 F.4th 270, 278 (4th Cir. 2024) (rejecting the notion that "harboring" is equivalent to "housing" in another context); *United States v. Tydingco*, 909 F.3d 297, 304 (9th Cir. 2018) (holding that "harbor[]" in another context requires an intent to violate the law in some way); *cf. Gustafson v. Alloyd Co., Inc.*, 513 U.S. 561, 575 (1995) ("[A] word is known by the company it

HILTON'S MOT. TO DISMISS COMPLAINT
CASE NO. 5:24-CV-060993-PCP-VKD

1    keeps (the doctrine of noscitur a sociis).”). For example, a person who “house[s]” an undocumented

2    immigrant does not “harbor” her unless the person also “intended to violate the law.” *Tydingco*,

3    909 F.3d at 302–03; *see Reyes*, 91 F.4th at 278.

4        Here, Plaintiff does not allege any facts showing that Hilton itself somehow *harbored* her

5    in violation of the federal criminal code. Instead, she merely alleges that Hilton “*allowed* traffickers

6    to access rooms for the purpose of *harboring their victims*.” Compl. ¶ 126 (emphasis added). A

7    hotel does not “harbor” guests simply by hosting them any more than a landlord “harbors”

8    “undocumented immigrants” “simply [by] leasing” to them. *See Reyes*, 91 F.4th at 279. And a hotel

9    does not “intend[] to violate the law” merely because it “house[d]” someone else who did. *See*

10   *Tydingco*, 909 F.3d at 302–03. Accordingly, even crediting Plaintiff’s allegations, there is no basis

11   in the Complaint to infer that Hilton itself (or HLT for that matter) perpetrated her trafficking.

12       **Second**, the Complaint does not plausibly allege that Hilton (or HLT) knowingly

13   participated in a venture—*i.e.*, “knowingly assist[ed], support[ed], or facilitat[ed]” another co-

14   venturer’s “violation of subsection (a)(1)”—in violation of § 1591(a)(2). 18 U.S.C. § 1591(e)(4)

15   (defining “participation in a venture” for purposes of 18 U.S.C. § 1591(a)(2)). Outside an entirely

16   conclusory allegation or two, Plaintiff does not allege that Hilton (or HLT) even knew her trafficker,

17   much less “knowingly assisted” him in violating the statute. *See, e.g.*, Compl. ¶ 63 (alleging an

18   “implicit understanding”). Nor does Plaintiff allege that Hilton “knowingly assisted” HLT in

19   violating the statute either. *See supra*.

20       **Third**, in all events, the Complaint does not plausibly allege that Hilton (or HLT) knew or

21   recklessly disregarded that “force, fraud, [or] coercion . . . [would] be used to cause [Plaintiff] to

22   engage in [] commercial sex,” in violations of §§ 1591(a)(1) or (a)(2). To the extent staff ever

23   allegedly noticed Plaintiff, the most they might have speculated (but certainly not *known* or

24   *recklessly disregarded*) is Plaintiff was there for commercial sex acts. But as explained above, that

25   is not enough to even satisfy § 1595(a)’s “should have known” standard, much less § 1591(a)’s

26   criminal knowledge standard. *See supra* Part I.B; *J.B.*, 2020 WL 4901196, at *11 (allegations as to

27   participant theory must be sufficient to “allow courts to infer that motel or hotel employees should

28   have known that human trafficking was occurring, as opposed to other criminal conduct, such as

HILTON’S MOT. TO DISMISS COMPLAINT
CASE NO. 5:24-cv-060993-PCP-VKD

prostitution"); *see also, e.g.*, *B.J.*, 2023 WL 6120682, at \*11–12; *B.J.*, 2023 WL 3569979, at \*6; *A.B.*, 484 F. Supp. 3d at 941; *T.R.S. v. Wyndham Hotels & Resorts, Inc.*, 2024 WL 3088722, at \*11 (E.D. Cal. June 20, 2024); *G.N.C.*, 2024 WL 4149251, at \*3–5; *D. v. MGM Resorts Int'l*, 2024 WL 4839744, at \*4 (D. Nev. Nov. 19, 2024). Because there is no factual basis for inferring Hilton knew or recklessly disregarded Plaintiff would be *criminally trafficked* at its own hands or another's, any *perpetrator* theory necessarily fails for that additional reason.

### III.    Plaintiff Has No "Vicarious Liability" Claim Against Hilton.

Finally, Plaintiff has not plausibly alleged a "vicarious liability" claim against Hilton, even assuming it is a valid standalone cause of action. Initially, of course, Hilton and HLT are separate corporations. *See* Compl. ¶¶ 12, 16. And the mere fact that they are both related to the Hilton brand name does not "make the one liable for the [other's] torts." *United States v. Bestfoods*, 524 U.S. 51, 61 (1998). Plaintiff has not alleged that these corporations are alter egos of another. *See id.* Plaintiff has attempted to allege that somehow "HLT San Jose LLC acted as the actual agent of Hilton when operating the San Jose DoubleTree." Compl. ¶ 173. But she does not even allege what "Hilton" entity supposedly controlled HLT. *See id.* & ¶ 152. She has *dismissed* four out of the five "Hilton" entities. ECF No. 10 (voluntarily dismissing "Hilton Worldwide Holdings Inc., Hilton Franchise Holding LLC, Hilton Resorts Corporation and Hilton Management LLC"). And it is not clear on what good-faith basis the agency boilerplate upon boilerplate rests. Compl. ¶¶ 152–62, 173–79; *cf.* Fed. R. Civ. P. 11(b) adv. comm. note ("information and belief" "is not a license to join parties" or "make claims" "without factual basis or justification").

Regardless, however, there is no "vicarious liability" here for the simple reason that neither Hilton nor HLT is directly liable. *See B.J.*, 2023 WL 3569979, at \*7 (noting "vicarious liability" claims under the TVPRA "necessarily fail" where a plaintiff "fail[s] to state a claim for direct liability"). Hilton and HLT neither knowingly participated in nor had constructive knowledge of a venture that trafficked Plaintiff and should not have even known that she was being trafficked. *See supra* Part I. And they certainly did not knowingly traffic her or facilitate her trafficking, and did not know or recklessly disregard that she was forced to engage in commercial sex through force, fraud, or coercion. *See supra* Part II. Accordingly, there can be no "vicarious liability" at all.

1

## CONCLUSION

2    For the foregoing reasons, Hilton respectfully requests that the Court dismiss the Complaint

3    against it with prejudice under Rule 12(b)(6).

4    Dated:  January 6, 2025                                Respectfully submitted,

5                                                           JONES DAY

6

7                                                           By: */s/ Nicole M. Perry*
                                                           Nicole Perry, Esq., *Pro Hac Vice*
8                                                          JONES DAY
                                                           717 Texas Street, Suite 3300
9                                                          Houston, TX 77002
                                                           Telephone:  (832) 239-3939
10                                                         Facsimile:  (832) 239-3600
                                                           Email: nmperry@jonesday.com
11
                                                           Bethany Biesenthal, Esq., *Pro Hac Vice*
12                                                         Allison McQueen, Esq., *Pro Hac Vice*
                                                           JONES DAY
13                                                         110 North Wacker Drive, Suite 4800
                                                           Chicago, IL  60606
14                                                         Telephone:  (312) 782-3939
                                                           Facsimile:  (312) 782-8585
15                                                         Email: bbiesenthal@jonesday.com
                                                                 amcqueen@jonesday.com
16
                                                           Emily F. Knox
17                                                         JONES DAY
                                                           555 California Street, 26th Floor
18                                                         San Francisco, CA  94104
                                                           Telephone:      (415) 626-3939
19                                                         Facsimile:      (415) 875-5700
                                                           Email: egoldbergknox@jonesday.com
20

21

22                                                         Attorneys for Defendant
                                                           *Hilton Domestic Operating Company Inc.*
23

24

25

26

27

28

HILTON'S MOT. TO DISMISS COMPLAINT
CASE NO. 5:24-CV-060993-PCP-VKD