1

2

3

4                          UNITED STATES DISTRICT COURT

5                        NORTHERN DISTRICT OF CALIFORNIA

6

7     JANE DOE (K.R.D.),                          Case No.  5:24-cv-06993-PCP

              Plaintiff,
8
                                                  **ORDER DENYING MOTION TO**
9          v.                                     **DISMISS**

10    HILTON WORLDWIDE HOLDINGS                    Re: Dkt. Nos. 28, 55, 60, 64
      INC., et al.,
11
              Defendants.
12

13         Plaintiff K.R.D. brings this action against hotel franchisor Hilton Domestic Operating

14    Company Inc. (Hilton) and hotel franchisee HLT San Jose, LLC (HLT) alleging violations of the

15    Trafficking Victims Protection Reauthorization Act (TVPRA).[1] K.R.D. asserts that the defendants

16    are liable under the TVPRA for the harm she suffered when she was sex trafficked out of the San

17    José DoubleTree hotel for over a year. Defendants move to dismiss pursuant to Rule 12(b)(6). For

18    the following reasons, the motion is denied.[2]

19

20    [1] K.R.D. moves to proceed under a pseudonym for all pre-trial proceedings because of the
      sensitive nature of her allegations and the risk of retribution from her former trafficker and johns.
21    Dkt. No. 55. Defendants do not oppose the motion. Because K.R.D.'s "need for anonymity
      outweighs prejudice to the opposing party and the public's interest in knowing [her] identity,"
22    *Does I Thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1068 (9th Cir. 2000), the Court
      grants the motion. The Court also grants Hilton's administrative motion to seal exhibits to its reply
23    in support of its motion to supplement its motion to dismiss, Dkt. No. 64, because those
      documents reveal K.R.D.'s identity.
24
      [2] Hilton moves for leave to file a supplemental brief presenting new evidence from Hilton's
25    reservation records system, Dkt. No. 60, contending that because room rentals are central to
      K.R.D.'s complaint, Hilton's reservation records should be incorporated by reference. On a
26    motion to dismiss pursuant to Rule 12(b)(6), the Court generally "may not consider material
      outside the pleadings." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018).
27    The doctrine of incorporation by reference permits the Court to treat an extrinsic document as if it
      were part of the complaint if the pleading "refers extensively to the document or the document
28    forms the basis of the plaintiff's claim." *Id.* at 1002 (cleaned up). The doctrine of incorporation by
      reference is limited, however, to *documents* that form the basis of a complaint, not general

United States District Court
Northern District of California

1

**BACKGROUND**

2      From March 1, 2014 to December 31, 2016, K.R.D. was sex trafficked continuously by a

3  man she met on a dating app.[3] K.R.D.'s trafficker began a romantic relationship with her for the

4  purpose of luring her into trafficking. Without her consent, he created an online account and

5  advertised commercial sex services with K.R.D. He beat, threatened, and otherwise manipulated

6  and coerced K.R.D. to have sex with the johns who responded to the online ads he posted. He set

7  the prices for the commercial sex services that he forced K.R.D. to provide, drove her to several

8  different hotels where she was forced to engage in commercial sex, and collected money directly

9  from johns. Because of her trafficker's controlling and threatening behavior, K.R.D. believed that

10  she would face serious harm if she did not comply with his ongoing demand that she engage in

11  commercial sex for his benefit.

12      For more than a year, K.R.D. was trafficked at the San José DoubleTree.[4] K.R.D. alleges

13  that hotel staff observed "open and obvious" signs of her trafficking. These "industry recognized

14  red flags" included the following:

15  - K.R.D. would check in or pick up a key to a room that a john had previously reserved while her trafficker waited in the parking lot visible to the hotel staff.

16  - K.R.D. had no possessions with her when she arrived at the hotel.

17  - K.R.D. dressed in provocative clothing that her trafficker required her to wear.

18  - The hotel rooms in which K.R.D. was trafficked were frequently in a specified area of the hotel to make it easier for johns to come and go.

19

20  - Men who were not hotel guests constantly streamed in and out of K.R.D.'s room, entering and leaving at odd hours and staying for only brief periods of time.

21  - While K.R.D. was forced to provide commercial sex services to johns, her trafficker stayed outside in the parking lot, smoking marijuana with other pimps and clearly surveilling K.R.D.

22

23      K.R.D. alleges that sex trafficking was widespread at the San José DoubleTree and that

24

25  concepts. Although K.R.D. alleges that Hilton rented rooms to her trafficker, the complaint contains no references to Hilton's reservation records and those records are not the basis of her claim. Accordingly, Hilton's motion is denied.

26

27  [3] For purposes of this Rule 12(b)(6) motion, the Court assumes the truth of the allegations in the complaint.

28  [4] The complaint alleges two different date ranges: March 1, 2014 to July 18, 2015 and April 2014 to May 2016.

1    obvious signs of other victims' trafficking were witnessed by hotel staff and management as well.

2    These signs included high volumes of men who were not registered guests coming in and out of

3    victims' rooms at unusual times, victims' frequent requests for clean towels and sheets, and

4    victims' provocative clothing, signs of being under the influence of drugs, and lack of possessions

5    for extended stays. K.R.D. alleges that traffickers operated openly at the San José DoubleTree due

6    to an implicit understanding between traffickers and the defendants.

7        K.R.D. alleges that defendants were aware of the problem of sex trafficking in hotels

8    generally, and in Hilton hotels, including DoubleTree properties, specifically. Because hotels are

9    the primary sites of sex trafficking in the United States, government agencies and nonprofit

10   organizations have undertaken significant efforts to educate the hotel industry, including

11   defendants, on best practices for identifying and responding to sex trafficking. K.R.D. alleges that

12   Hilton was alerted to the problem of sex trafficking in its hotels by news reports and online

13   customer reviews that it monitored.

14       The San José DoubleTree is operated by HLT, which is a franchisee of Hilton. Hilton

15   shares in the profits of the San José DoubleTree, primarily from room rentals. K.R.D. alleges that

16   Hilton exercises significant control over numerous aspects of HLT's operation of the San José

17   DoubleTree, including its room rates, booking system, hiring, staffing, employee education and

18   training, facilities, and security. Hilton also controls the hotel's policies for detecting and reporting

19   sex trafficking, and hotel staff were required to report all suspected instances of sex trafficking to

20   Hilton.

21       K.R.D. initially filed this action against Hilton Worldwide Holdings Inc., Hilton Domestic

22   Operating Company Inc., Hilton Resorts Corporation, Hilton Management LLC, Hilton Franchise

23   Holding LLC, and HLT San Jose, LLC. She subsequently voluntarily dismissed her claims against

24   all parties except Hilton Domestic Operating Company Inc. and HLT San Jose, LLC. The TVPRA

25   creates liability for both beneficiaries and perpetrators of sex trafficking, and K.R.D. asserts

26   claims against both defendants under both theories. She asserts claims against Hilton both directly

27   and under a vicarious liability theory.

28       On January 6, 2025, Hilton moved to dismiss the complaint pursuant to Rule 12(b)(6).

United States District Court
Northern District of California

1    HLT joined that motion.

2                                **LEGAL STANDARD**

3            Federal Rule of Civil Procedure 8(a)(2) requires a complaint to include a "short and plain

4    statement of the claim showing that the pleader is entitled to relief." If the complaint fails to state a

5    claim, the defendant may move for dismissal under Federal Rule of Civil Procedure 12(b)(6).

6    Dismissal is required if the plaintiff fails to allege facts allowing the Court to "draw the reasonable

7    inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662,

8    678 (2009). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a

9    cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v.*

10   *Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). To survive a Rule 12(b)(6)

11   motion, a plaintiff need only plead "enough facts to state a claim to relief that is plausible on its

12   face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

13           In considering a Rule 12(b)(6) motion, the Court must "accept all factual allegations in the

14   complaint as true and construe the pleadings in the light most favorable" to the non-moving party.

15   *Rowe v. Educ. Credit Mgmt. Corp.*, 559 F.3d 1028, 1029–30 (9th Cir. 2009). While legal

16   conclusions "can provide the [complaint's] framework," the Court will not assume they are correct

17   unless adequately "supported by factual allegations." *Iqbal*, 556 U.S. at 679. Courts do not "accept

18   as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable

19   inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (quoting *Sprewell*

20   *v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)).

21                                **ANALYSIS**

22           Congress enacted the Trafficking Victims Protection Act (TVPA), Pub. L. No. 106-386,

23   div. A, 114 Stat. 1466 (2000) (codified as amended at 18 U.S.C. §§ 1589–1592), in 2000. The law

24   "created several new federal criminal offenses intended to more comprehensively and effectively

25   combat human trafficking," *Ratha v. Phatthana Seafood Co.*, 35 F.4th 1159, 1164 (9th Cir. 2022).

26   "Among other things, the TVPA criminalized engaging in sex trafficking by means of force, fraud,

27   or coercion." *Doe 1-10 v. Fitzgerald*, 102 F.4th 1089, 1091 (9th Cir. 2024); *see* 18 U.S.C. § 1591.

28           Congress reauthorized and amended the statute through the 2003 Trafficking Victims

United States District Court
Northern District of California

4

United States District Court
Northern District of California

1    Protection and Reauthorization Act (TVPRA). The TVPRA created a civil cause of action for

2    victims to seek damages from perpetrators of criminal sex trafficking. *Fitzgerald*, 102 F.4th at

3    1091; *see* 18 U.S.C. § 1595(a).

4         In 2008, Congress again amended the TVPRA to expand its civil remedies provision.

5    *Ratha*, 35 F.4th at 1164–65; *see* 18 U.S.C. § 1595(a). Under the amended statute, victims can

6    bring claims against both the perpetrators and beneficiaries of criminal sex trafficking violations.

7    18 U.S.C. § 1595(a) now provides that:

8         An individual who is a victim of a violation of this chapter may bring
     a civil action against the perpetrator (or whoever knowingly benefits,
9     or attempts or conspires to benefit, financially or by receiving
     anything of value from participation in a venture which that person
10     knew or should have known has engaged in an act in violation of this
     chapter) in an appropriate district court of the United States and may
11     recover damages and reasonable attorneys fees.

12

13        The TVPRA thus contains both criminal and civil causes of action, the latter

14    of which permits both perpetrator and beneficiary theories of liability.

15        K.R.D. brings claims under both theories and alleges that Hilton is both

16    directly liable for violations of the TVPRA and vicariously liable for HLT's

17    violations. Defendants argue that K.R.D. fails to state a claim under a beneficiary

18    theory because she does not plead that they participated in a venture that violated the

19    TVPRA or that they knew or should have known about any such violation.

20    Defendants argue that K.R.D. fails to state a claim under a perpetrator theory because

21    she does not plead actual knowledge or that defendants harbored K.R.D., since

22    harboring requires an intent to violate the law in some way. They contend that

23    because there is no underlying violation of the TVPRA under either theory, Hilton

24    cannot be vicariously liable.

25    **I.    K.R.D. pleads facts sufficient to plausibly allege that HLT was Hilton's agent.**

26        In moving to dismiss, defendants' primary argument is that K.R.D.'s complaint fails to

27    allege facts sufficient to establish that either Hilton or HLT violated the TVPRA. Hilton also

28    contends, however, that the complaint fails to allege facts sufficient for Hilton to be found

1    vicariously liable for HLT's conduct. Because Hilton's potential vicarious liability for HLT's

2    actions, if sufficiently alleged, would permit the Court to focus its analysis of direct TVPRA

3    liability primarily on HLT's alleged conduct, the Court will begin by considering the vicarious

4    liability issue.

5        "To state a claim for vicarious liability [under the TVPRA] under an agency theory, [a]

6    [p]laintiff must plausibly allege that (1) [d]efendants and their corresponding hotels were in an

7    agency relationship, and (2) the hotels or hotel staff are plausibly liable under § 1595." *A.B. v.*

8    *Hilton Worldwide Holdings Inc.*, 484 F. Supp. 3d 921, 939 (D. Or. 2020). Because the statutory

9    text of the TVPRA does not address the question of indirect liability, the Court applies the federal

10   common law of agency. *See J.M. v. Choice Hotels Int'l, Inc.*, No. 2:22-CV-00672-KJM-JDP, 2022

11   WL 10626493, at *5 (E.D. Cal. Oct. 18, 2022); *S.G. v. Vagabond Inn Corp.*, No. SACV 21-955,

12   2022 WL 22903718, at *8 (C.D. Cal. Mar. 2, 2022); *A.B.*, 484 F. Supp. 3d at 939; *see also Mavrix*

13   *Photographs, LLC v. LiveJournal, Inc.*, 873 F.3d 1045, 1054 (9th Cir. 2017) (cleaned up)

14   (explaining that the common law of agency applies unless otherwise specified by statute because

15   "[s]tatutes are presumed not to disturb the common law, unless the language of a statute is clear

16   and explicit for this purpose"). Courts in the Ninth Circuit apply common law agency principles

17   from the Restatement (Third) of Agency. *A.B.*, 484 F. Supp. 3d at 939; *see, e.g.*, *Mavrix*, 873 F.3d

18   at 1054. Under federal common law, an agency relationship exists when a principal and agent

19   manifest assent that the agent will act on the principal's behalf and the principal will retain control

20   over the undertaking. *A.B.*, 484 F. Supp. 3d at 939; *Am. Airlines, Inc. v. Mawhinney*, 904 F.3d

21   1114, 1124 (9th Cir. 2018) (cleaned up) ("To establish an agency relationship, the principal must

22   in some manner indicate that the agent is to act for him, and the agent must act or agree to act on

23   his behalf and subject to his control."). While a franchising relationship does not automatically

24   create an agency relationship, it also does not insulate a franchisor from vicarious liability where

25   the franchisor in fact acts as a principal. *B.J.*, 2023 WL 6120682, at *9; *J.M.*, 2022 WL 10626493,

26   at *5 ("While a franchisor-franchisee relationship does not necessarily create an agency

27   relationship, … a franchisor may be held liable for a franchisee's actions if the franchisor controls

28   the franchisee's day-to-day operations."). "[C]ourts focus on the franchisor's control over the …

1    the specific aspect of the franchisee's business that caused the alleged injury." *B.J.*, 2023 WL

2    6120682, at *9.

3            K.R.D. alleges that Hilton exercised significant control over the day-to-day operations of

4    the San José DoubleTree, including those aspects most closely related to her trafficking. She

5    alleges that Hilton dictated room rates, hosted the online booking system, made employment

6    decisions, controlled employee training, set staffing levels, imposed strict requirements for

7    maintenance of hotel facilities, and oversaw security policies and practices. These allegations are

8    sufficient to plead an agency relationship. *See J.M.*, 2022 WL 10626493, at *5 (finding similar

9    allegations sufficient to plead an agency relationship for purposes of liability under the TVPRA);

10   *S.G.*, 2022 WL 22903718, at *23–25 (same); *J.C. v. Choice Hotels Int'l*, Inc., No. 20-CV-00155-

11   WHO, 2020 WL 6318707, at *9–10 (N.D. Cal. Oct. 28, 2020) (same); *A.B.*, 484 F. Supp. 3d at

12   940 (same); *C. T. v. Red Roof Inns, Inc.*, No. 2:22-CV-834-JES-KCD, 2023 WL 3510879, at *3

13   (M.D. Fla. Mar. 11, 2023) (same); *Wyndham Hotels & Resorts*, 538 F. Supp. 3d at 1299

14   (same); *S.Y. v. Holiday Hosp. Franchising, LLC*, No. 2:20-CV-624-JES-MRM, 2021 WL

15   1751363, at *6–7 (M.D. Fla. May 4, 2021) (same); *S.Y. v. Naples Hotel Co.*, 476 F. Supp. 3d

16   1251, 1258 (M.D. Fla. 2020) (same); *A.B. v. Marriott Int'l, Inc.*, 455 F. Supp. 3d 171, 195-97

17   (E.D. Pa. 2020) (same); *Doe S.W. v. Lorain-Elyria Motel, Inc.*, No. 2:19-CV-1194, 2020 WL

18   1244192, at *7 (S.D. Ohio Mar. 16, 2020) (same); *M.A. v. Wyndham Hotels & Resorts, Inc.*, 425

19   F. Supp. 3d 959, 972 (S.D. Ohio 2019) (same).

20           Hilton offers three challenges to K.R.D.'s theory of vicarious liability. First, Hilton argues

21   that K.R.D. fails to state a claim for vicarious liability because she does not plead that Hilton and

22   HLT are alter egos of one another. This argument is unavailing because K.R.D.'s theory of

23   vicarious liability is that HLT was Hilton's agent, not that the companies were alter egos. Second,

24   Hilton contends that because K.R.D. originally brought claims against several other Hilton

25   entities, the complaint's allegation that HLT was "Hilton's" agent is unclear. But while the

26   assertion of claims against several defendants with similar names that all share a common term

27   may create some occasional ambiguities in a complaint, "mere vagueness or lack of detail is not

28   ground for a motion to dismiss." *Harman v. Valley Nat. Bank of Ariz.*, 339 F.2d 564, 567 (9th Cir.

United States District Court
Northern District of California

1964). Further, the dismissal of the other Hilton entities from this case, along with K.R.D.'s

explanation of her vicarious liability theory in her opposition to the motion to dismiss, clarifies

that the Hilton entity that allegedly controlled HLT is Hilton Domestic Operating Company Inc.

Finally, Hilton characterizes K.R.D.'s agency allegations as "boilerplate upon boilerplate" and

implies that they lack a good faith basis. But the use of "boilerplate" is not a ground for dismissal

under circumstances where similar language is appropriately used to describe similar facts. And

"allegations in a complaint based on information and belief are sufficient to survive

a motion to dismiss as long as there is some plausible basis to support a cause of action." *TV Ears,*

*Inc. v. SYK Grp., LLC*, No. 16CV867-GPC(WVG), 2016 WL 7336623, at \*3 (S.D. Cal. Dec. 19,

2016) (cleaned up). K.R.D.'s allegations about the specific nature of the franchise relationship

between the defendants provide a plausible basis from which to infer an agency relationship.

Hilton is thus potentially vicariously liable for HLT's alleged violations of the TVPRA.

**II.     K.R.D. states a claim against both defendants under both TVPRA theories.**

      **A.     K.R.D. states a claim against both defendants under a beneficiary theory.**

As noted already, defendants' primary argument is that K.R.D. fails to allege that either

defendant violated the TVPRA. The Court will first consider whether K.R.D. states a claim under

a beneficiary theory of liability. To state such a claim, a plaintiff must plead that the defendant (1)

"knowingly benefit[ted], financially or by receiving anything of value"; (2) "from participation in

a venture"; (3) that they "knew or should have known has engaged in an act in violation of this

chapter." 18 U.S.C. § 1595(a).

      **1.     Knowingly benefitted**

The first requirement for establishing liability on a beneficiary theory is "merely [that]

defendants knowingly receive a financial benefit." *J.M.*, 2022 WL 10626493, at \*3. "[T]he money

[hotel operators] receive from traffickers' room rentals constitutes such a benefit." *Id.*; *see also*

*J.C.*, 2020 WL 6318707, at \*4 (collecting cases). Here, K.R.D. pleads that defendants received a

financial benefit from renting rooms to her trafficker over many months, and defendants do not

challenge the sufficiency of K.R.D.'s claim with respect to this element. Accordingly, she

adequately pleads the first requirement.

United States District Court
Northern District of California

United States District Court
Northern District of California

1          **2.      Participation in a venture**

2          K.R.D. offers two theories regarding the manner in which the defendants "participat[ed] in

3  a venture … that …engaged in an act in violation of [the TVPRA]" under section 1595. 18 U.S.C.

4  § 1595(a). First, she contends that HLT participated in such a venture through its continuous

5  business relationship with her sex trafficker. Second, she contends that defendants were part of a

6  joint commercial hotel-operating venture. Defendants argue that the first theory fails because

7  participation in a venture requires a common purpose and K.R.D. does not allege that defendants

8  "took part in any sex-trafficking business like her sex traffickers." Defendants argue that the

9  second theory fails because even if defendants participated in a commercial venture with each

10  other, none of the participants in that venture engaged in sex trafficking.

11          Section 1595 contains no definition of "participation in a venture." The TVPRA's criminal

12  provision, however, defines that term as "knowingly assisting, supporting, or facilitating a

13  violation" of the criminal sex trafficking provision. 18 U.S.C. § 1591(e)(4). This definition

14  "require[s] that a defendant actually participate and commit some 'overt act' that furthers the sex

15  trafficking aspect of the venture." *United States v. Afyare*, 632 F. App'x 272, 286 (6th Cir. 2016);

16  *see also B.M. v. Wyndham Hotels & Resorts, Inc.*, No. 20-CV-00656-BLF, 2020 WL 4368214, at

17  *3 (N.D. Cal. July 30, 2020).

18          Despite the general presumption that the same "words repeated in different parts of the

19  same statute generally have the same meaning," *Law v. Siegel*, 571 U.S. 415, 422 (2014), the

20  definition of "participation in a venture" provided in section 1591 does not apply to section 1595.

21  By its own terms, section 1591 expressly limits its definitions to that section alone. 18 U.S.C. §

22  1591(e); *see Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714, 724 (11th Cir. 2021) ("[A]lthough we

23  usually presume that Congress intends phrases in the same statute to mean the same thing … the

24  text of this statute overcomes that presumption. Section 1591 clearly states that its definition of

25  'participation in a venture' applies only '[i]n this section.'"). This limitation reflects important

26  differences with respect to scienter between the TVPRA's criminal and civil provisions. *Id.* While

27  section 1591 criminalizes only *knowingly* assisting, supporting, or facilitating a TVPRA violation,

28  section 1595, as amended, permits claims against beneficiaries who *should have known* about the

9

1    TVPRA violation. "[A]pplying the 'participation in a venture' definition from the criminal

2    liability section of the TVPRA to the civil liability section of the TVPRA, would void the 'should

3    have known' language in the civil remedy and … violate[] the cardinal principle of statutory

4    construction that a statute ought, upon the whole, to be construed so that, if it can be prevented, no

5    clause, sentence, or word shall be superfluous, void, or insignificant." *B.M.*, 2020 WL 4368214, at

6    * 3 (cleaned up); *see also J.C. v. Choice Hotels Int'l*, Inc., No. 20-CV-00155-WHO, 2020 WL

7    3035794, at *1 n.1 (N.D. Cal. June 5, 2020); *Doe #1 v. Red Roof Inn*, 21 F.4th at 724 (explaining

8    that "the civil provisions of [s]ection 1595(a) make no sense with [s]ection 1591's definition of

9    'participation in a venture'" because section 1591's definition would "mak[e] the 'should have

10   known' language [in section 1595] superfluous"); *M.A.*, 425 F. Supp. 3d at 969.

11          In the absence of any statutory definition, the Court will begin with the ordinary meaning

12   of the terms "participation" and "venture." *See City of Los Angeles v. Barr*, 941 F.3d 931, 940 (9th

13   Cir. 2019) (cleaned up) ("Where [a] statute does not define the relevant terms, we give them their

14   ordinary, contemporary, common meaning, and may consult dictionary definitions."); *see also*

15   *Doe 1 v. Apple Inc.*, 96 F.4th 403, 414 (D.C. Cir. 2024) (relying on dictionary definitions to define

16   participation in a venture in section 1595). "Participation" means "[t]he act of taking part or

17   sharing in something." *Participation*, American Heritage Dictionary of the English Language (5th

18   ed. 2022). "Venture" means "[a]n undertaking that is dangerous, daring, or of uncertain outcome"

19   or "[a] business enterprise involving some risk in expectation of gain." *Venture*, American

20   Heritage Dictionary of the English Language (5th ed. 2022). Drawing on these definitions, some

21   courts have interpreted "participation in a venture" in section 1595 to mean "taking part or sharing

22   in an enterprise or undertaking that involves danger, uncertainty, or risk, and potential gain." *Doe*

23   *1 v. Apple Inc.*, 96 F.4th at 415.

24          The problem with that definition is that defining "venture" so narrowly conflicts with the

25   available textual evidence of Congress's intent as to the meaning of that term. Section 1591, for

26   example, defines "venture" broadly to include "any group of two or more individuals associated in

27   fact, whether or not a legal entity." 18 U.S.C. § 1591(e)(5). Although this definition does not

28   apply directly to section 1595, it makes little sense to conclude, absent any indication in the

United States District Court
Northern District of California

1   statutory text, that when Congress amended the TVPRA to *expand* liability it intended for one of

2   the terms it used in doing so to be defined far more *narrowly* than it was already defined elsewhere

3   in the statute. As the Seventh Circuit explained in *G.G. v. Salesforce.com, Inc.*, it is "safe to

4   assume that Congress did not intend 'venture' in Section 1595, which establishes civil liability, to

5   be any more demanding than 'venture' in Section 1591, which establishes criminal liability." 76

6   F.4th 544, 554 (7th Cir. 2023); *see also Peyton v. Rowe*, 391 U.S. 54, 65 (1968) (applying "canon

7   of construction that remedial statutes should be liberally construed"). Given the ordinary meanings

8   of the terms "participation" and "venture" and Congress's intent as reflected in the history of the

9   TVPRA and the statute's express definitions, "participation in a venture" in section 1595 is best

10   interpreted to mean *taking part in an association in fact*.

11        To state a claim under section 1595, a plaintiff must plead not only that the defendant

12   participated in a venture but also that the venture "engaged in an act in violation of this chapter."

13   18 U.S.C. § 1595(a). While that phrase might appear to reference the designated acts under section

14   1591(a)(1)—namely, "recruit[ing], entic[ing], harbor[ing], transport[ing], provid[ing], obtain[ing],

15   advertis[ing], maintain[ing], patroniz[ing], or solicit[ing] … a person … in reckless disregard of

16   the fact, that means of force, threats of force, fraud, coercion … or any combination of such means

17   will be used to cause the person to engage in a commercial sex act," 18 U.S.C. § 1591—the

18   definitions in section 1591 again counsel against adopting such an interpretation. Similar to

19   section 1595, section 1591 prohibits "participation in a venture which … has engaged in an act

20   described in violation of paragraph (1)." Like the language of section 1595(a), this could be

21   interpreted to require that the venture itself have directly committed one of the acts designated

22   under subsection (a)(1). But by its own terms, section 1591 does not require such a showing.

23   Instead, it defines "participation in a venture" as "assisting, supporting, or facilitating a violation

24   of subsection (a)(1)."

25        As with the term "participation in a venture," there is no reason to believe that Congress

26   intended for section 1595's requirement that the venture have "engaged in an act in violation of

27   this chapter" to be construed more narrowly than section 1591's comparable prohibition. The

28   closely related provision of section 1591 thus provides an important benchmark for construing

United States District Court
Northern District of California

11

1    section 1595's "engaged in an act in violation of this chapter" requirement. Accordingly, for the

2    purposes of section 1595, the Court will construe participation in a venture that "engaged in an act

3    in violation of this chapter" to mean not that the venture itself must have committed a violation of

4    subsection (a)(1), but that the venture must have "assist[ed], support[ed], or facilitate[d]" a

5    violation of that subsection.

6          In sum, the Court construes "participation in a venture [that] has engaged in an act in

7    violation of this chapter" to require that the defendant have taken part in an association in fact that

8    assisted, supported, or facilitated a violation of 18 U.S.C. § 1591(a)(1). The Court will apply this

9    definition in considering whether K.R.D. sufficiently alleges that Hilton and HLT are subject to

10   liability on a beneficiary theory.

11         As noted above, K.R.D.'s first theory is that HLT participated in a venture that assisted,

12   supported, or facilitated a TVPRA violation through its continuous business relationship with her

13   trafficker. Specifically, she alleges that HLT rented rooms to her trafficker for more than a year

14   despite obvious signs that K.R.D. was being trafficked out of those rooms. These allegations are

15   adequate to satisfy the second element for beneficiary liability. Through that sustained and

16   ongoing business relationship, HLT allegedly took part in an association in fact with K.R.D.'s

17   trafficker. And that continuous business relationship allegedly assisted, supported, or facilitated

18   K.R.D.'s trafficking by providing the physical space in which that trafficking occurred.

19         Even while applying varying definitions of "participation in a venture," multiple circuit

20   courts and many district courts have recognized that a continuous business relationship like that

21   alleged between HLT and K.R.D.'s trafficker is sufficient to allege participation in a venture under

22   section 1595. The D.C. Circuit, for example, has observed that participation in venture may be

23   shown by a "direct and continuous relationship that existed between the parties." *See Doe 1 v.*

24   *Apple*, 96 F.4th at 416. Likewise, the Seventh Circuit has held that "a plaintiff may sufficiently

25   allege [participation in a venture] by showing 'a continuous business relationship' between the

26   participant and the trafficker." *G.G.*, 76 F.4th at 559–60.[5] *See also Doe v. Wyndham Hotels &*

27

28   _____

     [5] Contrary to defendants' representations, the Eleventh Circuit did not hold in *Doe #1 v. Red Roof*

United States District Court
Northern District of California

1    *Resorts*, No. 2:23-CV-01676-DAD-CSK, 2025 WL 85831, at \*6 (E.D. Cal. Jan. 7, 2025)

2    (explaining that "in order to connect the dots between plaintiff's experience as a victim of sex

3    trafficking and [the defendant hotel]," a plaintiff need only allege "a continuous business

4    relationship between [the defendant hotel] and sex traffickers where [the defendant] rented rooms

5    to people it knew or should have known were engaged in sex trafficking"); *Doe v. Wyndham*

6    *Hotels & Resorts, Inc.*, No. 24-CV-217 JLS (AHG), 2025 WL 824369, at \*7 (S.D. Cal. Mar. 14,

7    2025) (explaining that a plaintiff can allege participation in a venture by "showing a continuous

8    business relationship between a defendant hotel and a sex trafficker where the defendant rented

9    rooms to people it knew or should have known were engaged in sex trafficking").[6]

10

11   *Inns, Inc.*, 21 F.4th 714, 724 (11th Cir. 2021), that renting hotel rooms to traffickers or engaging in
     any other kind of continuous business relationship cannot constitute participation in a venture. The
12   Eleventh Circuit instead held that the plaintiff had failed to allege sufficient facts regarding the
     hotel franchisors' relationship with *either* the sex trafficker *or* the hotel operators that rented
13   rooms to the trafficker. 51 F.4th at 726–27; *see also G.G.*, 76 F.4th at 561–61 (cleaned up) ("Key
     to the court's reasoning [in *Doe #1 v. Red Roof Inns*] was how the plaintiffs had chosen to define
14   the alleged venture—specifically as a 'sex trafficking' venture. The court wrote that, if the
     plaintiffs had alleged 'that the franchisors participated in *commercial ventures* to operate hotels
15   and that those hotel ventures violated' Section 1591, the result might have been different. The
     court rejected this framing, however, because the plaintiffs had not alleged it in their complaint or
16   presented it to the district court."); *cf. Doe 1 v. Apple*, 96 F.4th at 415 (holding that the plaintiffs
     failed to allege that the tech company defendants participated in a venture with companies that
17   facilitated forced labor not because a continuous business relationship is insufficient to show
     participation in a venture but because plaintiffs did not allege facts showing more than an
18   ordinary, buyer-seller, arms-length transaction between the companies). Defendants rely on *K. H.*
     *v. Riti, Inc.*, No. 23-11682, 2024 WL 505063 (11th Cir. Feb. 9, 2024), an unpublished Eleventh
19   Circuit opinion concluding that a hotel that "continued to engage in a hotel business relationship
     with and collect room rental revenue from [a trafficker] for approximately four years" did not
20   participate in a venture with that trafficker, but the Court is unpersuaded by the reasoning of *K.H.*,
     as it appears to misread *Doe #1 v. Red Roof Inns*.

21   [6] *See also Doe v. Wyndham Hotels & Resorts, Inc.*, No. 2:24-CV-00109-DAE, 2024 WL
     4224915, at \*9 (W.D. Tex. Aug. 30, 2024) (explaining that "one way to establish a Section
22   1595(a) venture is to show a continuous business relationship between a defendant hotel and sex
     traffickers in which the defendants rented rooms to people it knew or should have known were
23   engaged in sex trafficking"); *Doe (S.A.S.) v. ESA P Portfolio LLC*, No. 3:23-CV-06038-TMC,
     2024 WL 3276417, at \*7 (W.D. Wash. July 2, 2024) (cleaned up) ("[T]hat [plaintiff] was
24   repeatedly trafficked at the Doubletree, which provided a service to her trafficker that was tailored
     to his needs, is sufficient to show a continuous business relationship where the Doubletree
25   provided assistance, support, or facilitation that went beyond mere arms-length transactions.");
     *B.J.*, 2023 WL 6120682, at \*4 (holding that plaintiff sufficiently alleged participation in a venture
26   by alleging a continuous business relationship); *H.H. v. G6 Hosp., LLC*, No. 2:19-CV-755, 2019
     WL 6682152, at \*4 (S.D. Ohio Dec. 6, 2019) ("Plaintiff must allege at least a showing of a
27   continuous business relationship between the trafficker and the hotels such that it would appear
     that the trafficker and the hotels have established a pattern of conduct or could be said to have a
28   tacit agreement."); *M.A.*, 425 F. Supp. at 970 (holding that allegations that a hotel defendant

United States District Court
Northern District of California

1      Defendants challenge K.R.D.'s theory of participation in a venture on the ground that

2   neither Hilton nor HLT shared a *common purpose* with K.R.D.'s traffickers. This argument fails

3   for two reasons.

4      First, participation in a venture does not require a common purpose. Defendants derive the

5   purported common purpose requirement by defining participation in a venture as taking part "in a

6   common undertaking or enterprise involving risk and potential profit" and assuming that a

7   common undertaking requires "*actual knowledge* of [a] common purpose." Defendants' proposed

8   definition of participation in a venture is not only too narrow for the reasons explained above, but

9   also fails to recognize that a common *undertaking* need not require a common *purpose*.

10      Second, K.R.D. does, in fact, allege that HLT shared a common purpose with her

11   trafficker. HLT and K.R.D.'s trafficker shared the common purpose of sustaining an ongoing

12   business relationship through which HLT would lease physical space to the trafficker in exchange

13   for monetary payments. Such a continuous business relationship implies a common purpose,

14   whether or not there is any shared understanding of the precise reason each party is engaging in

15   the undertaking.

16      Defendants argue that if the conduct alleged here constitutes participation in a venture,

17   then the TVPRA threatens to impose liability on any buyer-seller transaction with a sex trafficker.

18   But *taking part in an association in fact* requires more than an ordinary one-off commercial

19   transaction. This Court need not identify the minimum degree of association that would constitute

20   participation in a venture because K.R.D. alleges much more than a single, discrete buyer-seller

21   transaction or even a limited number of such transactions: She alleges that HLT continued to rent

22   to her sex trafficker rooms out of which she was trafficked over a period of more than year. That is

23   sufficient by any measure to allege an association in fact as opposed to a standalone commercial

24   transaction.

25   _____

26   "repeatedly rented rooms" to "people it knew or should have known [were] engaged in sex
    trafficking" were sufficient to show "a continuous business relationship between the trafficker and
27   the hotels such that it would appear that the trafficker and the hotels have established a pattern of
    conduct or could be said to have a tacit agreement."); *A.B. v. Marriott Int'l, Inc.*, 455 F. Supp. 3d
28   171, 192 (E.D. Pa. 2020) (holding that *M.A.*'s approach to the participation in a venture element
    "best conforms to Congress's intent in amending the Act to include a civil remedy provision").

United States District Court
Northern District of California

United States District Court
Northern District of California

1          K.R.D. thus sufficiently alleges that HLT participated in a venture with her sex trafficker,

2     and that this venture assisted, supported, or facilitated her trafficking. And because Hilton may be

3     vicariously liable for HLT's conduct, K.R.D. pleads the second element of a beneficiary liability

4     claim against both HLT and Hilton.[7]

5          K.R.D.'s second participation in a venture theory is that HLT and Hilton participated in a

6     venture to jointly operate the San José DoubleTree. This allegation is certainly sufficient to plead

7     that the defendants took part in an association in fact. The problem with this theory, however, is

8     that the complaint does not allege facts suggesting that the franchisor-franchisee relationship

9     between the defendants assisted, supported, or facilitated K.R.D.'s trafficking. In the absence of

10    such allegations, this venture cannot provide the basis for beneficiary liability.

**3.     Actual or constructive knowledge**

12         To state a claim for beneficiary liability under section 1595, a plaintiff must also allege that

13    the defendant knew or should have known that the venture in which they participated engaged in

14    conduct prohibited by the TVPRA.

15         K.R.D. alleges that HLT staff at the San José DoubleTree observed open and obvious signs

16    of her trafficking, including K.R.D. carrying no belongings and wearing only provocative clothing

17    while checking into or picking up keys to rooms that various men had reserved; an onslaught of

18    men who were not hotel guests streaming in and out of K.R.D.'s room at odd hours, staying only

19    for brief periods; and K.R.D.'s trafficker stationed in the parking lot, smoking marijuana with

20    other pimps and clearly surveilling K.R.D. K.R.D. also alleges that sex trafficking was widespread

21    at the San José DoubleTree and that hotel staff witnessed similar and additional signs that other

22    victims were being trafficked. At the motion to dismiss stage, these facts are sufficient to plausibly

23    allege that HLT's staff knew or should have known that maintaining a continuous business

24    relationship with K.R.D.'s trafficker by renting him rooms would assist, support, or facilitate

25    K.R.D.'s sex trafficking.

26         Defendants argue that "the *most* hotel staff might have speculated about [K.R.D] is she

[7] K.R.D. does not allege that Hilton directly entered into any venture with her trafficker.

15

United States District Court
Northern District of California

1     was there to engage in prostitution—not that she was a sex trafficking victim." Defendants

2     identify various signs of trafficking that K.R.D. does *not* allege she exhibited: that she appeared

3     fearful, anxious, or physically abused; that she was verbally or emotionally abused in front of

4     hotel staff; that her room was filled with bulk sexual paraphernalia; that her trafficker used

5     multiple cell phones; or that she or anyone allegedly entering her room showed signs of

6     malnourishment, poor hygiene, or fatigue.

7          Defendants' argument is unavailing. A sex trafficking victim need not plead that she

8     showed every possible of being trafficked in order to plausibly allege that sufficient signs of

9     trafficking were present to make her trafficking obvious to defendants. Further, K.R.D. plausibly

10    alleges that defendants should have known that any signs that "K.R.D. was there to engage in

11    prostitution" *were* signs "that she was a sex trafficking victim." She alleges that government

12    agencies and nonprofit organizations have undertaken extensive efforts to educate the hotel

13    industry, including defendants, about the pervasiveness of sex trafficking at hotels, common signs

14    of sex trafficking, and the close link between prostitution and sex trafficking. As K.R.D. alleges,

15    "[d]efendants knew that the link between commercial sex in a hotel environment and sex

16    trafficking was sufficiently strong that reasonable diligence required treating signs of commercial

17    sex activity, particularly with apparent and obvious involvement of a 'pimp,' as evidence of sex

18    trafficking." Finally, while some of the behaviors that K.R.D. describes might not necessarily

19    indicate sex trafficking standing alone, her allegations must be viewed as a whole. Together,

20    K.R.D.'s allegations paint a clear picture of a woman engaged in commercial sex work under the

21    close control and surveillance of a man in an environment well-known as a hotbed of trafficking.

22    Such allegations are sufficient to plead *at least* HLT's constructive knowledge under section 1595.

23    *See, e.g.*, *Doe (S.A.S.)*, 2024 WL 3276417, at *8–9; *J.M.*, 2023 WL 3456619, at *2–4; *A.B.*, 455 F.

24    Supp. at 189–90; *J.C.*, 2020 WL 6318707, at *5; *Doe v. Rickey Patel, LLC*, No. 0:20-60683-

25    WPD-CIV, 2020 WL 6121939, at *8 (S.D. Fla. Sept. 30, 2020); *M.A.*, 425 F. Supp. 3d at 967–68.

26                              *      *      *

27          For the reasons set forth above, K.R.D. adequately pleads all three requirements for

28    beneficiary liability as to HLT. And because Hilton is vicariously liable for HLT's conduct, the

16

United States District Court
Northern District of California

1    allegations against HLT provide a sufficient basis for the Court to deny the motion to dismiss the

2    beneficiary liability claim as against either defendant. For the sake of completeness, however, the

3    Court notes that K.R.D. also plausibly alleges that the hotel staff's knowledge or constructive

4    knowledge of her trafficking should be imputed to Hilton. She alleges that Hilton required detailed

5    reports about the day-to-day operations of the hotel and required hotel staff and HLT to report all

6    suspected instances of crime, including sex trafficking. It can plausibly be inferred from such

7    allegations that hotel staff reported the signs of K.R.D.'s sex trafficking that they witnessed to

8    Hilton. *See J.C.*, 2020 WL 6318707, at *7 ("At this stage, there need only be a reasonable

9    inference connecting these defendants for a direct liability claim. [Plaintiff] sufficiently alleges

10   that local hotel staff knew or should have known [she] was a victim of sex trafficking given the

11   red flags that she exhibited. Pursuant to the policies [hotel franchisor defendants] have publicly

12   disclosed, which includes training local hotel staff on sex trafficking issues, it is plausible that the

13   local hotel staff reported incidents involving [plaintiff] up the chain, such that each defendant

14   knew or should have known that [she] was being trafficked."); *J.M.*, 2023 WL 3456619, at *3

15   (cleaned up) ("[P]laintiff's allegations link the franchisee staff's knowledge to [franchisor hotel]

16   defendant because plaintiff alleges defendant required all employees of franchisee hotels to report

17   potential criminal activity or indices of human trafficking to defendant's corporate executives and

18   upper-level management.").

19            **B.      K.R.D. states a claim against both defendants under a perpetrator theory.**

20            Section 1595 creates a civil cause of action against those who commit sex trafficking in

21   violation of section 1591. 18 U.S.C. § 1595(a) (providing that anyone "who is a victim of a

22   violation of [section 1591] may bring a civil action against the perpetrator"). Section 1951

23   imposes criminal sanctions on "[w]hoever knowingly … recruits, entices, harbors, transports,

24   provides, obtains, advertises, maintains, patronizes, or solicits by any means a person … knowing

25   … that means of force, threats of force, fraud, coercion …, or any combination of such means will

26   be used to cause the person to engage in a commercial sex act." 18 U.S.C. § 1591(a). To state a

27   claim for perpetrator liability under the circumstances at issue here, K.R.D. must allege that the

28   defendants (1) knowingly harbored or maintained her (2) with knowledge that fraud or force

17

1    would be used to cause her to engage in a commercial sex act. Whereas the beneficiary theory

2    requires pleading only constructive knowledge, the perpetrator theory imports the criminal liability

3    standards of section 1591 and thus requires pleading actual knowledge or reckless disregard.

4           K.R.D. pleads facts sufficient to allege that HLT knowingly harbored her with knowledge

5    or reckless disregard of the fact that she would be forced to engage in commercial sex acts. She

6    alleges that HLT, on an ongoing basis, rented K.R.D.'s trafficker a hotel room in which it knew

7    K.R.D. was being housed. She alleges that over the course of more than a year, in a hotel in which

8    sex trafficking was widespread, hotel employees witnessed K.R.D. arriving with no possessions

9    and men streaming in and out of her room, which was deliberately located in an area of the hotel

10   where it was easy for them to come and go while her trafficker surveilled her from the parking lot.

11   At the motion to dismiss stage, the Court must read the facts in the light most favorable to the

12   plaintiff and draw reasonable inferences in her favor. Actual knowledge that K.R.D. was the

13   victim of sex trafficking or reckless disregard of that fact may be reasonably inferred from the

14   signs exhibited by K.R.D., her trafficker, and the johns who frequented K.R.D.'s room. *See J.M.*,

15   2023 WL 3456619, at *2–3 (holding that similar allegations were sufficient to plead actual

16   knowledge).

17          Defendants contend that K.R.D. fails to plead that they "harbored" her because "harbor"

18   means "to receive secretly and conceal," not merely "to house." Defendants rely on cases from the

19   immigration context holding that the term "harbor" in 8 U.S.C. § 1324(a)(1)(A)(ii) requires "intent

20   to violate the law." *United States v. Tydingco*, 909 F.3d 297, 303 (9th Cir. 2018). But the meaning

21   of "harbor" in an unrelated statute sheds little light on the meaning of the term in section 1591.

22   While "harbor" may mean "to receive secretly and conceal," that is not its only meaning.

23          The TVPRA does not define "harbor," so the Court again begins with its plain meaning.

24   *See Doe v. Hotels*, No. 6:23-CV-1012-JSS-LHP, 2024 WL 2955728, at *6 (M.D. Fla. June 12,

25   2024) (defining "harbor" under the TVPRA according to its dictionary definition); *Jane Doe K.R.*

26   *v. Choice Hotels*, No. 6:23-CV-1012-JSS-LHP, 2024 WL 4373374, at *4 (M.D. Fla. Oct. 2, 2024)

27   ("[C]aselaw supports that the term 'harboring' in the TVPRA should be given its plain

28   meaning."). Contrary to defendants' representations, "harbor" means not only "to receive secretly

United States District Court
Northern District of California

18

1   and conceal" but also "to give shelter or refuge to," *Harbor*, Merriam-Webster Dictionary,

2   https://www.merriam-webster.com/dictionary/harbor, or to "afford[] lodging [or] shelter … to a

3   person," *Harboring*, Black's Law Dictionary (12th ed. 2024). A hotel thus harbors a trafficking

4   victim when it affords shelter or lodging to her by renting a room in which she is housed to her

5   trafficker. *See Doe v. Wyndham Hotels & Resorts*, 2025 WL 85831, at *15 ("[H]otels can 'harbor'

6   under the TVPRA through the act of renting rooms to a trafficker."); *Doe v. Hotels*, 2024 WL

7   2955728, at *6 (holding that providing a trafficker "with a room and shelter whereby Plaintiff

8   could be trafficked for profit" was sufficient to state a claim for harboring); *Mouloki v. Epee*, 262

9   F. Supp. 3d 684, 698 (N.D. Ill. 2017) (citing *Ricchio*, 853 F.3d at 556) (holding that "providing

10  lodging to someone for the purposes of obtaining her labor or services against her will constitutes

11  'harboring'" under the forced labor provision of the TVPRA); *United States v. Gatlin*, 90 F.4th

12  1050, 1060 (11th Cir. 2024) (holding that defendant harbored victim under 18 U.S.C. § 1591 by

13  renting her a motel room ); *United States v. Mozie*, 752 F.3d 1271, 1286 (11th Cir. 2014) (holding

14  that defendant harbored victim under 18 U.S.C. § 1591 where she "stayed at [his] house for five

15  days and four nights"). This interpretation of the statute is consistent with both the text's plain

16  meaning and Congress's intent to comprehensively and effectively prevent trafficking wherever it

17  occurs. And given the high *mens rea* standard required to prevail on a perpetrator theory, this

18  interpretation will not expose an unduly large number of potential defendants to criminal or civil

19  liability: Only those who harbor sex trafficking victims with *actual knowledge* of their victimhood

20  or reckless disregard thereof are potentially liable.

21        In short, K.R.D. alleges that HLT witnessed obvious signs of her trafficking but

22  nonetheless continued to rent her trafficker a room to house her for more than a year. K.R.D. thus

23  adequately pleads that HLT knowingly harbored her and is liable as a perpetrator. And because

24  K.R.D. pleads that HLT was Hilton's agent, her allegations against HLT are sufficient to allege

25  that Hilton is liable on a perpetrator theory.[8]

26

27

28  [8] K.R.D. does not plead a direct perpetrator theory against Hilton because she does not allege that
    Hilton (as opposed to HLT) directly harbored her.

1

**CONCLUSION**

2          For the foregoing reasons, K.R.D.'s complaint adequately states a section 1595 claim

3    against HLT under both beneficiary and perpetrator theories. K.R.D. also adequately pleads that

4    Hilton is vicariously liable for HLT's violations. Accordingly, defendants' motion to dismiss is

5    denied.

6          **IT IS SO ORDERED.**

7    Dated:  September 4, 2025

8

9    _____

10   P. Casey Pitts
     United States District Judge

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28