Nicole Perry, Esq., *Pro Hac Vice*
JONES DAY
717 Texas Street, Suite 3300
Houston, TX 77002
Telephone: (832) 239-3939
Facsimile: (832) 239-3600
Email: nmperry@jonesday.com

Bethany Biesenthal, Esq., *Pro Hac Vice*
Allison McQueen, Esq., *Pro Hac Vice*
JONES DAY
110 North Wacker Drive, Suite 4800
Chicago, IL 60606
Telephone: (312) 782-3939
Facsimile: (312) 782-8585
Email: bbiesenthal@jonesday.com
          amcqueen@jonesday.com

Emily F. Knox (State Bar No. 307035)
JONES DAY
555 California Street, 26th Floor
San Francisco, CA 94104
Telephone: (415) 626-3939
Facsimile: (415) 875-5700
Email: egoldbergknox@jonesday.com

Attorneys for Defendant
*Hilton Domestic Operating Company Inc.*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

| | |
|---|---|
| JANE DOE (K.R.D.), <br><br> Plaintiff, <br><br> v. <br><br> HILTON DOMESTIC OPERATING COMPANY INC., et al., <br><br> Defendants. | Case No. 5:24-cv-06993-PCP-VKD <br><br> **JOINT LETTER REGARDING DISCOVERY DISPUTE** |

1    Plaintiff K.R.D. and Defendant Hilton Domestic Operating Company Inc. ("Hilton") hereby

2    jointly submit this letter pursuant to Section 4 of Judge DeMarchi's Standing Order for Civil Cases.

### STATEMENT OF DISPUTE REQUIRING RESOLUTION

4    The parties' dispute concerns Hilton's Request for Production No. 46, seeking Plaintiff's

5    social-media content. Hilton seeks a complete download of Plaintiff's social-media accounts from

6    March 1, 2014 (the start of her alleged trafficking period) to the present. Plaintiff has declined to

7    produce any social-media information in response to this Request. The parties met and conferred

8    on January 6, 2026 and February 3, 2026 but were unable to resolve the issue.

### POSITIONS

**Hilton's Position:** Plaintiff alleges that she was trafficked at a Hilton property and seeks
substantial damages. Hilton has sought to test those allegations through focused, proportional
discovery by requesting exports of Plaintiff's social-media content during the relevant alleged
trafficking and damages timeframes. Plaintiff's social-media download during her alleged
trafficking period is "not only relevant, it is critical to [Hilton's] defense" of her TVPRA claims.
*M.A. v. Wyndham Hotels & Resorts, Inc.*, 2024 WL 3029215, at *3 (S.D. Ohio June 17, 2024); *see
S.C. v. Wyndham Hotels & Resorts, Inc.*, 2024 WL 21548, at *2, *4 (N.D. Ohio Jan. 2, 2024)
("Plaintiff's social media activity from . . . the alleged trafficking period, is closely related to core
issues in this case."); *Doe v. Salesforce.com, Inc.*, 2026 WL 183827, at *5 (W.D. Wash. Jan. 23,
2026) ("[I]nquir[ies] about plaintiff's control over [her] social media account[s] both before and
after the trafficking period" are relevant.). The same holds true for her post-trafficking damages
period: Plaintiff's download is the only "objective and contemporaneous example[]" of her
day-to-day activities, emotional condition, and functional capacity and thus is directly related to
the damages that she attributes to Hilton. *Lieberman v. Unum Grp.*, 2021 WL 8154889, at *9 (C.D.
Cal. Oct. 14, 2021). Accordingly, this Court should compel Plaintiff to produce downloads of her
social-media accounts from March 1, 2014 to the present.

1    **I.    Factual Background**

2    Plaintiff alleges that between the summers of 2014 and 2015,[1] her trafficker controlled,

3    coerced, and forced her to engage in commercial sex at the San Jose DoubleTree, a Hilton-branded

4    hotel. Compl. ¶¶ 17, 26, 32, Dkt No. 1. Specifically, Plaintiff states that her trafficker "engaged in

5    a pattern of control and intimidating and threatening behavior that caused [Plaintiff] to believe she

6    would face serious harm or physical restraint if she did not comply with his ongoing demand that

7    she engage in commercial sex for his financial benefit." *Id*. ¶ 28; *see id*. ¶ 29 ("[Plaintiff's]

8    trafficker kept her under his control . . . ."). Plaintiff claims that, as a result, she suffered "[p]hysical

9    pain and suffering" and "[m]ental anguish and emotional distress" and seeks damages for lost

10   earning capacity, loss of self-esteem and self-worth, medical expenses, and other injuries. *Id*. at 41.

11   On September 9, 2025, Hilton served discovery requests, including Request for Production

12   No. 46, seeking "[a]ny and all Documents which refer or relate to any and all of Plaintiff's social

13   media accounts for the period from the beginning of the Trafficking Period to the present, including

14   a complete download of each social media account." Ex. A. Hilton provided simple, step-by-step

15   instructions for a full download of Plaintiff's social-media data. Ex. B. In response, Plaintiff

16   produced nothing and objected that the Request was overbroad, unduly burdensome, and irrelevant.

17   Ex. C.

18   Separately, in her discovery responses, Plaintiff identified one Facebook account and one

19   Instagram account as those she used during the trafficking period, and she has not identified any

20   additional accounts. Additionally, materials produced in Plaintiff's discovery indicate that she

21   previously claimed her trafficker harassed her and her family members through Facebook after the

22   alleged trafficking period ended.[2]

23   Hilton sent a deficiency letter on November 20, 2025 and a follow-up email on December

24   17, 2025. The parties met and conferred on January 6, 2026. Afterward, Plaintiff maintained she

25   would produce no social-media content responsive to Hilton's Request absent agreed search-term

26

27

28
_____
[1] Despite the allegations in her Complaint, Plaintiff has not, in discovery, identified the month or any specific date when her alleged trafficking at the San Jose DoubleTree began or ended.
[2] *See* JD(KRD)-00427–00431.

JOINT LETTER REGARDING DISCOVERY
DISPUTE
Case No. 5:24-cv-06993-PCP-VKD

1  limitations. Hilton again arranged a meet-and-confer on February 3, 2026, but the parties reached

2  no agreement.

3  **II.    Legal Standard**

4      Discovery is authorized as to "any nonprivileged matter that is relevant to any party's claim

5  or defense and proportional to the needs of the case," with proportionality assessed by reference to

6  "the importance of the issues at stake in the action, the amount in controversy, the parties' relative

7  access to relevant information, the parties' resources, the importance of the discovery in resolving

8  the issues, and whether the burden or expense of the proposed discovery outweighs its likely

9  benefit." FED. R. CIV. P. 26(b)(1). Information "need not be admissible in evidence to be

10  discoverable." *Id.* "The party seeking to compel discovery has the burden of establishing that its

11  request satisfies the relevancy requirements of Rule 26(b)(1). Thereafter, the party opposing

12  discovery has the burden of showing the discovery should be prohibited, and the burden of

13  clarifying, explaining or supporting its objections." *Owen v. Hyundai Motor Am.*, 344 F.R.D. 531,

14  535 (E.D. Cal. 2023) (citation omitted).

15  **III.    Argument**

16      **A.    Plaintiff's Social Media During the Alleged Trafficking Period**

17      Plaintiff's complete social-media download—from the alleged trafficking period—is "not

18  only relevant, it is critical to [Hilton's] defense." *M.A.*, 2024 WL 3029215, at *3; *see S.C.*, 2024

19  WL 21548, at *4 (finding social-media activity "closely related to core issues"); *Salesforce.com*,

20  2026 WL 183827, at *5 (finding "plaintiff's control over [her] social media account[s]" relevant).

21  Plaintiff contends she was trafficked at the San Jose DoubleTree between 2014 and 2015. Compl.

22  ¶ 32. She further claims her trafficker used financial dependence, threats, intimidation, and

23  physically compelled her to engage in commercial sex. *Id.* ¶¶ 26–29. Those assertions form the

24  basis of her TVPRA claims.

25      Social-media evidence bears directly on those issues and "should [also] be collected in the

26  post-trafficking period as it relates to any allegation of trafficking or her traffickers or dates and

27  places and time." *See M.A.*, 2024 WL 3029215, at *3 (affirming its findings that "the most relevant

28  information regarding what [Plaintiff] was going through and what other people should have

known" during her trafficking period would be in her private social media). Here, a social-media download will allow Hilton to assess Plaintiff's whereabouts, her communications with friends and family (including public posts and direct messages), and her freedom of movement. It may also shed light on the nature of her relationship with her alleged trafficker, including her previous allegations that he harassed her and her family through Facebook. These inquiries are critical to determining whether Plaintiff was at the San Jose DoubleTree when she claims she was trafficked there and to evaluating her allegations regarding the details of her trafficking, the trafficker's control, and any visible physical injuries—all of which are central to her claims against Hilton.

Moreover, obtaining a complete download of Plaintiff's social media data for the alleged trafficking period imposes no undue burden. Hilton has provided Plaintiff with clear, step-by-step instructions for generating the export, and Plaintiff has identified only two social-media accounts purportedly used during the alleged trafficking period. The collection and review of this limited universe of materials therefore imposes, at most, a minimal burden.

**B.  Plaintiff's Post-Trafficking Period Social Media**

Hilton has also requested a download of Plaintiff's social media through the present because Plaintiff alleges she suffered "severe psychological and emotional trauma[,] including PTSD, depression, anxiety and nightmares" that continue "to this day." Ex. C. Especially given that Plaintiff has not sought medical treatment or counseling for these alleged injuries, her social-media posts are the only "objective and contemporaneous examples" of her day-to-day activities, emotional condition, and functional capacity, and thus are directly related to the damages that she attributes to Hilton. *Lieberman*, 2021 WL 8154889, at *9; *see Hinostroza v. Denny's Inc.*, 2018 WL 3212014, at *6 (D. Nev. June 29, 2018) ("[S]ocial media discovery is 'directly relevant to ... allegations of a serious physical injury...' and loss of enjoyment of life."); *EEOC v. Simply Storage Mgmt.*, 270 F.R.D. 430, 435 (S.D. Ind. 2010) ("It is reasonable to expect severe emotional or mental injury to manifest itself in some [social-media] content, and an examination of that content might reveal whether onset occurred, when, and the degree of distress.").

Thus, Hilton is entitled to Plaintiff's social-media content from the alleged trafficking period to the present, to obtain objective evidence of alleged damages and to corroborate or

JOINT LETTER REGARDING DISCOVERY DISPUTE
CASE NO. 5:24-CV-06993-PCP-VKD

1  contradict her current claims and any future deposition testimony or disclosures. This information

2  is not merely relevant to Plaintiff's claims—it is essential to Hilton's defense.

3      Plaintiff's proposal to confine her production to certain keyword searches is inadequate to

4  provide Hilton an accurate evidentiary record. By their nature, social-media posts frequently lack

5  searchable captions or other metadata that would reliably surface relevant content, and users often

6  do not use terms in captions that would be associated with trafficking experiences or locations.

7  Consequently, limiting collection in this way would omit relevant information. For example, if

8  Plaintiff posted photographs with friends or family, or identifiable locations during the relevant

9  period without captions or searchable tags, those posts would not be captured by keyword searches

10  despite their clear relevance. A full download is therefore necessary and common in this particular

11  context to ensure that material evidence is not withheld.

12      Accordingly, the Court should compel Plaintiff to produce a full download of all social-

13  media content from March 2014 to the present.

14      **Plaintiff's Position:**

15      **I.    Factual background**

16      Hilton continues to seek wholesale social-media downloads for a twelve-year period

17  untethered to case-specific facts. Plaintiff has consistently asked Hilton to confine discovery to

18  timeframes and topics reasonably related to case-specific claims and defenses. Hilton has refused,

19  taking the position that the mere possibility of relevant material justifies unrestricted access.

20      **II.    Hilton's request for wholesale downloads is overly broad, irrelevant, and not**

21          **proportional to the needs of the case.**

22      Only Plaintiff's approach accords with the Federal Rules. Discovery requests seeking social

23  media data "must be relevant to a claim or defense, proportional to the needs of the case, and not

24  unreasonably cumulative, duplicative, or designed to embarrass or harass." *Gaske v. Crabcake*

25  *Factory Seafood House, LLC*, 1:18-CV-02630-JMC, 2021 WL 3188007, at *6 (D. Md. July 28,

26  2021). Courts do not typically "endorse an extremely broad request for all social media site content"

27  because this "would permit his [or her] opponent to cast too wide a net and sanction an inquiry into

28  scores of quasi-personal information that would be irrelevant and non-discoverable." *Tucker v.*

*Momentive Performance Materials USA, Inc.*, 2:13-CV-04480, 2016 WL 8252929, at *6 (S.D.W. Va. Nov. 23, 2016). The mere fact that an information source may contain some relevant material does not justify unrestricted access to that source; "the relevance of some information in the filing cabinet does not mean that it is proportional to hand over the keys to the cabinet itself." *Locke v. Swift Transportation Co. of Arizona, LLC*, 2019 WL 430930, at *3–5 (W.D. Ky. Feb. 4, 2019). Just as Plaintiff is not entitled to sift through all of Hilton's emails simply because some may be relevant, Hilton is likewise not entitled to unfettered access to Plaintiff's private social-media accounts based on speculation that relevant information might exist.

Moreover, Federal Rule of Civil Procedure 34 requires the request to describe the items sought with "reasonable particularity" and specify a reasonable time, place, and manner for the inspection. "'The test for reasonable particularity is whether the request places a party upon reasonable notice of what is called for and what is not.'" *Mailhoit v. Home Depot U.S.A., Inc.*, 285 F.R.D. 566, 570 (C.D. Cal. 2012) (internal citations omitted). "Broad production requests, such as those seeking all social media content and data, fail the 'reasonable particularity' test and are disfavored." *Doe v. Cabell Cnty. Bd. of Educ.*, 3:21-CV-00031, 2022 WL 288193, at *4 (S.D.W. Va. Jan. 31, 2022); *see, e.g., Mailhoit*, 285 F.R.D. at 572 (defendant's request for "any pictures of Plaintiff taken during the relevant time period and posted on Plaintiff's profile or tagged or otherwise linked to her profile," did not meet reasonably particularity requirement); *Shinedling v. Sunbeam Prods. Inc.*, EDCV12438CJCSPX, 2013 WL 12142948, at *2 (C.D. Cal. Sept. 13, 2013) (even with a temporal limitation the request for copies of Facebook accounts in their entirety is not stated with reasonable particularity). Hilton's request—seeking a complete download across platforms over more than a decade, with no subject-matter constraint—falls far short.

Nor does Hilton identify any case-specific basis for such an extraordinary request. Instead, it relies on conjecture about what might be found in Plaintiff's social media. But courts have repeatedly found such speculation insufficient to justify invasive social media discovery. *See, e.g.*, *Tompkins v. Detroit Metro. Airport*, 278 F.R.D. 387, 388 (E.D. Mich. 2012).

Even assuming Hilton's arguments would support some **subject-matter tailored** requests, they cannot justify the breadth of RFP 46. First, Hilton cannot justify this sweeping request based

on Plaintiff's claim for emotional distress. Courts have repeatedly recognized that the relationship between a plaintiff's mental state and the vast majority of social-media content is tenuous at best. *See, e.g., Giacchetto v. Patchogue-Medford Union Free Sch. Dist.*, 293 F.R.D. 112, 115 (E.D.N.Y. 2013). Thus, the speculative possibility that social media data may include some insight on mental state does not justify wholesale access to the data: "anything a person says or does might in some theoretical sense be reflective of her emotional state, but that is hardly justification for requiring production of every thought she may have reduced to writing." *Mackelprang v. Fid. Nat. Title Agency of Nevada, Inc.*, 2:06-CV-00788-JCM, 2007 WL 119149, at *7 (D. Nev. Jan. 9, 2007) (citing *Rozell v. Ross-Holst*, 2006 WL 163143, at *3 (S.D.N.Y. Jan. 20, 2006)).

Hilton, likewise, fails to support the breadth of RFP 46 based on the speculation that Plaintiff's social media might contain information relevant to her claims about her trafficking. That is an impermissible shortcut around the ordinary discovery process. Plaintiff acknowledges that tailored requests tied to specific disputed issues may be appropriate. However, Hilton is not entitled to forego making such specific requests and, instead, simply obtain all data so it can fish around for anything it may be able to use to its advantage. A party cannot support a sweeping discovery request based "on the hope of finding something—anything—relevant to this litigation." *Palma v. MetroPCS Wireless, Inc.*, 18 F. Supp. 3d 1346, 1348 (M.D. Fla. 2014).

Hilton's reliance on and citation to *M.A. v. Wyndham Hotels & Resorts, Inc.*, 2024 WL 3029215 (S.D. Ohio Nov. 20, 2023) and *S.C. v. Wyndham Hotels & Resorts, Inc.*, 2024 WL 21548 (N.D. Ohio Jan. 2, 2024) is misleading. In *M.A.*, the court did not order an unrestricted, unlimited download of plaintiff's social media. Instead, it limited the production to "information regarding Plaintiff, her trafficking or her traffickers during the traffic period and information regarding Plaintiff's trafficking, traffickers, and the trafficking period regardless of whether that information originated during the trafficking period." *M.A.*, at *1. And in *S.C.*, the court specifically limited social media production to two years before and two years after the trafficking period. *S.C.*, at *2. Even Hilton's own cited authorities do not agree with the extreme position it takes here.

**III.    Important interests weigh against Hilton's request for wholesale social media downloads from sex trafficking survivors.**

Invasive discovery can impose a "chilling effect" on the enforcement of important statutory rights, with a risk of affecting not only the plaintiff receiving the discovery but also future victims who may not come forward. Overbroad social media discovery poses "substantial risk that the fear of humiliation and embarrassment will dissuade injured plaintiffs from seeking recovery for legitimate damages or abandon legitimate claims." *Gordon v. T.G.R. Logistics, Inc.*, 321 F.R.D. 401, 403–04 (D. Wyo. 2017). And courts should be vigilant to avoid discovery practices that would "contravene the remedial effect intended by Congress" in adopting a federal statute. *Priest v. Rotary*, 98 F.R.D. 755, 761 (N.D. Cal. 1983). This applies with particular force to claims under the TVPRA. Congress created the TVPRA's civil remedy so victims could seek redress from perpetrators and facilitators, and it expressly identified the statute's purposes as punishing traffickers and protecting victims. 18 U.S.C. § 1595(a); 22 U.S.C. § 7101(a). Opening the discovery floodgates simply because a survivor invokes § 1595 would discourage reporting and civil enforcement, undermining those purposes. The Federal Rules reflect the same policy judgment: Rule 412 was expanded to civil cases precisely to safeguard victims against invasion of privacy and sexual stereotyping and to encourage victims to institute and participate in proceedings. *See* Fed. R. Evid. 412 advisory committee's note. Because discovery into a plaintiff's sexual history or sexual proclivities has a well-recognized deterrent effect on victims seeking judicial relief, the rationale underlying Rule 412's admissibility constraints warrants limitations at the discovery stage. *See, e.g.*, *Macklin v. Mendenhall*, 257 F.R.D. 596, 602 (E.D. Cal. 2009). Courts have relied on Rule 412 considerations to reject social-media requests lacking proper topical limitations for precisely this reason. *Ogden v. All-State Career Sch.*, 299 F.R.D. 446, 449 (W.D. Pa. 2014).

**IV.    Hilton's proposed approach conflicts with basic discovery practice and its own position regarding its documents**

To be clear, Plaintiff does not contend that her status as a trafficking victim shields her from relevant and proportional discovery. The defect in Hilton's approach is that it attempts to bypass the required analysis of relevance, proportionality, and Federal Rule of Evidence 412 by demanding a wholesale data dump rather than serving requests that describe, with reasonable particularity, the information actually sought. Although Hilton argues that search terms cannot reliably locate

responsive social-media content, that argument skips the threshold problem: Hilton refuses to limit its requests by **subject matter**. The core issue is not mechanics of document retrieval, but Defendants' failure to articulate the topics for which discovery is sought.

Hilton's assertion that any method short of a complete, unfiltered download might miss potentially relevant material only underscores the flaw in its position. Hilton effectively claims entitlement to review all of Plaintiff's private social-media content to determine relevance for itself. That is not how discovery operates. It is undisputed that Plaintiff cannot have unfettered access to Hilton's corporate email accounts. In fact, the parties are in active discussions on appropriate search terms for Hilton's production of documents. All that Plaintiff asks is that she be given the same courtesy as Hilton.

### POSITIONS ON HEARING

**Hilton's Position:** The Court should hold a hearing to resolve this discovery dispute. A hearing will allow the parties to present their positions in greater detail and with factual context, provide concrete examples drawn from the discovery materials produced to date, and address the Court's questions regarding each side's position and the basis for any disagreements.

**Plaintiff's Position**: Agreed with Hilton.

### DISCOVERY DATES

The current discovery schedule is set forth below:

- April 15, 2026: Close of Fact Discovery
- April 15, 2026: Plaintiff's Designation of Opening Experts with Reports
- May 15, 2026: Defendant's Designation of Opening Experts with Reports
- July 15, 2026: Expert Discovery Cutoff

### MEET AND CONFER COMPLIANCE

On Tuesday, February 3, 2026, the parties conducted a videoconference regarding this discovery dispute. Claire Brown appeared for Plaintiff, and Nicole Perry, Cristina Pérez Soto, and Ali Anderson appeared for Hilton.

1

2
Dated:  February 11, 2026                    Respectfully submitted,

3                                            JONES DAY

4

By: */s/ Nicole M. Perry*
5                                            Nicole M. Perry, Esq*., Pro Hac Vice*
JONES DAY
6                                            717 Texas Street, Suite 3300
Houston, TX 77002
7                                            Telephone:  (832) 239-3939
Facsimile:  (832) 239-3600
8                                            Email: nmperry@jonesday.com

9                                            Bethany Biesenthal, Esq*., Pro Hac Vice*
Allison McQueen, Esq*., Pro Hac Vice*
10                                           JONES DAY
110 North Wacker Drive, Suite 4800
11                                           Chicago, IL 60606
Telephone:  (312) 782-3939
12                                           Facsimile:  (312) 782-8585
Email: bbiesenthal@jonesday.com
13                                                   amcqueen@jonesday.com

14                                           Andrew J. Clopton, Esq., *Pro Hac Vice*
15                                           JONES DAY
150 W. Jefferson, Suite 2100
16                                           Detroit, MI 48226
Telephone:  (313) 733-3939
17                                           Facsimile:  (313) 230-7997
Email: aclopton@jonesday.com
18

19                                           Emily F. Knox
JONES DAY
20                                           555 California Street, 26th Floor
San Francisco, CA 94104
21                                           Telephone:  (415) 626-3939
Facsimile:  (415) 875-5700
22                                           Email: egoldbergknox@jonesday.com

23

24                                           Attorneys for Defendant
*Hilton Domestic Operating Company Inc.*
25

26

27

28

1

2

3          By: */s/ Amanda J.G. Walbrun*
           Amanda J.G. Walbrun, State Bar No. 317408
             *walbrun@boucher.la*

4          BOUCHER LLP
           21600 Oxnard Street, Suite 600

5          Woodland Hills, California 91367-4903
           Tel: (818) 340-5400

6          Fax: (818) 340-5401

7          David E. Harris, *Pro Hac Vice*
             *dharris@shhlaw.com*

8          SICO HOELSCHER HARRIS, LLP
           819 N. Upper Broadway

9          Corpus Christi, Texas 78401
           Tel: (361) 653-3300

10
           Bryan O. Blevins, Jr. | SBN 02487300 – *Pro Hac*

11         *Vice*
           350 Pine Street, Ste. 1100

12         Beaumont, TX 77701
           (409) 835-6000 Telephone

13         (409) 838-8888 Facsimile
           bblevins@pulf.com

14

15         *Attorneys for Plaintiff Jane Doe (K.R.D.)*

16

17

18

19

20

21

22

23

24

25

26

27

28

JOINT LETTER REGARDING DISCOVERY
DISPUTE
CASE NO. 5:24-CV-06993-PCP-VKD

1

**CERTIFICATE OF SERVICE**

2      I hereby certify that on February 11, 2026, a copy of the foregoing was filed using the

3 CM/ECF system, which will effectuate service on all counsel of record.

4

5                                    */s/ Nicole M. Perry*

6                                    Nicole M. Perry, Esq.

7                                    Attorney for Defendant
                                     *Hilton Domestic Operating Company Inc.*

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

JOINT LETTER REGARDING DISCOVERY
DISPUTE
CASE NO. 5:24-CV-06993-PCP-VKD