UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

JANE DOE (K.R.D.),

Plaintiff,

v.

HILTON WORLDWIDE HOLDINGS
INC., et al.,

Defendants.

Case No.  24-cv-06993-PCP   (VKD)

**ORDER RE FEBRUARY 11, 2026
DISCOVERY DISPUTE**

Re: Dkt. Nos. 71, 82

At the Court's direction, plaintiff K.R.D. and defendant Hilton Domestic Operating Company Inc.'s ("Hilton") filed a joint report regarding the status of their efforts to resolve their dispute regarding Hilton's request for production of content and information from K.R.D.'s social media accounts.  Dkt. No. 82; *see also* Dkt. Nos. 71, 81.  Hilton's original RFP 46 asked for a complete download of the entire contents of K.R.D.'s social media accounts for a twelve-year period without any limitations.  Dkt. No. 71 at 1.  K.R.D. objected to RFP 46 on the ground that the request sought materials that were not relevant to the case and imposed undue burdens on K.R.D.'s interests, especially as a sex trafficking survivor.  *Id.* at 5, 7-8.

The parties report that Hilton has revised RFP 46, the document request at issue, so that it now requests the following social media content,[1] for two overlapping time periods:

　　1.　　Alleged Trafficking Period (Summer 2014 to Summer 2015):

　　　　a.　　Showing Plaintiff traveling outside of San Jose, California, including

---

[1] Hilton describes "content" as "including narrative posts, photographs and tags, captions, geotags, check-ins, stories, direct messages, and any other communications or published posts."  Dkt. No. 82, Ex. A.

<div style="margin-left:2em">United States District Court<br>Northern District of California</div>

photos of landmarks or photographs placing Plaintiff in another city, references or tags identifiable locations, including but not limited to bars, restaurants, hotels, or retail establishments, and archived stories on Plaintiff's Instagram account depicting her location;

b.  Made by or attributed to Plaintiff during the dates in which Plaintiff alleges she was trafficked at the San Jose DoubleTree;

c.  Involving or exchanged with Plaintiff's trafficker or his associates;

d.  Involving or exchanged with Plaintiff's alleged johns;

e.  Where Plaintiff discusses her trafficker or trafficking;

f.  Involving Plaintiff's family;

g.  Regarding her child fathered by her trafficker;

h.  Reflecting Plaintiff's involvement in dating or romantic relationships; and

i.  Where Plaintiff discusses law enforcement or her arrests.

2.  Alleged Damages Period (Summer 2014 to Present):

a.  Reflecting Plaintiff attending social gatherings, parties, concerts, sporting events, bars, restaurants, or other group activities;

b.  Reflecting Plaintiff traveling, vacationing, or visiting locations outside of her home location;

c.  Reflecting Plaintiff participating in exercise, sports, hiking, gym workouts, outdoor recreation, or other physical activities;

d.  In which Plaintiff discusses therapy attendance, medication use or non-compliance, self-assessments of mental health progress, or reluctance to seek treatment;

e.  In which Plaintiff discusses her trafficker or trafficking. This request includes any communication between Plaintiff and her trafficker or his associates through social media;

f.  In which Plaintiff discusses her lawsuit(s) related to trafficking, anticipated recovery, or the financial aspects of the claim;

g.  Referencing Plaintiff's use of alcohol or recreational drugs;

h.  Reflecting or discussing Plaintiff's professional accomplishments and/or employment;

i.  Reflecting Plaintiff's involvement in dating or romantic relationships;

2

and

j.    Reflecting Plaintiff's interactions with her family.

Dkt. No. 82, Ex. A.  The Court understands that K.R.D. has (or had) two social media accounts of interest to Hilton:  a Facebook account and an Instagram account.

As to the Facebook account, K.R.D. advises that she has produced or will produce "all social media for the trafficking period, the year following [the trafficking period] and the year preceding suit[.]" Dkt. No. 82 at 4.  In other words, K.R.D. proposes to produce all of her Facebook content, without restriction as to subject matter, for two time periods:  (1) summer 2014 through summer 2016, and (2) October 4, 2023 through October 4, 2024.[2]  She objects to producing any Facebook content for the seven years between summer 2016 and October 2023 or the 18 months since she filed her complaint.  *Id.* at 4.  However, K.R.D. also represents that despite these objections, she has reviewed the *entirety* of the "available download" of her Facebook account and has produced content she determined is relevant to Hiton's requests.  *Id.*  In addition, she states that currently, the content on her Facebook account is public and available to Hilton.  *Id.* at 3-4.

As to her Instagram account, K.R.D. says she "does not have a download of her Instagram account." *Id.* at 4.  She represents that this account was not active during the trafficking period and is not active currently.  *Id.*  K.R.D. does not state when her Instagram account *was* active, what kind of information it contained, or when it became inactive.  K.R.D. asserts that some of the items she posted to Instagram were also posted on her Facebook account.  *Id.* at 3.

Hilton argues that K.R.D. should be required to produce content from her Instagram account, as well as her Facebook account.  *Id.* at 2.  Hilton also argues that the categories of content it requests for the post-trafficking damages period—summer 2015 to the present—are relevant to K.R.D.'s claims that she suffered and continues to suffer mental anguish and emotional distress, as well as anxiety, depression, and PTSD, as a result of the trafficking that occurred at Hilton's hotel.  *Id.* at 2-3; *see also* Dkt. No. 71 at 2 (citing complaint).  In particular, Hilton

---

[2] This action was filed on October 4, 2024.  Dkt. No. 1.

explains that in response to its interrogatories asking her to "describe all physical, emotional, and psychological harm and other damages" she suffered as result of Hilton's conduct and the care and treatment she received for such harm, K.R.D. has principally disclosed how the trauma she experienced does *not* affect her, rather than how that trauma manifests itself in symptoms or other impacts on her life.  Dkt. No. 82 at 2, Ex. C.  For example, in response to Hilton's Interrogatory No. 14, K.R.D. states, in part:

> Despite the physical, psychological, mental and emotional trauma I experienced during my trafficking and continue to suffer from today, I have been able to work, travel, engage in physical activity, spend quality time with my family, care for my child, and date following my trafficking.

*Id.*, Ex. C.  While her interrogatory response also indicates that she "attempted suicide by cutting [her] wrists" and suffers from nightmares, it does not otherwise describe in concrete terms how her emotional distress, anxiety, depression, or PTSD impact her life currently or during any specific period.  *See id.*  Hilton argues that, given K.R.D.'s damages claims and her uninformative interrogatory responses, discovery of her social media content from the summer of 2015 to the present is the only means it has to obtain objective and contemporaneous evidence of K.R.D.'s "day-to-day activities, emotional condition, and functional capacity," which it says it requires in order to test and potentially rebut K.R.D.'s damages claims.  Dkt. No. 71 at 4-5.

A party may obtain discovery of any nonprivileged matter that is relevant to a claim or defense and that is "proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."  Fed. R. Civ. P. 26(b)(1).  The parties do not disagree that K.R.D.'s social media accounts likely contain relevant information and that this information is discoverable.  *See* Dkt. No. 71 at 5-6.  As K.R.D. represents she has produced all of her social media content for the "trafficking period," the present dispute concerns the scope of production Hilton demands for the "post-trafficking period" from K.R.D.'s Facebook and Instagram accounts.

4

In the first instance, the Court sees no reason to distinguish between K.R.D.'s Facebook and Instagram accounts. As K.R.D. represents that her Instagram account was not active during the trafficking period, the remaining dispute as to that account is limited to the post-trafficking period. If K.R.D. no longer has *any* content from her Instagram account, apart from content that may have also been posted to her Facebook account, she must so advise Hilton.

With respect to Hilton's requests for production from K.R.D.'s social media for the post-trafficking period, the Court considers two dimensions of the parties' remaining disputes: What subject matter categories should define the scope of relevant content? For what time period or time periods should such production be made?

As to subject matter, it is not clear what criteria K.R.D. used to identify the responsive content she says she has already produced for the post-trafficking period. *See* Dkt. No. 82 at 4 & Ex. B (stating as to most categories "Plaintiff has selectively reviewed and produced responsive information."). Moreover, it is not clear from K.R.D.'s interrogatory responses how the emotional harm she says she experienced, and from which she continues to suffer, manifests itself—not as a clinical condition, but in terms of how it impacts different aspects of her life. To the extent K.R.D.'s response to Interrogatory No. 14 (listing the things she is still able to do) is meant to foreclose Hilton's discovery of social media content corresponding to those same matters, the Court is not persuaded. The fact that K.R.D. is still able to "work, travel, engage in physical activity, spend quality time with [her] family, care for [her] child, and date," does not mean that her ability to do those things has not been impaired or impacted in some manner.[3] And because K.R.D. has not described *how* her emotional distress, anxiety, depression, and PTSD impact her life currently or during any specific period, she has provided little, if any, useful information to assist Hilton in tailoring its discovery demands to relevant content. This does not mean that Hilton is therefore entitled to a complete download of K.R.D.'s social media content for the entirety of the post-trafficking period. While some individuals with anxiety, depression, and/or PTSD may

---

[3] If K.R.D. really does mean that her ability to do these things has not been impaired *at all*, she should say so, recognizing that if she resists Hilton's discovery as to those subject matters on that ground, the presiding judge may preclude her from presenting any evidence regarding those activities in support of her claims at trial.

United States District Court
Northern District of California

be unable to work, travel, engage in physical activity, spend quality time with family, care for a child, or date, other individuals with the same diagnoses may not suffer any limitations in some or all of those specific areas.  In any event, Hilton has not shown that discovery of social media content relating to these activities is necessarily relevant to rebutting the K.R.D.'s claim that she suffers from these specific mental health conditions or emotional distress generally.

As to the relevant time period, the relevant period for the production of social media content during the post-trafficking period is the time period that corresponds to the period when K.R.D. claims to have suffered harm and for which she claims damages as a result of Hilton's conduct.  Thus, if K.R.D. claims to have suffered emotional harm, anxiety, depression, and PTSD for the entirety of the post-trafficking period (summer 2015 through the present), that is the relevant time period for discovery of this material.  A sampling approach to document production for this approximately 10-year period may be appropriate, but that may depend on the nature of K.R.D.'s description of the harm she claims and the subject matter of the content relevant to those claims.

As the Court explained during the March 31, 2026 hearing, the scope of discovery of K.R.D.'s social media content must be tied to the nature and extent of the harm she claims.  The Court agrees that it would be inefficient to require Hilton to take K.R.D.'s deposition before K.R.D. completes production of relevant information from her social media accounts.  And, in the Court's view, the production of relevant social media content for the post-trafficking period cannot be completed until K.R.D. supplements her response to Interrogatory No. 14 to more clearly describe the harm she claims and until she identifies the time period during which she suffered that harm.

Accordingly, the Court orders as follows with respect to the production of K.R.D.'s social media content for the post-trafficking period (summer 2015 to present):

1.      If K.R.D. no longer has *any* content from her Instagram account, apart from content that may have also been posted to her Facebook account, by **April 24, 2026**, she must so advise Hilton.

2.      By **April 24, 2026**, K.R.D. must supplement her response to Hilton's Interrogatory

United States District Court
Northern District of California

No. 14 to describe more clearly the harm she suffered as a result of Hilton's alleged conduct, including specifically how her emotional distress, anxiety, depression, and PTSD impact her life.

3.      By **April 24, 2026**, K.R.D. must advise Hilton of the time period or periods during which she experienced the harm described in her supplemental response to Interrogatory No. 14.

4.      The parties shall confer to identify the subject matter categories for which K.R.D.'s social media may contain relevant information, given the nature of K.R.D.'s claimed harm and the time period or periods during which she experienced that harm.  If the damages period is extensive, they should also discuss whether a sampling approach to production of the relevant social media (e.g., random, regular intervals, targeted intervals, etc.) would be appropriate.

5.      After conferring, if the parties reach agreement on the scope of K.R.D.'s production of social media content, they must jointly file a status report so advising the Court.  If they continue to disagree on the scope of K.R.D.'s production of social media content, they must jointly file a status report advising the Court of their agreed or respective proposals for resolving that dispute.  The joint status report may not exceed 1000 words total, or 500 words per side.  The status report is due no later than **May 8, 2026**.

6.      Hilton need not proceed with K.R.D.'s deposition on April 20, 2026.  Unless the parties agree otherwise, K.R.D.'s deposition shall be scheduled for a date after K.R.D. completes any relevant production of information from her social media accounts; provided, the deposition must occur before the close of fact discovery on June 15, 2026.

**IT IS SO ORDERED.**

Dated: April 16, 2026

Virginia K. DeMarchi
United States Magistrate Judge