# Exhibit B

Nicole M. Perry, Esq., *Pro Hac Vice*
JONES DAY
717 Texas Street, Suite 3300
Houston, TX 77002
Telephone: (832) 239-3939
Facsimile: (832) 239-3600
Email: nmperry@jonesday.com

Bethany K. Biesenthal, Esq., *Pro Hac Vice*
Allison L. McQueen, Esq., *Pro Hac Vice*
JONES DAY
110 North Wacker Drive, Suite 4800
Chicago, IL 60606
Telephone: (312) 782-3939
Facsimile: (312) 782-8585
Email: bbiesenthal@jonesday.com
amcqueen@jonesday.com

Emily F. Knox (State Bar No. 307035)
JONES DAY
555 California Street, 26th Floor
San Francisco, CA 94104
Telephone: (415) 626-3939
Facsimile: (415) 875-5700
Email: egoldbergknox@jonesday.com

Attorneys for Defendant
*Hilton Domestic Operating Company Inc.*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

| | |
|---|---|
| JANE DOE (K.R.D.),<br><br>Plaintiff,<br><br>v.<br><br>HILTON DOMESTIC OPERATING COMPANY INC., et al.,<br><br>Defendants. | Case No. 5:24-cv-06993-PCP-VKD<br><br>**DECLARATION OF ALI ANDERSON IN SUPPORT OF HILTON'S MOTION FOR SPOLIATION SANCTIONS** |

1. I am over the age of 18 and competent to testify to the following facts.

2. I am one of the attorneys representing Hilton Domestic Operating Company Inc. ("Hilton") in this case and make this declaration in support of Hilton's Motion for Spoliation Sanctions.

3. During Plaintiff's alleged trafficking period, the DoubleTree by Hilton San Jose (the "San Jose DoubleTree") was owned by HLT San Jose, LLC and managed by Hilton.

**Meet-and-Confers on Plaintiff's Social Media Accounts**

4. On January 6 and February 3, 2026, Hilton participated in initial meet-and-confers with Plaintiff's counsel regarding deficiencies in Plaintiff's responses relating to Plaintiff's social media accounts, including Hilton's Request for Production No. 46 and Interrogatory No. 7. At the time, Plaintiff had identified only one Facebook account and one Instagram account ([redacted]), and Plaintiff had produced no social media content.

**Plaintiff's Social Media Productions**

5. Hilton reviewed and analyzed Plaintiff's productions of social media content and determined the productions contained the following types of content:

a. Plaintiff made her first production of social media content on April 9, 2026, which was 312 files and consisted of Facebook content from July 2014 to July 2016.

b. Plaintiff made her second production of social media content on April 13, 2026, which was 616 files and consisted of Facebook content from August 2016 to January 2025. The majority of this production consisted of content from August 2016 to June 2017, with eleven files dated between 2018 and 2025.

c. Plaintiff made her third production of social media content on May 28, 2026, which was 1,885 files and consisted of Facebook content from May 2014 to December 2016.

d. Plaintiff made her fourth production of social media content on June 18,

2026, which was 11,775 files and consisted of Facebook content from January 2017 to January 2026.

e. Plaintiff made her fifth production of social media content on June 25, 2026, which was 2,262 files and consisted of Instagram content from her current Instagram account ([redacted]) from October 2024 to May 2026.

f. Plaintiff made her sixth production of social media content on June 30, 2026, which was 2,937 files and consisted of Snapchat content from January 2017 to June 2026.

**March 31, 2026 Hearing and Plaintiff's Missed Deadline**

6. On March 31, 2026, Magistrate Judge DeMarchi held a hearing on the parties' February 11, 2026 joint discovery letter. At the hearing, Judge DeMarchi stated that Plaintiff's social media content was relevant both to the alleged trafficking period and to Plaintiff's damages period, which runs from the end of the alleged trafficking period to the present.

7. At the hearing, Plaintiff's counsel admitted that Plaintiff had not collected the contents of her Instagram account ([redacted]) in response to Hilton's request.

8. The Court's subsequent April 16, 2026 Order required Plaintiff to advise Hilton by April 24, 2026 whether she no longer had any content from her Instagram account (apart from content cross-posted to Facebook). Hilton understood this Order to relate to Plaintiff's active Instagram account ([redacted]), as Hilton was not aware of Plaintiff's deleted Instagram account at that time.

9. Plaintiff did not advise Hilton regarding the Instagram content by April 24, 2026.

**Hilton's Discovery of Plaintiff's Deleted Instagram Account**

10. In reviewing Plaintiff's Facebook productions, Hilton identified Facebook posts from 2016 and 2017 that were cross-posted from an Instagram account. Plaintiff produced three Facebook posts noting "Shared from Instagram" on November 15,

2016 and April 10, 2017.

11. On April 29, 2026, I visited the profile page of Plaintiff's active Instagram account ([redacted]), clicked the ". . ." menu, clicked "About this account," and observed that "October 2024" is listed as the "[d]ate joined."

12. Hilton determined that Plaintiff must have had an additional Instagram account during at least 2016 and 2017, before her current Instagram account was created in October 2024.

13. On April 29, 2026, I participated in a meet-and-confer with Plaintiff's counsel at which Hilton confronted counsel about the October 2024 creation date of the [redacted] Instagram account and the Facebook cross-posts from a different Instagram account. Plaintiff's counsel stated they would address the issue with Plaintiff.

14. On May 1, 2026, via email, Plaintiff's counsel informed Hilton for the first time that Plaintiff had a prior Instagram account. The parties discussed the issue at a meet-and-confer on May 7, 2026, and Plaintiff's counsel informed Hilton that Plaintiff had deleted her account in April 2024.

**Hilton's Discovery of Plaintiff's Snapchat Account**

15. In reviewing Plaintiff's Facebook productions, Hilton recognized certain filters applied to photos on Plaintiff's Facebook that are unique to the Snapchat app and camera (e.g., the dog face filter). Plaintiff had not disclosed a Snapchat account at that time.

16. Hilton raised Plaintiff's undisclosed Snapchat account in an April 28, 2026 discovery deficiency letter.

17. Plaintiff disclosed her Snapchat account for the first time in her fifth interrogatory responses, served May 28, 2026. Plaintiff did not verify her responses until Hilton reminded her, over two months later.

**Hilton's Efforts to Obtain the Deleted Instagram Account from Meta**

18. On August 7, 2026, Hilton's counsel participated in a conference between Hilton

and counsel for Meta Platforms, Inc. ("Meta"), with Plaintiff's counsel present, concerning additional information that could help Meta locate Plaintiff's deleted Instagram account.

19. Following that conference, Plaintiff's counsel represented that the email address [redacted] may have been associated with the account, that the account used the [redacted] username at least as of May 2019, and that Plaintiff believed the account was active at least between December 31, 2017 and January 1, 2022. Hilton relayed that information to Meta on September 9, 2026.

20. On September 24, 2026, Meta informed the parties that it remained unable to locate the account.

21. Other than the cross-posted content in Plaintiff's Facebook productions, Hilton has been unable to obtain the contents of Plaintiff's deleted Instagram account from any other source.

**Instagram Data**

22. Plaintiff has not stated that she archived, backed up, exported, or otherwise preserved the contents of her deleted Instagram account before deleting it. Plaintiff has not produced any such archive or export, and her counsel has represented that she does not have one.

23. Plaintiff's Instagram posts that were cross-posted on Facebook would have contained different metadata had Plaintiff produced them directly from Instagram. Instagram's platform-specific metadata includes geolocation tags, hashtags, tagged accounts, and timestamps of original posts.

24. Had Plaintiff produced content from her deleted Instagram account, it may have included—in addition to posts, stories, and reels—comments on the user's or others' posted photos and videos, searches performed, login history, direct messages, and following/follower lists—data that was separate from Facebook.

**Plaintiff's Medical Records**

25. At a meet-and-confer with Plaintiff's counsel on July 23, 2026, Hilton learned that

Plaintiff never requested medical records. Hilton has since served subpoenas for Plaintiff's medical records on Banner Health and Dignity Health.

**I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.**

Respectfully submitted and signed, under Federal Rule of Civil Procedure 11, on this 27th day of October, 2026.

*/s/ Ali K. Anderson*
Ali K. Anderson, Esq., *Pro Hac Vice*
JONES DAY
110 North Wacker Drive, Suite 4800
Chicago, Illinois 60606
Telephone: (312) 782-3939
Facsimile: (312) 782-8585
Email: akanderson@jonesday.com

**CERTIFICATE OF SERVICE**

I hereby certify that on October 27, 2026, a copy of the foregoing was filed using the CM/ECF system, which will effectuate service on all counsel of record.

*<u>/s/ Nicole M. Perry</u>*____________
Nicole M. Perry, Esq.

Attorney for Defendant
*Hilton Domestic Operating Company Inc.*