Nicole Perry, Esq., *Pro Hac Vice*
JONES DAY
717 Texas Street, Suite 3300
Houston, TX 77002
Telephone: (832) 239-3939
Facsimile: (832) 239-3600
Email: nmperry@jonesday.com

Bethany Biesenthal, Esq., *Pro Hac Vice*
Allison McQueen, Esq., *Pro Hac Vice*
JONES DAY
110 North Wacker Drive, Suite 4800
Chicago, IL 60606
Telephone: (312) 782-3939
Facsimile: (312) 782-8585
Email: bbiesenthal@jonesday.com
amcqueen@jonesday.com

Emily F. Knox (State Bar No. 307035)
JONES DAY
555 California Street, 26th Floor
San Francisco, CA 94104
Telephone: (415) 626-3939
Facsimile: (415) 875-5700
Email: egoldbergknox@jonesday.com

Attorneys for Defendant
*Hilton Domestic Operating Company Inc.*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

JANE DOE (K.R.D.),

Plaintiff,

v.

HILTON DOMESTIC OPERATING COMPANY INC., et al.,

Defendants.

Case No. 5:24-cv-06993-PCP-VKD

**JOINT LETTER REGARDING DISCOVERY DISPUTE**

Plaintiff K.R.D. and Defendant Hilton Domestic Operating Company Inc. ("Hilton") hereby jointly submit this letter pursuant to Section 4 of this Court's Standing Order for Civil Cases.

**STATEMENT OF DISPUTE REQUIRING RESOLUTION (100 Word Limit)**

The parties' dispute concerns Plaintiff's Rule 30(b)(6) deposition topics 12–14, 30–35, and 38 for depositions of Hilton's corporate representatives scheduled for November 17, November 24, and December 7. Plaintiff requests that Hilton make available representatives to discuss these topics, which seek information about Hilton's corporate knowledge of and response to sex trafficking, as written. Hilton asserts that topics related to all "Defendant's Branded Hotels" are inconsistent with the agreed scope of Hilton's document production and Rule 26(b)'s relevance-and-proportionality standard and therefore seeks to confine the deposition topics to Hilton's San Jose DoubleTree property, where Plaintiff was allegedly trafficked. The parties met and conferred on October 19, 2026, but were unable to resolve the issue.

**POSITIONS (1500 Words Per Party)**

**Hilton's Position:** "[Plaintiff] asserts that the defendants are liable under the TVPRA for the harm she suffered when she was sex trafficked out of the San Jose DoubleTree hotel." *K.R.D. v. Hilton Worldwide Holdings Inc.*, 798 F. Supp. 3d 1082, 1087 (N.D. Cal. 2025). The parties, as a result, agreed to center discovery on documents relevant to that hotel. But Plaintiff now seeks to question Hilton's Rule 30(b)(6) representatives about wide-ranging topics not only across the San Jose DoubleTree but across all Hilton-branded properties around the world. By reaching far beyond the San Jose DoubleTree, those questions exceed the scope of discovery to which the parties have stipulated. And they probe overbroad topics that bear no relevance to this litigation and that would otherwise impose disproportionate and undue burdens on Hilton's Rule 30(b)(6) preparations. This Court should issue a protective order under Rule 26(c) limiting the scope of the Rule 30(b)(6) topics to the property at issue.

**I. Factual Background**

Plaintiff alleges that the San Jose DoubleTree, a Hilton-branded hotel, participated in a venture with her trafficker by renting him rooms where she was trafficked. Compl. ¶¶ 17, 32, 124–27. Her complaint thus necessarily centers on alleged trafficking "at the San Jose DoubleTree

specifically." *Id.* ¶ 61. Plaintiff does not allege that she was trafficked at any other Hilton-branded property and has not claimed that Hilton is liable for trafficking at any other hotel.

During document discovery, Plaintiff gave Hilton a broad set of search terms copied from another matter that were not tailored to this case. Hilton objected that the search-term list was overbroad and disproportionate. Plaintiff refused to negotiate and threatened court intervention. Hilton offered a compromise: Hilton would search for documents using Plaintiff's broad search terms across a limited set of custodians and limit production to documents related to the San Jose DoubleTree. Plaintiff accepted this scope of discovery and neither negotiated Hilton's custodians nor objected to the production. Hilton produced 23,520 pages based on those criteria, noting *in writing* these limits again when responding to Plaintiff's requests for production. Hilton will provide a declaration on this stipulation, as necessary.

Ahead of noticing Hilton's Rule 30(b)(6) deposition, Plaintiff sent Hilton a list of topics for Hilton's representatives to discuss. Hilton objected to many overly broad topics. The parties resolved most of these disputes, and Hilton designated at least four witnesses to testify. Despite Hilton's best efforts, Plaintiff still requests that Hilton prepare its representatives to discuss ten topics as they relate to *all Hilton-branded properties*. These topics include Hilton's "knowledge of signs, indicators, or 'red flags' of sex trafficking in hotels during the Time Period in Question," without qualification—and the "development, implementation, and assessment of policies, procedures or directives relating to human trafficking, sex trafficking, trafficking of minors, prostitution, or commercial sex at Defendant's Branded Hotels."

## II. Argument

### A. Plaintiff's Questions Exceed the Established Scope of Discovery

The existing scope of discovery should hold. Under Rule 30(b)(6), a party noticing a deposition of a corporate representative "must describe with reasonable particularity the matters for examination." Prior limitations on the scope of written discovery inform the breadth allowed for Rule 30(b)(6) depositions. *See Burrows v. 3M Co.*, 2023 WL 197250, at *4 (W.D. Wash. Jan. 17, 2023); *McBride v. Medicalodges*, 250 F.R.D. 581, 585 (D. Kan. 2008). After all, "[i]t is simply impractical to expect Rule 30(b)(6) witnesses to know the intimate details of everything." *Yellow*

*Rose Prods. v. Pandora Media*, 2024 WL 1832424, at *2 (C.D. Cal. Apr. 12, 2024) (citation omitted).

Here, the parties limited discovery to the San Jose DoubleTree, where the events described in Plaintiff's complaint allegedly occurred. Plaintiff accepted the document production without objection, and the parties proceeded with a tailored scope of discovery. Now, at discovery's closing stages, Plaintiff seeks to swell it into a company- and brand-wide inquiry. Rule 30(b)(6) does not license parties to reopen old discovery disputes or evade negotiated discovery resolutions. That is not how "fair, efficient, and proportionate" discovery operates. *See Haynes v. S.C. Waste*, 2022 WL 2037925, at *1 (D.S.C. June 2, 2022). The parties' agreed-upon scope of discovery as to the property at issue should stand. *See McBride*, 250 F.R.D. at 585.

Disregarding the established bounds of discovery would make Hilton's deposition preparation responsibilities unworkable. To answer questions on the wide range of complex topics Plaintiff raised in her Rule 30(b)(6) notice, Hilton's representatives need an adequate opportunity to prepare. *See, e.g.*, *Yellow Rose*, 2024 WL 1832424, at *2. Preparing representatives to speak about all Hilton-branded properties across six continents would require a significant undertaking. That would return discovery to square one and derail the scheduled depositions in November and December and the already-amended discovery deadlines. Plaintiff's Rule 30(b)(6) notice comes too late in discovery to transform it in that way. And her "frustration" with the prior stipulated scope of discovery "does not entitle her to unilaterally expand the scope of a [] 30(b)(6) deposition with a clearly articulated focus." *See Burrows*, 2023 WL 197250, at *4 (refusing to permit a Rule 30(b)(6) deposition to expand beyond prior court-ordered limitations on discovery).

**B. Plaintiff's Questions Are Irrelevant, Unduly Burdensome, and Overbroad**

Even setting aside Plaintiff's prior stipulation, her proposed topics go far beyond what is discoverable. Like all discovery, Rule 30(b)(6) topics must be "relevant" and "proportional to the needs of the case," and cannot impose "undue burden" and "expense" on the opposing party. Fed. R. Civ. P. 26(b), (c); *Detoy v. City & County of San Francisco*, 196 F.R.D. 362, 367 (N.D. Cal. 2000). In § 1595(a) cases, relevance centers on the specific property and alleged venture at issue. In *Ratha*, the Ninth Circuit held that the relevant question under § 1595(a) in a labor-trafficking

case was whether the defendants "knew or should have known of the" [i] plaintiff's "specifically alleged TVPRA violations" [ii] "at the Songkhla factory" [iii] "between 2010 and 2012." *Ratha v. Phatthana Seafood Co.*, 35 F.4th 1159, 1177 (9th Cir. 2022). *Ratha* thus noted that alleged "labor abuses" more "*generally*" bore no relevance to the analysis. *See id.* at 1177; *Ratha v. Rubicon Res.*, 168 F.4th 541, 561 (9th Cir. 2026) (*en banc*) (reaffirming the "knowledge" "holding from *Ratha I*" as "law of the case"); *see also G.G. v. Salesforce.com, Inc.*, 76 F.4th 544, 557 (7th Cir. 2023) (citing TVPRA hotel cases and noting that where the alleged venture "involved the trafficking of only one victim," "knowledge of the specific victim goes hand-in-glove with knowledge of the 'venture'").

Here, this Court has also required Plaintiff to show that Hilton [i] "received a financial benefit from renting rooms to *her trafficker* over many months"; [ii] "participated in a venture with *her sex trafficker*"; [iii] "that *this venture* assisted, supported, or facilitated *her trafficking*"; and [iv] that Hilton "knew or should have known that *[this] venture* … engaged in conduct prohibited by the TVPRA." *K.R.D.*, 798 F. Supp. 3d at 1092, 1097–98 (emphasis added).[1] Accordingly, the proper scope of discovery here centers on alleged trafficking at "the San Jose DoubleTree," not Hilton's entire brand portfolio. *Id.*; *see Ratha I*, 35 F.4th at 1177 ("the specifically alleged TVPRA violations at the Songkhla factory"). Yet all ten objectionable topics stretch across 26 brands and thousands of properties. They thus seek discovery about what *Ratha* deems irrelevant—alleged violations more "*generally*" as opposed to those "specifically alleged TVPRA violations" as to the plaintiff and hotel in this case. *See id.* at 1177. And to the extent these or other topics bear minimal relevance, they are disproportionate to this single-plaintiff, single-hotel case. *See A.F. v. G6 Hosp. LLC*, 2024 WL 4564426, at *2 (D.N.M. Oct. 24, 2024) (finding discovery as to other properties in the same brand was only "lightly probative," and "the burden or expense of much of the proposed discovery outweighs its likely benefit"); *Tighe v. King County*, 2018 WL 6042310, at *3 (W.D. Wash. Nov. 19, 2018) (rejecting topic in a single-plaintiff case on comparators that would have swept across "800 deputies doing different jobs, for different supervisors … in a dozen different

[1] Hilton preserves all arguments that this standard fails as a matter of law, including based on *Ratha*, 168 F.4th at 560–61 (citing *Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714, 724–25 (11th Cir. 2021)).

cities"); *McBride*, 250 F.R.D. at 585 (narrowing deposition topics from all of defendant's 37 facilities to the single facility in which claims arose).

Not only are these topics irrelevant and disproportionate, they would also impose an undue burden because of their "excessive and improper" nature; they "attempt to cover nearly every conceivable facet of this litigation, making the preparation of a thoroughly educated witness infeasible." *Alvarado-Herrera v. Acuity*, 344 F.R.D. 103, 110 (D. Nev. 2023). Hilton is prepared to supply a declaration to further explain why the broad nature of the topics would impose a disproportionate and undue burden.

Accordingly, the Court should grant a protective order under Rule 26(c) limiting deposition questions to topics concerning the San Jose DoubleTree.

**Plaintiff's Position:**

**I. The parties did not stipulate to limit discovery to the San Jose DoubleTree**

Hilton first claims that the disputed topics exceed the scope previously agreed upon during written discovery. Yet, it does not offer to provide a copy of the agreement because there was no such agreement. K.R.D.'s counsel has requested contemporaneous documentation, such as an email memorializing any alleged agreement, but Hilton has provided none. "Fed. R. Civ. P. 29 permits the parties to make agreements about discovery. That rule is generally construed to be 'quite clear ... in requiring, as a condition of enforcement, that the agreements be in writing and in the form of a stipulation.'" *Libertarian Party of Ohio v. Husted*, 302 F.R.D. 472, 478 (S.D. Ohio 2014) (*Pescia v. Auburn Ford-Lincoln Mercury Inc.*, 177 F.R.D. 509, 510 (M.D. Ala. 1997)).

What is true is that counsel conferred on search terms, time frames, and relevant custodians in relation to particular requests for production of documents. Counsel did not discuss in any fashion the search for and deposition of fact witnesses or 30(b)(6) corporate representatives. That K.R.D. elected not to pursue a motion to compel as to specific written discovery requests does not amount to a general stipulation to narrow the scope of discovery. And Hilton cannot, in good faith, claim that the parties agreed to limit deposition discovery, including Rule 30(b)(6) testimony, during a conferral about search terms approximately nine months ago. None of the cases that Hilton cites supports turning a discussion about written discovery search terms into a categorical limitation

on all discovery. For example, *McBride*, 250 F.R.D. at 585, stands only for the obvious proposition that a court's prior order limiting written discovery could inform its analysis of related Rule 30(b)(6) topics. Even then, the court evaluated the topics individually and permitted testimony on relevant company-wide policies and practices despite the plaintiffs' employment at one facility. *Id.*

Nor is a Rule 30(b)(6) deposition limited by documents previously produced in written discovery. A corporation must take reasonable steps to prepare its witnesses on noticed topics, regardless of prior production. Hilton's reliance on *Yellow Rose Prods.*, 2024 U.S. Dist. LEXIS 67468, at *6, is misplaced. The cited language addresses general preparation standards, not a limitation based on prior document production. K.R.D.'s earlier decisions about whether to compel responses to written discovery were shaped by Hilton's representations about its document-retention policies and its claims that relevant documents were no longer available; it cannot now avoid discovery by claiming burden from having to review for the first time documents that it previously led K.R.D. to believe no longer existed. The Court should evaluate the 30(b)(6) topics apart from Hilton's characterization of the scope of written discovery because Hilton's obligation to take reasonable steps to gather information available to the corporation is independent of prior production.

**II. The requested information about Hilton's knowledge of and response to trafficking is within the scope of discovery.**

Hilton also argues that, independently of the parties' alleged agreement, the disputed topics fall outside the proper scope of discovery. Its central argument is that, because K.R.D.'s trafficking occurred at the San Jose Double Tree, discovery must be confined to information specific to that property. It seeks to exclude Hilton's corporate knowledge of and brand-wide response to trafficking both in the hotel industry and at other Hilton-branded hotels. But the San Jose Double Tree was a Hilton managed property and any geographic limitation excludes relevant information. Topics 12–14, 30–35, and 38 are within the proper scope of discovery as written.

This Court's Rule 12(b)(6) analysis recognized the relevance of Defendants' broader knowledge of trafficking to the constructive-knowledge inquiry. In rejecting Defendants' contention that hotel staff could have suspected only prostitution, rather than trafficking, the Court

relied on K.R.D.'s allegations that "government agencies and nonprofit organizations have undertaken extensive efforts to educate the hotel industry, including defendants, about the pervasiveness of sex trafficking at hotels, common signs of sex trafficking, and the close link between prostitution and sex trafficking." *Doe (K.R.D.)*, 798 F. Supp. 3d at 1097-1098. Thus, the Court recognized that what Hilton already knew about trafficking in hotels informed what they should have known based on what occurred at the San Jose DoubleTree. Further, in reaching its conclusion on constructive knowledge, the Court cited to *M.A. v. Wyndham Hotels & Resorts, Inc.*, 425 F. Supp. 3d 959, 968 (S.D. Ohio 2019), where the Court recognized that allegations that hotel brands defendants "were on notice about the prevalence of sex trafficking generally at their hotels" and failed to respond reasonably could support constructive knowledge.

Courts in TVPRA cases have rejected attempts to confine discovery to the property where a plaintiff was trafficked. In *Doe (E.M.B.) v. G6 Hosp., LLC*, 2025 LX 340054 (E.D. Tex. 2025), the court rejected that limitation because information beyond the property level bears on the negligence-based constructive-knowledge standard. *Id.* at *16, 25. The court likened such evidence to a "Russian doll of knowledge," explaining that "[e]very Matryoshka in the 'Russian doll of knowledge' is evidentiarily relevant, albeit at cascading degrees." *Id.* at *29-30.

Moreover, in *H.H. v. G6 Hosp., LLC*, 2021 U.S. Dist. LEXIS 82935, at *14-16 (S.D. Ohio Apr. 30, 2021) the court ordered discovery of corporate records showing knowledge of trafficking at the brand's locations around the country, **not** limited to the properties where the plaintiff was trafficked. *Id.* at *27 ("The scope of relevant discovery is not limited to what Wyndham knew "specifically" at the specific hotels where these particular plaintiffs were trafficked.") The court rejected the proposition that this amounted to allowing discovery from thousands of franchised locations, recognizing that the requests sought **corporate-level knowledge** of human trafficking throughout the brand's operations. Similarly, in *A.S. v. Wyndham Hotel*, 4:23-CV-01969 ECF No. 57 (S.D. Tex. Sept. 9, 2024) the court granted a motion to compel seeking discovery of several categories of documents about "Wyndham owned or franchised properties" around the country.

Hilton's arguments conflate what is necessary to prove beneficiary liability with the scope of discovery. To "be relevant under Rule 26(b)(1), a document or information need not, by itself,

prove or disprove a claim or defense or have strong probative force or value." *Samsung Elecs. Am., Inc. v. Yang Kun Chung*, 321 F.R.D. 250, 280 (N.D. Tex. 2017). The requirement to show constructive knowledge of trafficking in a venture operating a particular hotel does **not** make industry-or brand-level knowledge undiscoverable. *E.M.B.,* 2025 LX 340054, at *6.

Nor does Hilton's reliance on *Ratha.*, 35 F.4th at 1177 (*Ratha I*), support Hilton's narrow view of discovery. *Ratha I* held that generalized reports of labor abuses in Thailand's shrimp industry were insufficient, standing alone, to establish constructive knowledge of TVPRA violations at a particular manufacturer's factory. It did not deem industry-wide knowledge categorically irrelevant, much less require that the search for evidence be confined to the specific location where a plaintiff was trafficked.

Discovery depends on the particular allegations, circumstances, and information sought, not arbitrary geographic boundaries. Indeed, *McBride* rejected a categorical limitation to the plaintiffs' facility, permitting testimony concerning relevant company-wide policies and practices after examining the topics individually. 250 F.R.D. at 585.

K.R.D.'s 30(b)(6) topics seek broader testimony only where relevant and seeks information on Hilton's corporate knowledge and activities rather than requiring investigation of thousands of individual Hilton-branded properties:

- **Topics 12–14** seek information concerning Hilton's knowledge of trafficking in hotels and the resources available to the industry for detecting and responding to trafficking, including industry-recognized "red flags." K.R.D. alleges that trafficking was a known industry problem, that Hilton received education and training concerning the problem and available tools for responding to it, and that Hilton adopted a brand-wide response. This corporate-level knowledge and response is not specific to any individual property. Thus, limiting these topics to the San Jose DoubleTree would deprive them of their core substance.
- **Topics 30–34** seek information concerning the various ways Hilton may have learned about trafficking occurring throughout its branded hotels during the relevant period. These topics do not require Hilton to investigate each of its branded hotels

individually. Rather, they focus on the methods through which Hilton collected information across its hotel system, which would have informed its corporate knowledge of and response to trafficking.

- **Topics 35 and 38** concern Hilton's anti-trafficking policies and training. K.R.D. alleges that Hilton developed and implemented these measures at a brand-wide level. That Hilton developed training or policies for use across its hotel system, rather than specifically for the San Jose DoubleTree, does not diminish their relevance to this case. Moreover, whether Hilton's approach to training varied among properties, and the reasons for any such differences, are themselves relevant to understanding Hilton's knowledge, policies, and practices.

In short, Hilton's attempt to characterize these topics as requiring an investigation into thousands of hotels misrepresents their scope. The topics seek information concerning Hilton's corporate knowledge, policies, and practices, which are relevant to the issues in this case.

**POSITIONS ON HEARING (100 Words Per Party)**

**Hilton's Position:** The Court should hold a hearing to resolve this discovery dispute. A hearing will allow the parties to present their positions in greater detail and with factual context, explain the burdens of additional discovery, explain their agreement on the scope of discovery, and address the Court's questions regarding each side's position and the basis for any disagreements.

**Plaintiff's Position:** The Court should hold a hearing. Allowing the parties to fully present their positions will facilitate the Court in resolving the issues raised.

**DISCOVERY DATES**

The current discovery schedule is set forth below:

- Fact Discovery Cut-Off: December 14, 2026
- Plaintiff's Designation of Opening Experts with Reports: December 14, 2026
- Last Day to Complete ADR: December 28, 2026
- Defendant's Designation of Opening Experts with Reports: January 15, 2027
- Filing of Dispositive/Daubert Motion(s): April 2, 2027

**MEET AND CONFER COMPLIANCE (50 WORDS)**

On Monday, October 19, 2026, the parties conducted a videoconference regarding this discovery dispute Bryan Blevins appeared for Plaintiff, and Nicole Perry and Ali Anderson appeared for Hilton.

Dated: November 4, 2026

Respectfully submitted,

By: */s/ Nicole M. Perry*

Nicole M. Perry, Esq., *Pro Hac Vice*
JONES DAY
717 Texas Street, Suite 3300
Houston, TX 77002
Telephone: (832) 239-3939
Facsimile: (832) 239-3600
Email: nmperry@jonesday.com

Bethany Biesenthal, Esq., *Pro Hac Vice*
Allison McQueen, Esq., *Pro Hac Vice*
JONES DAY
110 North Wacker Drive, Suite 4800
Chicago, IL 60606
Telephone: (312) 782-3939
Facsimile: (312) 782-8585
Email: bbiesenthal@jonesday.com
amcqueen@jonesday.com

Andrew J. Clopton, Esq., *Pro Hac Vice*
JONES DAY
150 W. Jefferson, Suite 2100
Detroit, MI 48226
Telephone: (313) 733-3939
Facsimile: (313) 230-7997
Email: aclopton@jonesday.com

Emily F. Knox
JONES DAY
555 California Street, 26th Floor
San Francisco, CA 94104
Telephone: (415) 626-3939
Facsimile: (415) 875-5700
Email: egoldbergknox@jonesday.com

Attorneys for Defendant
*Hilton Domestic Operating Company Inc.*

*By: /s/ Bryan O. Blevins Jr.*

Bryan O. Blevins, Jr. | SBN 02487300 – *Pro Hac Vice*
350 Pine Street, Ste. 1100
Beaumont, TX 77701
(409) 835-6000 Telephone
(409) 838-8888 Facsimile

bblevins@pulf.com

Amanda J.G. Walbrun, State Bar No. 317408
walbrun@boucher.la
BOUCHER LLP
21600 Oxnard Street, Suite 600
Woodland Hills, California 91367-4903
Tel: (818) 340-5400
Fax: (818) 340-5401

David E. Harris, *Pro Hac Vice*
dharris@shhlaw.com
SICO HOELSCHER HARRIS, LLP
819 N. Upper Broadway
Corpus Christi, Texas 78401
Tel: (361) 653-3300

*Attorneys for Plaintiff Jane Doe (K.R.D.)*

## CERTIFICATE OF SERVICE

I hereby certify that on November 4, 2026, a copy of the foregoing was filed using the CM/ECF system, which will effectuate service on all counsel of record.

*/s/ Nicole M. Perry*_____________
Nicole M. Perry, Esq.

Attorney for Defendant
*Hilton Domestic Operating Company Inc.*