# EXHIBIT A

## EXHIBIT A

## 30(b)(6) RELATED DEFINITIONS

As used in this Notice the following terms shall have the meaning indicated below, unless otherwise indicated:

1. Except as otherwise defined or broadened in this Notice, Plaintiff incorporates by reference the definitions set forth in Federal Rule of Civil Procedure and relevant federal statutes including 22 U.S.C. § 7102 and 18 U.S.C. Chapter 77.

2. "**Defendant**" or "**Defendant's**" shall mean Hilton Domestic Operating Company Inc. and any representative, agent, servant, shareholder, owner, principal, subcontractor or employee, or any other person or entity acting by, through, or on its behalf, whether directly or indirectly.

3. **"Hilton"** means, collectively, Hilton Worldwide Holdings Inc., Hilton Domestic Operating Company Inc., Hilton Resorts Corporation, Hilton Management LLC, and Hilton Franchise Holding LLC, together with their parents, predecessors, successors, subsidiaries, affiliates, and any person or entity acting on their behalf.

4. The "**Subject Location**" refers to the hotel located at 2050 Gateway Pl, San Jose, CA 95110 at which Plaintiff is alleged to have been trafficked.

5. "**Management Agreement**" means the DoubleTree by Hilton Management Agreement for the Subject Location together with all exhibits, schedules, amendments, and related brand-standards, operating-standards, and system-standards materials.

6. "**Affiliates**" means the entities who constitute an Affiliate of Defendant under the definition in the Management Agreement. When used in the singular, "Affiliate" should mean any entity that is one of the Affiliates.

7. "**Manager**" means Defendant or any **Affiliate** that performed, directed, or supervised management or operational functions at the Subject Location.

8. "**Hotel Personnel**" means all employees, agents, contractors, and staff who performed services at the Subject Location, as that term is used in the Management Agreement.

9. "**Owner**" means HLT San Jose LLC.

10. "**Defendant's Branded Hotels**" means any hotel operated, marketed, licensed, or franchised by Defendant or its Affiliates during the Discovery Period.

11. "**Plaintiff**" shall mean the individual who has filed this lawsuit under the pseudonym K.R.D.

12. "**Alleged Trafficking Period**" shall mean the period during which Plaintiff alleges she was trafficked at the Subject Location, approximately March 1, 2014 through July 18, 2015.

13. "**Discovery Period**" shall mean March 1, 2010 to August 31, 2019.

14. **"Industry Group"** means any organization or group that hotel, motel, or lodging businesses join, fund, or participate in to share information, set standards, provide training, or advance their shared interests. The term includes trade associations, franchisee and owner associations, advisory councils, and any committee, working group, or initiative operating under or alongside such a group. Examples include the American Hotel & Lodging Association, the Asian American Hotel Owners Association, state hotel lodging associations, and Women in Lodging.

15. "**Communication**" shall mean and include every manner or means of disclosure, transfer, or exchange of information.

16. "**Document**" and "**Documents**" are to be broadly construed as defined by and used in Fed. R. Civ. P. 26 and 34 and related rules and provisions.

17. **"Concerning," "Regarding," "Relating to," or "Related to"** mean referring to, relating to, describing, evidencing, constituting, comprising, containing, setting forth, or bearing upon, and each such term is synonymous with the others as used herein.

**EXHIBIT A**

The above Defendant shall present a witness or witnesses to testify on behalf of Defendant on the issues set forth below:

1. The corporate structure of and the relationships, roles, and interactions of **Defendant** and **Affiliates** as **Related to** the **Subject Location** during the **Alleged Trafficking Period**, including identification of which **Affiliate** performed which functions **Regarding** the ownership, operation, management, control, or supervision of the **Subject Location**.

2. The terms and implementation of the **Management Agreement** and any other agreement governing the operation, management, or licensing of the **Subject Location** during the **Alleged Trafficking Period**.

3. Any revenue that **Defendant**, any **Affiliate**, or **Owner** received from or as a result of the rental of rooms at the **Subject Location** during the **Alleged Trafficking Period**.

4. The receipt of, distribution of, and accounting for revenue generated from the Subject Location during the Alleged Trafficking Period between **Defendant**, **Affiliates**, and **Owner**.

5. For the **Subject Location** during the **Alleged Trafficking Period**: the amount of annual room revenue paid in cash, percentage of room nights paid in cash, and the percentage of

multi-night stays paid in cash, as limited by the reports produced by Hilton related to cash payments at the Subject Location.

6. Agreements between or among **Defendant** and **Affiliates** that apply to or govern the sharing or distribution of revenue generated from the **Subject Location**.

7. Identification of the entity, department, and job title of personnel, to the extent employee records exist, who participated in the following at or for the **Subject Location** during the **Alleged Trafficking Period**: maintaining employment records and adopting rules governing employees' day-to-day work.

8. Identification of the entity, department, and job title of personnel, to the extent employee records exist, who participated in setting policies and procedures, overseeing/monitoring, or controlling systems **regarding** any of the following for the **Subject Location** during the **Alleged Trafficking Period**: reservation and check in procedures, guest identification, vehicle identification, payment method, adding days to existing stays, property access for visitors who are not registered guests, no rent lists, room entry by staff, towel and linen usage, room inspections, observation and documentation of suspicious activity, the refusal of in-room services/do not disturb signs, and staffing levels.

9. Identification of the entity, department, and job title of personnel who were responsible for or involved with any of the following at or for the **Subject Location** during the **Alleged Trafficking Period**: training or education of hotel staff and management on hotel security, sex trafficking, prostitution or commercial sex; development or implementation of policies or procedures on hotel security, sex trafficking, prostitution or commercial sex; providing, managing, or overseeing on-site security services; and responding to actual, reported, or suspected incidents of sex trafficking, prostitution, commercial sex, or signs of such activity.

10. The location, layout, access points, and access restrictions for the **Subject Location** during the **Alleged Trafficking Period**.

11. The forms and capabilities of surveillance and security at the **Subject Location**, including closed-circuit television (CCTV) and security cameras during the **Alleged Trafficking Period**.

12. **Hilton**'s knowledge of the prevalence of sex trafficking in hotels and resources related to the detection of and reduction of sex trafficking in hotels during the **Discovery Period**.

13. **Hilton**'s knowledge of signs, indicators, or "red flags" of sex trafficking in hotels during the **Discovery Period**.

14. **Hilton**'s knowledge of the relationship between sex trafficking and prostitution and commercial sex during the **Discovery Period**.

15. **Hilton**'s **Communications** with or involvement related to human trafficking or sex trafficking with any of the following during the **Discovery Period**: DHS, the FBI, the Polaris Project, ECPAT International, BEST Business to End Slavery and Trafficking,

International Tourism Partnership (ITP), or other Industry Groups, to the extent the testimony does not violate Hilton's associational privileges related to these organizations.

16. **Hilton**'s **Communications** with or other involvement with any **Industry Group** pertaining to human trafficking, sex trafficking, or child trafficking during the **Discovery Period**.

17. **Hilton**'s corporate codes of conduct concerning human trafficking, sex trafficking, prostitution or commercial sex during the **Discovery Period**.

18. **Hilton**'s public statements or reporting to any third party related to human trafficking, sex trafficking, prostitution, or commercial sex during the **Discovery Period**.

19. Actual, reported, or suspected human trafficking, sex trafficking, trafficking of minors, prostitution, or commercial sex or signs of such activity at the **Subject Location** during the **Discovery Period**.

20. **Communications** with any law enforcement agency or other government body **Regarding** actual, reported, or suspected human trafficking, sex trafficking, trafficking of minors, prostitution, commercial sex, violent crime, or drug activity or signs of such activity at the **Subject Location** during the **Discovery Period.**

21. The existence, volume, general content, and location of incident reports, or similar documents regardless of title, **Regarding** actual, reported, or suspected human trafficking, sex trafficking, trafficking of minors, prostitution, commercial sex, violent crime, or drug activity or signs of such activity at the **Subject Location** during the **Discovery Period**.

22. Policies, procedures, practices, expectations, or requirements for staff or management at the **Subject Location** during the **Discovery Period** regarding the documentation, tracking, escalating, or reporting of suspected criminal activity or potential signs of such activity, including human trafficking, sex trafficking, trafficking of minors, prostitution, or commercial sex.

23. Reports made by staff or management at the **Subject Location** during the **Discovery Period** regarding suspected criminal activity or potential signs of such activity—including human trafficking, sex trafficking, trafficking of minors, prostitution, or commercial sex.

24. The creation, existence, and location of documentation related to reports referenced in the previous topic.

25. Any security assessment or other assessment or evaluation that addressed the risk of criminal activity at the **Subject Location** during the **Discovery Period**.

26. The use of records of law enforcement calls for service to monitor, assess, or respond to the risk of criminal activity at the **Subject Location**, during the **Discovery Period**.

27. Monitoring of online sex advertisements on platforms such as Backpage and Craigslist referencing the **Subject Location**, its name, or images of its rooms during the **Discovery Period**.

28. Any steps taken to block, filter, or monitor websites—including Backpage and Craigslist—at the **Subject Location** during the **Discovery Period**.

29. The existence, volume, general content, and location of guest complaints, guest surveys, or other forms of guest feedback **Regarding** actual, reported, or suspected human trafficking, sex trafficking, trafficking of minors, prostitution, commercial sex, violent crime, or drug activity or signs of such activity at the **Subject Location** during the **Discovery Period**.

30. Any capture, monitoring, analysis, or retention by or on behalf of **Defendant** or any **Affiliate** of online reviews **Regarding** actual, reported, or suspected human trafficking, sex trafficking, trafficking of minors, prostitution, commercial sex, violent crime, or drug activity or signs of such activity at **Defendant's Branded Hotels**, including the **Subject Location** during the **Discovery Period**.

31. A description of any methods **Defendant** or any **Affiliate** used—whether internally or through a third party—during the **Discovery Period** to capture, monitor, or analyze social media or websites for feedback on, complaints about, or discussion of **Defendant's Branded Hotels**, including a description of whether and how information pertaining to or referencing actual, reported, or suspected criminal activity, sex trafficking, prostitution, commercial sex, or illegal drug activity was captured, flagged, or analyzed.

32. Monitoring by **Defendant** or any **Affiliate** of news reports regarding sex trafficking, trafficking of minors, prostitution, or commercial sex at **Defendant's Branded Hotels** during the **Discovery Period**.

33. **Defendant**'s knowledge of and response to any public nuisance, condemnation and/or hotel licensing proceedings or complaints (criminal or civil) related to actual, suspected, or reported, human trafficking, sex trafficking, prostitution, commercial sex, or on-site criminal activity at **Defendant's Branded Hotels** during the **Discovery Period**.

34. Any studies, surveys, evaluations, or analysis regarding the prevalence of, reports of, signs of, or causes of/contributing factors to actual, reported, or suspected human trafficking, sex trafficking, trafficking of minors, prostitution, or commercial sex at **Defendant's Branded Hotels** that were conducted by or on behalf of or that were provided to **Defendant** or any **Affiliate** during the **Discovery Period**.

35. The development, implementation, and assessment of voluntary and/or mandatory training for employees and managers relating to human trafficking, sex trafficking, or commercial sex at the **Subject Location**.

36. The identity of committees and departments responsible for the development, implementation, oversight, monitoring, and assessment of the effectiveness of the training referred to in the previous topic.

37. All training or education provided to **Hotel Personnel** or management at the **Subject Location** during the **Discovery Period** pertaining to hotel security or on-site criminal activity.

38. The development, implementation, and assessment of policies, procedures or directives relating to human trafficking, sex trafficking, trafficking of minors, prostitution, or commercial sex at **Defendant's Branded Hotels**, including the **Subject Location**.

39. The identity of committees and departments responsible for the development, implementation, oversight, monitoring, and assessment of the effectiveness of the policies, procedures or directives referred to in the previous topic.

40. All policies, procedures or directives provided to **Hotel Personnel** or management at the **Subject Location** during the **Discovery Period** pertaining to hotel security or on-site criminal activity.

41. The nature and functionality of the reservation systems, property management systems, or other operational systems used at the **Subject Location** during the **Alleged Trafficking Period** as it relates to any of the following: reservation and check in procedures, guest identification, vehicle identification, payment method, adding days to existing stays, visitors who are not registered guests, no rent lists, room cleaning, towel and linen usage, room inspections, observation and documentation of suspicious activity, and the refusal of in-room services.

42. The capture, monitoring, analysis, and storage of guest, property, or operational data from the reservation system, property management system, or other operational systems used at the **Subject Location** during the **Alleged Trafficking Period**.

43. The creation, maintenance, existence, and completeness of records reflecting the reservation of, rental of, or payment for rooms at the **Subject Location** during the **Alleged Trafficking Period**, including how data was collected, any changes to the storage of data over time, and by what parameters such data can currently be searched.

44. **Defendant**'s document and record retention (and/or destruction) policies or procedures that would cover the **Alleged Trafficking Period** through the present.

45. Policies, procedures, rules, directives, or other practices applicable to the **Subject Location** at any point during the **Alleged Trafficking Period** that were **Related to** any of the following: reservation and check in procedures, guest identification, vehicle identification, payment method, adding days to existing stays, visitors who are not registered guests, no rent lists, room cleaning, towel and linen usage, room inspections, observation and documentation of suspicious activity, and the refusal of in room services.

46. The use of a do not rent (DNR) List or other system of restricting the ability of individuals to reserve or rent rooms at the **Subject Location** during the **Alleged Trafficking Period**, including tools used for implementation and any related policies and procedures.

47. **Defendant**'s knowledge of **Plaintiff**'s presence at the **Subject Location**.

48. **Defendant**'s knowledge of and position on **Plaintiff**'s allegations of sex trafficking at the **Subject Location**.