Bryan O. Blevins, Jr., Pro Hac Vice
Claire Brown, Pro Hac Vice
Provost Umphrey Law Firm
350 Pine Street, Ste. 1100
Beaumont, TX 77701
(409) 835-6000 Telephone
(409) 838-8888 Facsimile
bblevins@pulf.com
cbrown@pulf.com

Amanda J.G. Walbrun
BOUCHER LLP
21600 Oxnard Street, Suite 600
Woodland Hills, California 91367-4903
Tel: (818) 340-5400
Fax: (818) 340-5401
walbrun@boucher.la

Attorneys for Plaintiff Jane Doe (K.R.D.)

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

JANE DOE (K.R.D.),

Plaintiff,

v.

HILTON DOMESTIC OPERATING COMPANY INC., et al.,

Defendants.

Case No. 5:24-cv-06993-PCP-VKD

**RESPONSE TO MOTION FOR SPOLIATION SANCTIONS**

Judge: Hon. P. Casey Pitts
Hearing: December 3, 2026
Time: 10 a.m.
Location: Courtroom 8

## TABLE OF CONTENTS


**I. BACKGROUND** ..................... **1**

**II. ARGUMENT** ..................... **3**

**A. Hilton is not entitled to Rule 37(e)(1) sanctions** ..................... **4**

**B. Hilton is not entitled to Rule 37(e)(2) sanctions** ..................... **7**

**C. The specific sanctions Hilton requests are not warranted.** ..................... **11**

**1. Death penalty terminating sanctions are clearly not appropriate.** ..................... **12**

**2. Other sanctions are also not warranted.** ..................... **13**

**III. CONCLUSION** ..................... **15**

# TABLE OF AUTHORITIES

Cases

*AliveCor, Inc. v. Apple, Inc.*,
No. 21-CV-03958-JSW, 2023 WL 4335293 (N.D. Cal. June 2, 2023) .............................. 4, 6, 7

*Burton v. Walgreen Co.*,
No. 2:14-CV-84 JCM (VCF), 2015 WL 4228854 (D. Nev. July 10, 2015) ............................... 5

*Chinitz v. Intero Real Est. Servs.*,
No. 18-cv-05623-BLF, 2020 WL 7389417 (N.D. Cal. May 13, 2020) ................................ 8, 14

*Colonies Partners, L.P. v. Cnty. of San Bernardino*,
No. 5:18-CV-00420-JGBSHK, 2020 WL 1496444 (C.D. Cal. Feb. 27, 2020), report and recommendation adopted, 2020 WL 1491339 (C.D. Cal. Mar. 27, 2020) ......................... 12, 13

*Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills*,
482 F.3d 1091 (9th Cir. 2007)........................................................................................... 12

*Dish Network L.L.C. v. Jadoo TV, Inc.*,
No. 20-CV-01891-CRB (LB), 2022 WL 11270394 (N.D. Cal. Oct. 19, 2022) ....................... 13

*Fast v. GoDaddy.com LLC*,
340 F.R.D. 326 (D. Ariz. 2022) ........................................................................................ 9, 11

*Flexport, Inc. v. Freightmate AI, Inc.*,
No. 25-CV-02500-RFL (PHK), 2026 WL 2771671 (N.D. Cal. Sept. 17, 2026).......... 4, 8, 9, 15

*Gallagher v. Magner*,
619 F.3d 823 (8th Cir. 2010)................................................................................................ 6

*Hernandez v. Tulare Cty. Corr. Ctr.*,
No. 116CV00413EPGPC, 2018 WL 784287 (E.D. Cal. Feb. 8, 2018) ............................ 4, 7, 11

*hiQ Labs, Inc. v. LinkedIn Corp.*,
639 F. Supp. 3d 944 (N.D. Cal. 2022) .............................................................................. 8, 9, 11

*Laub v. Horbaczewski*,
2020 WL 9066078 (C.D. Cal. July 22, 2020) .......................................................... 7, 9, 11, 14

*Matthew Enter., Inc. v. Chrysler Grp. LLC*,
2016 WL 2957133 (N.D. Cal. May 23, 2016) ........................................................................ 4, 7

*McGhee v. N. Am. Bancard, LLC*,
No. 17-CV-00586-AJB-KSC, 2021 WL 2577159 (S.D. Cal. June 23, 2021) .................... 5, 6, 7

*Meta Platforms, Inc. v. BrandTotal Ltd.*,
605 F.Supp.3d 1218 (N.D. Cal. June 6, 2022)........................................................................ 11

*Microvention, Inc. v. Balt USA, LLC*,
No. 820CV02400JLSKES, 2023 WL 7476998 (C.D. Cal. Oct. 5, 2023), report and recommendation adopted, 2023 WL 7634109 (C.D. Cal. Nov. 13, 2023) ......................... 12, 13

*Morehead v. City of Oxnard*,
No. 2:21-CV-07689-SPG-ADSX, 2023 WL 8143973 (C.D. Cal. Oct. 4, 2023)........................ 9

*Muhammad v. Jenkins*, No. CV 19-7970 JAK, 2022 WL 4292341(C.D. Cal. Aug. 26, 2022), report and recommendation adopted, 2022 WL 4292308 (C.D. Cal. Sept. 15, 2022)................ 8

*Painter v. Atwood*, No. 2:12-CV-01215-JCM, 2014 WL 1089694 (D. Nev. Mar. 18, 2014) .................................. 8

*Phan v. Costco Wholesale Corp.*, No. 19-CV-05713-YGR, 2020 WL 5074349 (N.D. Cal. Aug. 24, 2020)............................ 7, 15

*Reinsdorf v. Skechers U.S.A., Inc.*, 296 F.R.D. 604, 627 (C.D. Cal. 2013) ................................ 5, 7

*Resolute Forest Prods., Inc. v. Greenpeace Int'l*, No. 17CV02824JSTKAW, 2022 WL 16637990 (N.D. Cal. Nov. 2, 2022), report and recommendation adopted, 2023 WL 4311255 (N.D. Cal. Apr. 10, 2023)................................ 13

*Ryan v. Editions Ltd. West, Inc.*, 786 F.3d 754 (9th Cir. 2015)........................................................................................ 5

*Sanchez v. Jiles*, No. CV10-09384MMMOPX, 2012 WL 13005996 (C.D. Cal. June 14, 2012).......................... 6

*Torgersen v. Siemens Bldg. Techs.*, 2021 WL 2072151 (N.D. Ill. May 24, 2021) ...................................................................... 9

*Wallace v. Martinez*, 2022 WL 2872998 (E.D. Cal. July 21, 2022) ..................................................................... 6

*Warner Records Inc. v. Charter Commc'ns*, 2022 WL 1567142 (D. Colo. May 18, 2022)...................................................................... 6

*Wisk Aero LLC v. Archer Aviation Inc.*, No. 3:21-CV-02450-WHO, 2023 WL 2277112 (N.D. Cal. Feb. 28, 2023) ................. 6, 7, 8, 11

*Zunum Aero, Inc. v. Boeing Co.*, No. C21-0896JLR, 2024 WL 664540 (W.D. Wash. Feb. 7, 2024) ................................... 4, 5, 7

Rules

Civil L.R. 37-4(b)....................................................................................................... 14

Fed. R. Civ. P. 37(e)............................................................................................... 3, 4, 7

Fed. R. Civ. P. 26(e)................................................................................................... 10

## MEMORANDUM

Plaintiff has not "destroyed evidence that goes to the core of her case," nor has she "spent months concealing and misdescribing what she had done." ECF No. 95, at 2. Plaintiff did not intend to deprive Hilton of any evidence (regardless of its speculative value) and the malice Hilton attributes to her actions is absurd.

## I. BACKGROUND

The issue before the Court is whether KRD's pre-lawsuit deletion of an Instagram account not in use during her trafficking period meets the extremely high bar for case terminating sanctions. It clearly does not. Hilton dedicates ten pages of its Motion, a five-page declaration of counsel, and a four-page single spaced chronology to detailing a multitude of so-called facts, most of which are red herrings not at all relevant to the pending Motion. Hilton's Motion and attached Exhibits contain multiple inaccuracies and conveniently omit certain facts not favorable to Hilton. Plaintiff will not take the bait so to speak and attempt in this response to rebut or explain each and every fact Hilton presents. Time is better spent focusing on the relevant facts most pertinent to the pending Motion.

KRD was trafficked at various hotels from 2014 until approximately May 2016. Hilton Ex. V at 2–3. Plaintiff's trafficker was arrested in May 2016 and that is when her trafficking ended. *Id.* Ex. 2, Deposition of KRD at 208:23–25. She was trafficked at the Hilton DoubleTree at issue in this lawsuit from approximately summer 2014 to summer 2015. Hilton Ex. V at 2–3.

KRD has only ever had two Instagram accounts. Hilton Ex. F, 273:22-23. The first was created in 2016 after her trafficking ended. Hilton Ex. F, 323:19–20. The handle for this account began as sexy[plaintiff's identity][1] and later changed to [plaintiff's identity]wifey. Hilton Ex. F, 272–273; Ex. 2, 275. This is the account at issue in the Motion. KRD does not remember exactly when she deleted this account but knows it was deleted before her marriage to D.G.[2] in April 2024 because D.G. forced her to delete it after they had a huge fight about it. Hilton Ex. F, 267:20–25; 269:25–270:2; 271:19–272:1. This account was deleted before the filing of this lawsuit on October

---

[1] Because Hilton's Motion and Exhibits contain this information, Plaintiff redacts it here instead of moving to file this response under seal.

[2] The full names of Plaintiff's ex-husband and trafficker fall under the definition of Plaintiff's Identity pursuant to Protective Order section 2.4(vii) and thus only their initials are used in this response.

4, 2024 and long before Hilton's September 9, 2025 discovery request for social media data. KRD did not post anything on that account related to her trafficking or talk about her trafficking experience. Ex. 2, 314:11–22. She did not solicit sex work on that account. *Id.* She did not communicate with her trafficker on that account. *Id.* She did not give any information on it about her mental health. Hilton Ex. F, 324:12–14. Her deletion of the account had nothing to do with the lawsuit she was bringing against hotels. Hilton Ex. F, 271:19–272:1.

KRD's second Instagram account was created in October 2024 after her divorce from D.G. Hilton Ex. F, 266:1–8. The handle for this account is [plaintiff's identity]0829. *Id.* KRD has only ever created one Facebook account which was created in approximately 2010 and is still active today. Ex. 2, 247:16–23. KRD also has a Snapchat account created in approximately 2016. Ex. 2, 260:24–261:6.

The Court previously ordered KRD to produce certain social media data. As Plaintiff's counsel previously mentioned in a declaration to support amending the scheduling order, Plaintiff's counsel hired a third-party vendor to conduct the downloads. ECF No. 89-2. Counsel provided specific instructions, this Court's order, and relevant communication from Hilton to its third-party vendor to facilitate proper production of KRD's social media data. Ex. 1, Declaration of Bryan Blevins at ¶ 3. However, due to a quality control failure of the vendor, counsel's reliance upon its vendor, and internal miscommunications, Plaintiff did not produce everything she was required to by the Court's deadlines. *Id.* at ¶ 4. But Hilton fails to acknowledge that these issues were fixed as soon as they were discovered and most importantly here, that the issues with the social media production were in no way KRD's fault. *Id.* at ¶ 5.

To date, Plaintiff has produced the following social media data in this case:

- On April 9, 2026, 662[3] bates stamped pages from her Facebook account.
- On April 13, 2026, 904 bates stamped pages from her Facebook account.
- On May 28, 2026, 2891 bates stamped pages from her Facebook account.
- On June 18, 2026, shortly after being made aware of the issues with the prior

[3] Hilton's declaration of Ali Anderson cites different numbers of produced content. It appears Hilton cites to the number of documents produced instead of total pages produced. Hilton's choice to only mention documents vastly under reports what has been produced.

productions, 20,321 bates stamped pages from her Facebook account.

- On June 25, 2026, 4645 bates stamped pages of her current Instagram account which was created in October 2024.
- On June 30, 2026, 3294 bates stamped pages from her current Snapchat account which was created in approximately 2016.

*See* Ex. 1, Declaration of Bryan Blevins at ¶ 7. In total, this amounts to 32,717 pages of social media data.

KRD has also produced a number of other documents including:

- On October 20, 2025, 545 bates stamped documents which include among other things, hotel booking and flight confirmations; evidence of Backpage ads; KRD's trafficker's May 2016 arrest report and additional criminal records of her trafficker; and a beat report of the San Jose DoubleTree.
- On January 30, 2026, 1458 emails from the email account KRD used during her trafficking period. These include among other things, additional hotel booking and travel confirmations; online ads her trafficker posted of her on sites such as Backpage, Craigslist, Nightshift, and Cityvibe; and communications between her and her trafficker G.W.

*See* Ex. 1, Declaration of Bryan Blevins at ¶ 8. Of the 34,729 bates stamped pages KRD produced, Hilton used only 21 exhibits at KRD's August 25, 2026 deposition. Ex. 2, at 4–6.

On April 28, 2026, Plaintiff's counsel advised Hilton that we were working with Plaintiff on the issue of whether KRD has any content from her Instagram account apart from content posted to her Facebook account and on April 29 that we would provide an update on May 1. Hilton Ex. C; Ex. 3. Counsel did provide the May 1 update and explained "K.R.D. no longer has any Instagram content, prior to April of 2024, apart from content that may have also been posted to her Facebook account." Hilton Ex. C.

## II. <u>ARGUMENT</u>

Federal Rule of Civil Procedure 37(e) permits a court to impose sanctions "[i]f electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery." Fed. R. Civ. P. 37(e). Rule 37(e) provides two levels of sanctions. "If these requirements are satisfied, and if another party is prejudiced by the loss, under Rule 37(e)(1) the court 'may order measures no greater than necessary to cure the

prejudice.'" *Matthew Enter., Inc. v. Chrysler Grp. LLC*, 2016 WL 2957133, at *3 (N.D. Cal. May 23, 2016) (quoting Fed. R. Civ. P. 37(e)(1)). "The court should take care, however, 'to ensure that curative measures under subdivision (e)(1) do not have the effect of measures that are permitted under subdivision (e)(2)[.]'" *Id.* (quoting Fed. R. Civ. P. 37(e)(1) advisory committee's note to 2015 amendment).

Rule 37(e)(2), in turn, is triggered "only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation." Fed. R. Civ. P. 37(e)(2). The 2015 Advisory Committee Notes to the amendment of Rule 37(e) advise that "[n]egligent or even grossly negligent behavior" is insufficient to show "intent." *Flexport, Inc. v. Freightmate AI, Inc.*, No. 25-CV-02500-RFL (PHK), 2026 WL 2771671, at *3 (N.D. Cal. Sept. 17, 2026) (quoting Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment). Upon a finding of intent, a court "may", but need not: "(A) presume that the lost information was unfavorable to the party; (B) instruct the jury that it may or must presume the information was unfavorable to the party; or (C) dismiss the action or enter a default judgment." Fed. R. Civ. P. 37(e)(2).

**A. Hilton is not entitled to Rule 37(e)(1) sanctions**[4]

Sanctions under Rule 37(e)(1) are only permissible "upon finding prejudice to another party from loss of the information." Fed. R. Civ. P. 37(e)(1). "Prejudice exists where 'the [spoiling party's] actions impaired [the moving party's] ability to go to trial or threatened to interfere with the rightful decision of the case.'" *AliveCor, Inc. v. Apple, Inc.*, No. 21-CV-03958-JSW, 2023 WL 4335293, at *4 (N.D. Cal. June 2, 2023) (internal citations omitted). "The Court's evaluation of whether the loss of information was prejudicial depends in part on the importance of the information to the case." *Hernandez v. Tulare Cty. Corr. Ctr.*, No. 116CV00413EPGPC, 2018 WL 784287, at *4 (E.D. Cal. Feb. 8, 2018) (quoting Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment). No prejudice occurs "if the lost documents were 'irrelevant' or 'obtain[able] ... from other sources.'" *Zunum Aero, Inc. v. Boeing Co.*, No. C21-0896JLR, 2024 WL 664540, at *8 (W.D. Wash. Feb. 7, 2024) (quoting *Ryan v. Editions Ltd. West, Inc.*, 786 F.3d 754, 766 (9th Cir.

[4] The Motion does not separately argue for Rule 37(e)(1) sanctions or explain with any specificity why Hilton is prejudiced by Plaintiff's conduct. But out of an abundance of caution, Plaintiff will address both provisions of Rule 37.

2015) (finding it was not error to deny motion for spoliation sanctions where documents "were irrelevant")); *see also Burton v. Walgreen Co.*, No. 2:14-CV-84 JCM (VCF), 2015 WL 4228854, at *4 (D. Nev. July 10, 2015) (finding no prejudice where alternative evidence "provide[d] plaintiff with the necessary information to prosecute his case" and there was "no other information plaintiff might [have] glean[ed] from having the [missing evidence]").

Hilton makes no argument explaining how Plaintiff's actions have impaired its ability to go to trial or threatened to interfere with the rightful decisions of the case. *Zunum Aero, Inc.*, 2024 WL 664540, at *8. Nor can it. First, the information that may exist on the prior Instagram account is not relevant. One critical fact Hilton chooses to ignore is that the deleted Instagram account was not created until **after** KRD's trafficking ended. Hilton Ex. F, 323:19–20 ("I didn't have that account during my trafficking period"). Importantly, the Motion is the first time Hilton has disputed that the account was created in 2016. In its subpoena to Meta, it indicated the account was active from 2016 to 2024. Hilton Ex. T. Moreover, extrinsic evidence also establishes that the account was created in 2016. As Hilton points out, the posts from KRD's Instagram that were cross-posted to Facebook did not start until 2016. Hilton Ex. M at p.8. Because the account was not created until after her trafficking ended in 2016, her prior Instagram account cannot, as Hilton asserts, contain contemporaneous evidence of her allegations.

Additionally, KRD did not post anything on that account related to her trafficking or talk about her trafficking experience. Ex. 2, 314:11–22.[5] She did not solicit sex work on that account. *Id.* She did not communicate with her trafficker on that account. *Id.* She did not give any information on it about her mental health. Hilton Ex. F, 324:12–14. Accordingly, the information on that account is not relevant or important to the case. "That the allegedly spoliated information is not relevant to [Hilton's] claims also forecloses a finding of prejudice, because its loss has not 'impaired [Hilton's] ability to go to trial or threatened to interfere with the rightful decision of the case.'" *McGhee v. N. Am. Bancard, LLC*, No. 17-CV-00586-AJB-KSC, 2021 WL 2577159, at *5 (S.D. Cal. June 23, 2021) (quoting *Leon v. IDX Systems Corp.*, 464 F.3d 951, 959 (9th Cir. 2006); *Reinsdorf v. Skechers U.S.A., Inc.*, 296 F.R.D. 604, 627 (C.D. Cal. 2013) (noting that the party

[5] Hilton conveniently omits this page of the deposition from its Exhibit F.

seeking spoliation sanctions "must ... show that the evidence would have been helpful in proving its claims or defenses"). "Put simply, the loss of irrelevant evidence is not prejudicial." *Id.* Because the lost Instagram account is not relevant, Hilton is not prejudiced. *See McGhee*, 2021 WL 2577159, at *5–*6; *Wisk Aero LLC v. Archer Aviation Inc.*, No. 3:21-CV-02450-WHO, 2023 WL 2277112, at *10 (N.D. Cal. Feb. 28, 2023) (no prejudice established where movant did not show that the deleted file "was important or relevant to its claims in this case").

Second, "[t]he availability of other sources or types of evidence, in addition to the despoiled evidence, may be considered by a court in determining if a sanction is warranted." *Wallace v. Martinez*, 2022 WL 2872998, at *7 (E.D. Cal. July 21, 2022) (citing *Med. Lab. Manag. v. Am. Broadcasting*, 306 F.3d 806, 824–25 (9th Cir. 2002)). Here, "the evidence that was purportedly lost appears to be largely duplicative of evidence already in the record." *Sanchez v. Jiles*, No. CV10-09384MMMOPX, 2012 WL 13005996, at *14 (C.D. Cal. June 14, 2012). Pursuant to the court's prior orders, Plaintiff has produced a total of 32,717 bates stamped pages of social media data. Ex. 1, Dec. of Bryan Blevins, at ¶ 7. This includes 14,072 pages from May 2016–April 2024, the time period the prior Instagram account may have been in existence. *Id.*

There is also no dispute that a portion of the Instagram account was not lost. *AliveCor, Inc.*, 2023 WL 4335293, at *5. As Hilton admits, KRD often cross-posted content from her Instagram account to her Facebook account and Hilton is already in possession of any cross-posted data. Hilton cannot show that the social media data that was produced "do[es] not paint a full picture." *Warner Records Inc. v. Charter Commc'ns*, 2022 WL 1567142, at *2 (D. Colo. May 18, 2022) (denying sanctions motion in part for this reason); *see also Gallagher v. Magner*, 619 F.3d 823, 844 (8th Cir. 2010) ("There is no basis for inferring that the missing emails would be of a different character than the emails already recovered and produced. Therefore, we agree that Appellants have not demonstrated the requisite prejudice.")." "The fact that other evidence exists that duplicates or serves the same function as the evidence that was purportedly lost" weighs against a finding of spoliation. *Jiles*, 2012 WL 13005996 at *14; *AliveCor, Inc.*, 2023 WL 4335293, at *5 ("Even assuming that the deleted emails were relevant to these topics, the deletion of the emails is minimized by the documents already produced in this litigation"); *Matthew Enter., Inc.*, 2016 WL

2957133, at *4 ("the customer data that [non-movant] did produce adequately substitute for what it could not"); *Hernandez*, 2018 WL 784287 at *6 (fact that non-movant had produced relevant documents (among other things) "ameliorate[d] the prejudice suffered by [movant] as a result of the loss of the information at issue").

In sum, Hilton's conclusory allegations that the loss of the account caused prejudice are not enough. See *Zunum Aero, Inc.*, 2024 WL 664540, at *8. Because Hilton has not shown that the prior Instagram account was important or relevant to claims in the case and because other evidence exists that serves the same function, its ability to go to trial has not been impaired and there has been no interference with the rightful decisions of this case. *See id.* Accordingly, there has been no prejudice to Hilton. *See AliveCor, Inc.*, 2023 WL 4335293, at *5. And "spoliation of ESI that does not prejudice the opposing party is not sanctionable." *McGhee*, 2021 WL 2577159, at *5 (citing Fed. R. Civ. P. 37(e)(1) and *Reinsdorf*, 296 F.R.D. at 627 (noting that requiring a showing of both relevance and prejudice "'is an important check on spoliation allegations and sanctions motions'") (citation omitted)); *Wisk Aero LLC*, 2023 WL 2277112, at *7 (refusing to impose sanctions in a trade secret case after the plaintiff could "not show it was prejudiced by any loss of information").

**B. Hilton is not entitled to Rule 37(e)(2) sanctions**

Hilton is not entitled to sanctions under Rule 37(e)(2) because KRD did not intend to deprive Hilton of evidence.

The harsh sanctions permissible (though not required) under Rule 37(e)(2) may "only" be imposed "upon finding that [the nonmovant] acted with the intent to deprive [the movant] of the information's use in the litigation." Fed. R. Civ. P. 37(e)(2). Intent to deprive, not merely intent to destroy, is a very high bar. *See Laub v. Horbaczewski*, 2020 WL 9066078, at *6 (C.D. Cal. July 22, 2020). For purposes of Rule 37(e)(2), intent "means the evidence shows, or it is reasonable to infer, that a party purposefully destroyed evidence to avoid its litigation obligations." *Phan v. Costco Wholesale Corp.*, No. 19-CV-05713-YGR, 2020 WL 5074349, at *2 (N.D. Cal. Aug. 24, 2020). While "there need not be a 'smoking gun' to prove intent… there must be evidence of 'a serious and specific sort of culpability' regarding the loss of the relevant ESI." *Muhammad v. Jenkins*, No. CV 19-7970 JAK, 2022 WL 4292341, at *6 (C.D. Cal. Aug. 26, 2022), report and recommendation

adopted, 2022 WL 4292308 (C.D. Cal. Sept. 15, 2022) (internal citation omitted). The moving party has the burden to establish intent to obtain the more severe sanctions available under Rule 37(e)(2). *Chinitz v. Intero Real Est. Servs.*, No. 18-cv-05623-BLF, 2020 WL 7389417, at *2 (N.D. Cal. May 13, 2020) (internal citation omitted). Neither negligence, nor even gross negligence, is sufficient to satisfy Rule 37(e)(2)'s intent requirement. Fed. R. Civ. P. 37 advisory committee note to 2015 amendment; *see also Flexport, Inc.,* 2026 WL 2771671, at *7. Relevant considerations in the intent-to-deprive analysis include: (1) the context of the deletion, (2) the "timing of the evidence's loss," which is "[t]he most decisive factor" in the assessment; and (3) "whether there was 'selective preservation' of any data." *Wisk Aero LLC*, 2023 WL 2277112, at *4 (quoting *hiQ Labs, Inc. v. LinkedIn Corp*., 639 F. Supp. 3d 944, 977–78 (N.D. Cal. 2022)).

As to the context of the deletion, KRD does not remember exactly when she deleted her prior Instagram account but knows it was deleted before her marriage to D.G. because D.G. forced her to delete it after they had a huge fight about it. Hilton Ex. F, 269:25–270:2; 271:19–272:1. There was some confusion in her deposition about when her marriage to D.G. occurred but it has been confirmed consistent with her interrogatory responses that it was April 2024. Ex. 1, Declaration of Bryan Blevins at ¶ 10. D.G.'s issue with the Instagram account was that it showed pictures of KRD and her ex-husband kissing. Hilton Ex. F, 255:16–20 ("it's inappropriate to get remarried and have those on there as your profile picture or anything like that. That's what D[] G[]'s issue was with the Instagram account"). Her deletion of the account had nothing to do with the lawsuit she was bringing against hotels. Hilton Ex. F, 271:19–272:1. Hilton's Motion does not even mention let alone try to rebut KRD's explanation for why she deleted the account. Hilton provides no explanation for why the Court should disregard KRD's stated intent and instead replace it with Hilton's allegation of nefarious intent to deprive. But "calling [a witness's] credibility into question, with no evidentiary basis, is not a sufficient justification for finding spoliation." *Painter v. Atwood*, No. 2:12-CV-01215-JCM, 2014 WL 1089694, at *5 (D. Nev. Mar. 18, 2014).

"'The most decisive factor [in the 'intent' analysis] is the timing' of the offending conduct." *hiQ Labs, Inc.*, 639 F. Supp. 3d at 978 (quoting *Fed. Trade Comm. v. Noland*, No. CV-20-00047-PHX-DWL, 2021 WL 3857413, at *12 (D. Ariz. Aug. 30, 2021)). Here, the timing of the evidence's

loss indicates a lack of such intent. This is not a situation where KRD destroyed evidence on the eve of trial or after a discovery request. Where, as here, a party deletes information for a legitimate, non-litigation purpose, there is no specific intent to deprive. *See hiQ Labs*, 639 F. Supp. 3d at 977. The timing of the deletion, before April 2024, is not tied to any parallel event indicating a desire to avoid producing the data, such as notification of an investigation. *See Morehead v. City of Oxnard*, No. 2:21-CV-07689-SPG-ADSX, 2023 WL 8143973, at *12 (C.D. Cal. Oct. 4, 2023). KRD deleted the account years after she first retained counsel. Like in *hiQ*, "[t]here was no rush to delete relevant evidence." 639 F. Supp. 3d at 978. And unlike the case Hilton relies on, *Torgersen v. Siemens Bldg. Techs.*, 2021 WL 2072151, at *4 (N.D. Ill. May 24, 2021), Plaintiff deleted the account before the lawsuit was filed and well before Hilton requested it; Plaintiff did not file this lawsuit until October 4, 2024 and Hilton did not send its Requests for Production implicating the account until September 9, 2025. Hilton Ex. H. All told, there is "nothing suspicious about the timing of the spoliation at issue." *Laub*, 2020 WL 9066078 at *6.

Next, there was no selective preservation of the evidence from the prior Instagram account. KRD did not keep the parts of her Instagram that would help her case and delete the parts that could harm it. Rather, she deleted the entire account. This also weighs against a finding of intent to deprive. *See hiQ Labs*, 639 F. Supp. 3d at 978; *compare with Fast v. GoDaddy.com LLC*, 340 F.R.D. 326, 343 (D. Ariz. 2022) (finding intent to deprive in part because non-movant deleted some Facebook messages and posts but not others). Moreover, "had Plaintiff[] intended to deprive [Hilton] of evidence, [she] would not have preserved other evidence," namely her Facebook account that unlike the Instagram account was actively in use during her trafficking period. *Flexport, Inc.,* 2026 WL 2771671, at *7.

Addressing some of Hilton's alleged "misrepresentations" specifically, as an initial matter, much of the "evidence" Hilton puts forth is emails between counsel which have minimal relevance to showing KRD's intent. Substantively,

- In the email it attached as Exhibit S p. 1–2, Hilton asked for a date range Plaintiff was **certain** her account was active. While Plaintiff thinks the account was created in 2016, she was not certain about it but was somewhat more confident it was active starting in 2017.
- During her deposition, KRD got mixed up on when her marriage to D.G. occurred. When first asked, she stated April 2024 which is consistent with her prior responses. Ex. 2, 40:2–

3. While later in the deposition she did say 2023, there is a simple explanation—she got confused.

- KRD explained in her deposition why she previously stated the Instagram account was just used to watch reels: to her, "reels are posts and/or videos." Hilton Ex. F, at 270:9.
- KRD explained in her deposition why she didn't originally list her Snapchat account in her interrogatory responses: she didn't think of it as social media. Ex. 2, 260:14–23. Neither Hilton's interrogatories or requests for production define social media. Hilton Ex. H, J. Hilton did not provide "download guidance" for Snapchat like it did with Instagram, Facebook, TikTok, etc. Hilton Ex. I.
- Hilton claims that KRD did not verify her Fifth Amended interrogatory responses until two and a half months after they were served in May 2026. This is false. While the verification of those responses was not provided to Hilton until August 11, 2026, the documents attached to that email clearly state that the document was docusigned on May 29, 2026. Ex. 4. This was as oversight by Plaintiff's counsel and KRD should not be faulted for it.

Additionally, Hilton raises several issues with the timing of KRD's production and KRD's compliance with court deadlines but none of these should be attributed to KRD. As Plaintiff's counsel previously mentioned in a declaration to support amending the scheduling order, Plaintiff's counsel hired a third-party vendor to conduct the downloads. ECF No. 89-2. Counsel admits that due to a quality control failure of the vendor, counsel's reliance upon its vendor, and internal miscommunications, Plaintiff did not produce everything she was required to by the Court's deadlines. Ex. 1, Declaration of Bryan Blevins at ¶ 4–6. But a critical fact Hilton fails to explicitly mention is that these issues were fixed as soon as they were discovered. KRD has produced all of her social media within the court-ordered time periods, including her current Instagram account and her Snapchat account. KRD has now fully complied with the Court's prior orders and Hilton does not argue otherwise.

The acts of "lies and deception" Hilton accuses KRD of have a simple explanation: KRD is human and she's experienced significant trauma in her life. Hilton has asked very detailed questions about acts that occurred 10+ years ago. KRD does not have a perfect memory and sometimes she got things wrong. Hilton Ex. F, at 36:23 ("My memory isn't that great.") But she's done her best to answer Hilton's questions as accurately as possible with the information she does remember. That's all she can do. And a party is not required to get everything right the first time they submit interrogatory response. Federal Rule of Civil Procedure 26(e) requires a party to supplement its discovery responses if "the party learns that in some material respect the…response is incomplete

or incorrect." If a party was permanently bound by their first interrogatory responses, no amendment would be permitted. Consistent with this obligation to correct, KRD did amend her responses once discovered her prior responses were incorrect.

In sum, KRD's loss of evidence was not driven by an intent to deprive Hilton of evidence. At worst, she was careless or negligent in its deletion. "Negligence—even gross negligence—in failing to retain relevant evidence is not sufficient to support an adverse inference under Rule 37(e)(2)." *Meta Platforms, Inc. v. BrandTotal Ltd.*, 605 F.Supp.3d 1218, 1238 (N.D. Cal. June 6, 2022). Thus, there is insufficient evidence to find KRD acted with the requisite intent to warrant harsh Rule 37(e)(2) sanctions. *hiQ Labs*, 639 F. Supp. 3d at 978 ("insufficient evidence to find hiQ acted with the requisite intent to warrant harsh Rule 37(e)(2) sanctions"); *Wisk Aero LLC*, 2023 WL 2277112, at *8–9 (no intent to deprive where person deleted emails because of fear for the wellbeing of his family and deletion was done long after litigation began); *Laub*, 2020 WL 9066078 at *6 (no intent to deprive).

**C. The specific sanctions Hilton requests are not warranted.**

Because KRD did not act with "intent to deprive" Hilton of evidence and Hilton did not suffer any prejudice, Hilton is not entitled to any sanctions. Yet, Hilton asserts that the death penalty terminating sanctions available under Rule 37(e)(2) are appropriate and thus asks this Court for dismissal of KRD's claims, monetary sanctions, or at a minimum an adverse inference instruction. But even if the Court somehow finds that KRD acted with intent or that Hilton is prejudiced, that finding does not require the court to adopt any of the measures listed in Rule 37(e); "the Court retains discretion to determine what sanctions, if any, are warranted." *Fast*, 340 F.R.D. at 353. Any remedy selected by the court "should fit the wrong," and, therefore, "the severe measures authorized by [Rule 37(e)(2)] should not be used when the information lost was relatively unimportant or lesser measures would be sufficient to redress the loss." *Hernandez*, 2018 WL 784287 at *4 (quoting Fed. R. Civ. P. 37 advisory committee note to 2015 amendment). Instead, if spoliation is found, courts often consider three factors to determine whether and what type of sanctions to issue: "(1) the degree of fault of the party who altered or destroyed the evidence; (2) the degree of prejudice suffered by the opposing party; and (3) whether there is a lesser sanction

that will avoid substantial unfairness to the opposing party." *Microvention, Inc. v. Balt USA, LLC*, No. 820CV02400JLSKES, 2023 WL 7476998, at *28 (C.D. Cal. Oct. 5, 2023), report and recommendation adopted, 2023 WL 7634109 (C.D. Cal. Nov. 13, 2023) (quoting *Storz Mgmt. Co. v. Carey*, No. 18-cv-0068, 2019 WL 2615755 at *4 (E.D. Cal. June 26, 2019)). Here, KRD's degree of fault is low, the prejudice to Hilton, if any, is minimal, and Hilton's proposed sanctions, if granted, would amount to a windfall.

**1. Death penalty terminating sanctions are clearly not appropriate**

Hilton asks the Court to dismiss the entire case. Courts generally consider the following factors in deciding whether to issue this type of terminating sanction: "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the other party; (4) the public policy favoring the disposition of cases on their merits; and (5) the availability of less drastic sanctions." *Microvention, Inc.*, 2023 WL 7476998 at *28 (quoting *Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills*, 482 F.3d 1091, 1096 (9th Cir. 2007)). "This 'test' is not mechanical. It provides the district court with a way to think about what to do, not a set of conditions precedent for sanctions or a script that the district court must follow...." *Id.* (quoting *Conn. Gen.*, 482 F.3d at 1096). "In deciding whether to impose case-dispositive sanctions, the most critical factor is not merely delay or docket management concerns, but truth," i.e., "whether the discovery violations 'threaten to interfere with the rightful decision of the case.'" *Id.* (quoting *Conn. Gen.*, 482 F.3d at 1097. "Terminating sanctions may be warranted where a party is no longer able to present its case, spoliation occurs in direct violation of a court order, where a party has obviously engaged in deceptive practices during litigation, or where a court anticipates continued deceptive misconduct." *Colonies Partners, L.P. v. Cnty. of San Bernardino*, No. 5:18-CV-00420-JGBSHK, 2020 WL 1496444, at *11 (C.D. Cal. Feb. 27, 2020), report and recommendation adopted, 2020 WL 1491339 (C.D. Cal. Mar. 27, 2020) (citing *Anheuser-Busch, Inc. v. Natural Beverage Distrib.*, 69 F.3d 337, 352-55 (9th Cir. 1995)).

The issue with the deleted Instagram account has not delayed resolution of the case or impacted the court's ability to manage its docket. Both parties have requested amendments of the scheduling order for various reasons. The most recent schedule extension was necessary solely

because despite several months' notice and multiple requests for deposition dates, Hilton's witness was not available for deposition before the previous deadline. ECF No. 92. As discussed above, the prejudice to Hilton, if any, is minimal. And the public has a strong interest in cases being decided on the merits, especially in a case like this one that involve serious allegations of sex trafficking. The record in this case does not support that Hilton is so harmed by the spoliation as to be unable to present its case. In fact just the opposite—armed with over 32,000 thousand pages of social media evidence, Hilton chose a mere 21 documents for use during Plaintiff's deposition. Ex. 2, at 4–6. Spoliation did not occur in direct violation of a court order. *Colonies Partners, L.P.,* 2020 WL 1496444 at *12. KRD has not obviously engaged in deceptive practices during litigation. And there is no reason to anticipate continued deceptive misconduct; as all of KRD's other social media accounts have already been produced, it is hard to see how further deceptive misconduct would be possible. Furthermore, the lack of evidence on the issue of intent meaningfully distinguishes the facts here from cases where courts issued terminating sanctions based on failure to preserve. *Dish Network L.L.C. v. Jadoo TV, Inc.*, No. 20-CV-01891-CRB (LB), 2022 WL 11270394, at *4 (N.D. Cal. Oct. 19, 2022).

Terminating sanctions are not warranted in this case. Terminating sanctions should be reserved for the most egregious cases of misconduct which is clearly not present here. See *Colonies Partners, L.P.,* 2020 WL 1496444 at *12; *Microvention, Inc.*, 2023 WL 7476998 at *29; *Resolute Forest Prods., Inc. v. Greenpeace Int'l*, No. 17CV02824JSTKAW, 2022 WL 16637990, at *10 (N.D. Cal. Nov. 2, 2022), report and recommendation adopted, 2023 WL 4311255 (N.D. Cal. Apr. 10, 2023).

**2. Other sanctions are also not warranted**

In just two paragraphs Hilton half-heartedly at the end of its Motion asks for an adverse inference instruction that is predicated on a finding of intent; it offers no alternative if the court does not find intent or prejudice. Because there was no intent or prejudice to Hilton, for that reason alone, the court should decline to order an adverse inference instruction. But even if the court finds that the requirements of Rule 37(e)(1) or (2) have been met, this instruction is still inappropriate. The range of sanctions measures is broad and the court has significant discretion to determine what

measure is appropriate. *Laub*, 2020 WL 9066078 at *8 (citing Fed. R. Civ. P. 37 advisory committee note to 2015 amendment). "In effect, Rule 37 requires the Court to quantify the prejudice caused by the spoliation in order to determine the sanctions that would be appropriate." *Id.* Like in *Laub*, the imposition of the serious sanctions sought by Defendants is not warranted because any prejudice to Hilton was rather minimal. Hilton has received an array of other social media data from the same time period which provides Hilton with information to help their defense. "It is not at all clear [] that the missing evidence would significantly alter the type of evidence at [Hilton's] disposal or its persuasiveness." *Id.* Thus, an adverse inference instruction is not proper. *See, e.g., Chinitz*, 2020 WL 7389417, at *3 (N.D. Cal. May 13, 2020).

Furthermore, as a practical matter, the specific adverse inference instruction Hilton requests also doesn't make any sense. As explained above, the prior Instagram account was not created until **after** KRD's trafficking ended. The evidence the account may have contained can therefore provide no insight whatsoever on whether she was trafficked at the DoubleTree or if Hilton knew or should have known.

An award of attorneys' fees would also be inappropriate. Instead of requesting a specific amount, Hilton offers to "provide an accounting of its costs and fees for review at the Court's request." ECF No. 95, at 26. Local Rule 37-4, however, mandates that, when a party moving for Rule 37 sanctions also moves for an award of attorney fees, "the motion must ... [b]e accompanied by competent declarations which ... [d]escribe in detail the efforts made by the moving party to secure compliance without intervention by the Court; and ... [i]f attorney fees or other costs or expenses are requested, itemize with particularity the otherwise unnecessary expenses, including attorney fees, directly caused by the alleged violation or breach, and set forth an appropriate justification for any attorney-fee hourly rate claimed." *See* Civil L.R. 37-4(b)(2)-(3). Hilton has plainly not complied with Civil Local Rule 37-4. No specific amount of fees or costs are requested in its Motion, and no declarations were submitted with the Motion to substantiate the amounts of fees and costs sought. "[P]recedent from this Court supports the conclusion that failure to submit the required materials under Civil Local Rule 37-4 is sufficient basis to deny a request for attorneys fees and costs in connection with a spoliation motion under Rule 37(e)." *Flexport, Inc.,* 2026 WL

2771671, at *9 (citing *Phan*, 2020 WL 5074349, at *4). And as a practical matter, KRD is being represented on a contingency fee basis. She is a single mother of three children and it would be unjust to require her to pay the exorbitant hourly rate Hilton is paying its attorneys.

## III. CONCLUSION

Instead of facing the core issue of the case, that Hilton knew or should have known of the sex trafficking occurring at its hotel, Hilton has instead chosen to harass and vilify plaintiff. It tries to get the case dismissed on a technicality and has presented no evidence that sanctions are warranted. The Court should accordingly deny the Motion for Spoliation Sanctions.

Dated: November 10, 2026

Respectfully submitted,

*/s/ Bryan Blevins*

Bryan O. Blevins, Jr., pro hac vice
Claire Brown, pro hac vice
Provost Umphrey Law Firm
350 Pine Street, Ste. 1100
Beaumont, TX 77701
(409) 835-6000 Telephone
bblevins@pulf.com
cbrown@pulf.com

Amanda J.G. Walbrun,
State Bar No. 317408
walbrun@boucher.la
BOUCHER LLP
21600 Oxnard Street, Suite 600
Woodland Hills, California 91367
Telephone: (818) 340-5400
Facsimile: (818) 340-5401

**CERTIFICATE OF SERVICE**

I hereby certify that on November 10, 2026, a copy of the foregoing was filed using the CM/ECF system, which will effectuate service on all counsel of record.

*/s/ Bryan Blevins*
Bryan O. Blevins, Jr., pro hac vice