Nicole M. Perry, Esq., *Pro Hac Vice*
JONES DAY
717 Texas Street, Suite 3300
Houston, TX 77002
Telephone: (832) 239-3939
Facsimile: (832) 239-3600
Email: nmperry@jonesday.com

Bethany K. Biesenthal, Esq., *Pro Hac Vice*
Allison L. McQueen, Esq., *Pro Hac Vice*
JONES DAY
110 North Wacker Drive, Suite 4800
Chicago, IL 60606
Telephone: (312) 782-3939
Facsimile: (312) 782-8585
Email: bbiesenthal@jonesday.com
amcqueen@jonesday.com

Andrew J. Clopton, Esq., *Pro Hac Vice*
JONES DAY
150 W. Jefferson, Suite 2100
Detroit, MI 48226
Telephone: (313) 733-3939
Facsimile: (313) 230-7997
Email: aclopton@jonesday.com

Emily F. Knox (State Bar No. 307035)
JONES DAY
555 California Street, 26th Floor
San Francisco, CA 94104
Telephone: (415) 626-3939
Facsimile: (415) 875-5700
Email: egoldbergknox@jonesday.com

Attorneys for Defendant
*Hilton Domestic Operating Company Inc.*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

| | |
|---|---|
| JANE DOE (K.R.D.),<br><br>Plaintiff,<br><br>v.<br><br>HILTON DOMESTIC OPERATING COMPANY INC., et al.,<br><br>Defendants. | Case No. 5:24-cv-06993-PCP-VKD<br><br>**REPLY IN SUPPORT OF MOTION FOR SPOLIATION SANCTIONS**<br><br>Hearing Noticed For:<br>December 3, 2026<br>10:00 A.M. |

## TABLE OF CONTENTS


I. INTRODUCTION ........ 1

II. ARGUMENT ........ 1

A. The evidence demonstrates that Plaintiff intentionally deleted her Instagram account. ........ 2

B. Hilton was prejudiced by Plaintiff's deletion of her Instagram account. ........ 4

C. Sanctions are warranted. ........ 6

1. This Court should dismiss the case. ........ 6

2. At a minimum, alternative sanctions should be awarded. ........ 8

III. CONCLUSION ........ 9

## TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Clark v. Cnty. of Tulare*,
755 F. Supp. 2d 1075 (E.D. Cal. 2010)........................................ 2

*Colonies Partners, L.P. v. Cnty. of San Bernardino*,
2020 WL 1496444 (C.D. Cal. Feb. 27, 2020)........................................ 6

*Cruz v. Nike Retail Servs., Inc.*,
346 F.R.D. 107 (S.D. Cal. 2024)........................................ 9

*Doe (K.R.D.) v. Hilton Worldwide Holdings Inc.*,
798 F. Supp. 3d 1082 (N.D. Cal. 2025)........................................ 5

*Fast v. GoDaddy.com LLC*,
340 F.R.D. 326 (D. Ariz. 2022)........................................ 4, 8

*Guifu Li v. A Perfect Day Franchise*,
281 F.R.D. 373 (N.D. Cal. 2012)........................................ 8

*Hyde & Drath v. Baker*,
24 F.3d 1162 (9th Cir. 1994)........................................ 7

*Jones v. Riot Hosp. Grp. LLC*,
95 F.4th 730 (9th Cir. 2024)........................................ 1, 2

*Mulato v. Wells Fargo Bank, N.A.*,
76 F. Supp. 3d 929 (N.D. Cal. 2014)........................................ 2

*Painter v. Atwood*,
2014 WL 1089694 (D. Nev. Mar. 18, 2014)........................................ 4

*Torgersen v. Siemens Bldg. Tech., Inc.*,
2021 WL 2072151 (N.D. Ill. May 24, 2021)........................................ 4

*Valley Eng'rs Inc. v. Elec. Eng'g Co.*,
158 F.3d 1051 (9th Cir. 1998)........................................ 6

**Rules**

Fed. R. Civ. P. 37........................................ 9

## I. INTRODUCTION

Plaintiff's Response asks Hilton—and this Court—to take her word for it. Take her word that the deleted Instagram account was created in 2016, after her trafficking period ended. That it contained nothing relevant. That she deleted it because her soon-to-be husband was upset about old photographs, and not because she was weeks away from suing Hilton. And that every misstatement in discovery was an innocent lapse of memory or an oversight by her counsel. But Plaintiff's word is precisely what the record has discredited. Plaintiff swore in her first verified interrogatory response that she had used Instagram since 2013. Mot. Ex. A at 6. Yet she did not disclose that she had two accounts and that she had deleted one of them shortly before filing suit against Hilton. And she has otherwise offered shifting accounts of what she used the deleted account for and when it was active, and only after Hilton uncovered the discrepancies on its own. Mot. at 19–20.

These issues are not peripheral. Because Plaintiff destroyed the account, her own testimony is the only evidence of what the deleted Instagram account contained—and that testimony cannot be properly tested or trusted. That is exactly the harm that Rule 37(e) is designed to remedy. Accordingly, Hilton respectfully requests that the Court dismiss this case with prejudice or, at a minimum, give an adverse inference instruction and/or authorize an award of attorneys' fees with an amount to be determined after supplemental briefing.

## II. ARGUMENT

Plaintiff does not dispute that her duty to preserve arose when she retained counsel on January 17, 2019. Mot. at 3, 15. Nor that she breached her duty by deleting her Instagram account and that the data is lost forever. Mot. at 16–17. Instead, she focuses her response on whether she had the requisite intent and whether Hilton was prejudiced. She did and it was. Accordingly, sanctions under Rule 37(e)(1) (which requires a finding of prejudice but not intent) or (e)(2) (which requires a finding of intent but not prejudice) are appropriate. *Jones v. Riot Hosp. Grp. LLC*, 95 F.4th 730, 736 (9th Cir. 2024) (distinguishing requirements of Rule 37(e)(1) and (e)(2)).

**A. The evidence demonstrates that Plaintiff intentionally deleted her Instagram account.**

The timing of the destruction of the Instagram account just before Plaintiff filed suit against Hilton, the affirmative steps taken to delete any Instagram-related content, and the selective preservation in retaining other content are all circumstantial evidence that Plaintiff engaged in the "willful destruction of evidence with the purpose of avoiding its discovery by an adverse party," *Jones*, 95 F.4th at 735. Mot. at 17–20. Plaintiff's Response confirms, rather than dispels, that she acted with the requisite intent.

*First*, Plaintiff tries to argue that "[t]he timing of the deletion, before April 2024, is not tied to any parallel event indicating a desire to avoid producing the data, such as notification of an investigation." Resp. at 9. But the parallel event is obvious: Plaintiff had engaged counsel and was preparing to file her first TVPRA lawsuit against Hilton-affiliated defendants, which she filed on June 10, 2024—shortly after the deletion date her counsel identified. Mot. at 3, 7. A plaintiff who controls the timing of litigation does not, as Plaintiff suggests, need a "notification of an investigation" to trigger her duty to preserve materials. Resp. at 9. She knows that litigation is coming and must preserve her materials accordingly.

*Second*, Plaintiff attempts to fix her timeline by suggesting that her "April 2024" marriage was the reason for the deletion. But Plaintiff only offers inadmissible hearsay from her attorney to confirm that date. Specifically, the Blevins Declaration asserts that "[b]ased on communications with KRD, [he] can state that KRD's marriage to D.G. occurred April 20, 2024." Resp. Ex. 1, Blevins Decl. ¶ 10. Blevins does not claim personal knowledge of the marriage, and he otherwise does not attach public records confirming whether that date is in fact true. Accordingly, counsel's assertions need not be credited and, indeed, should be stricken. *See Mulato v. Wells Fargo Bank, N.A.*, 76 F. Supp. 3d 929, 946 (N.D. Cal. 2014) (striking attorney declaration as "argumentative, conclusory, and not based on personal knowledge"); *Clark v. Cnty. of Tulare*, 755 F. Supp. 2d 1075, 1083–84 (E.D. Cal. 2010) (attorney declaration recounting what witnesses were expected to say was "not made upon his personal knowledge" and was "classic hearsay" because "[a]n attorney is not competent to testify as to what another individual is expected to say under oath").

*Third*, Plaintiff offers a series of explanations for why she has made inconsistent statements related to her deleted Instagram account. Resp. at 9–10. Each one underscores why her word cannot substitute for the evidence she destroyed.

- *Active dates*. Plaintiff now says she "thinks the account was created in 2016" but was "somewhat more confident it was active starting in 2017." Resp. at 9. That is the fourth version of the deleted account's timeline—after 2013 (verified interrogatory response); 2016 (amended responses and deposition); and "2017 to 2022" as a "best guess" (counsel's email). Mot. at 19–20.
- *Marriage date*. Now, Plaintiff says she simply "got confused" at her deposition about when she married D.G. Resp. at 9–10. But Plaintiff changed the date after being confronted with the proximity to her first lawsuit. Mot. at 16 n.8, 19.
- *"Reels."* In Plaintiff's response to interrogatories, she swore that her Instagram account was "just used to watch reels." Mot. Ex. O at 10. However, she later admitted to posting about her "day-to-day life," including at least one boudoir photograph. Mot. at 20. Now, she tries to rehabilitate her credibility by pointing to deposition testimony that to her "reels are posts and/or videos." Resp. at 10. But watching reels (or viewing posts) is different from affirmatively posting content, which Plaintiff admitted to doing.
- *Snapchat*. Plaintiff's excuse for failing to disclose Snapchat because "she didn't think of it as social media" cannot be taken seriously. Resp. at 10. Snapchat is, by any ordinary understanding, social media. Plaintiff conceded as much at her deposition. Resp. Ex. 2 at 260:18–23 ("I guess it's kind of.").

None of these explanations demonstrates the good-faith efforts of a party seeking to correct the record. They are post-hoc rationalizations offered after every misstatement was exposed.

*Finally*, Plaintiff asserts that Hilton's motion "does not even mention let alone try to rebut KRD's explanation for why she deleted the account." Resp. at 8–9. That is false. Hilton expressly acknowledged Plaintiff's claim that she deleted the account "purportedly so that her new husband would not see its content" and explained why it does not withstand scrutiny: she chose permanent

deletion over deactivation or archiving, which would have preserved data, while keeping her other accounts active. Mot. at 10–11, 19. Hilton also explained that Plaintiff's account of the deletion is uncorroborated and shifting, and that her own destruction of the account has made it impossible to verify. Mot. at 14, 16, 19–20. Contrary to Plaintiff's contention, Resp. at 8, Hilton is not questioning her credibility "with no evidentiary basis." *Painter v. Atwood*, 2014 WL 1089694, at *5 (D. Nev. Mar. 18, 2014). Rather, Hilton provided a basis to establish willfulness—Plaintiff's decision to delete the Instagram account shortly before filing suit and her own record of contradictory statements and evasion in discovery. *See* Mot. at 19–20. That is more than sufficient to find intent. *See Torgersen v. Siemens Bldg. Tech., Inc.*, 2021 WL 2072151, at *4 (N.D. Ill. May 24, 2021) (finding intent where deleting party had unverifiable explanation for deletion, shifting explanations about whether and when counsel told him to preserve, and was otherwise evasive in discovery).

**B. Hilton was prejudiced by Plaintiff's deletion of her Instagram account.**

"Prejudice exists when spoliation prohibits a party from presenting evidence that is relevant to its underlying case." *Fast v. GoDaddy.com LLC*, 340 F.R.D. 326, 339 (D. Ariz. 2022). Hilton explained at length in its opening Motion that Plaintiff's social media is "not only relevant, it is critical" to whether and when she was trafficked, whether hotel staff could have observed indicia of trafficking, and her claimed damages. Mot. at 3–4, 14–17, 22–23. Indeed, that is precisely why Magistrate Judge DeMarchi ordered the parties to "confer to identify the subject matter categories for which [Plaintiff's] social media may contain relevant information, given the nature of [the] claimed harm and the time period or periods during which she experienced that harm." Apr. 16 Order 7, Dkt. No. 83; *see also id.* at 6 ("the relevant period for the production of social media content during the post-trafficking period is the time period that corresponds to the period when K.R.D. claims to have suffered harm and for which she claims damages as a result of Hilton's conduct"). Plaintiff has produced no medical records or other corroborating evidence of her alleged injuries, so her contemporaneous social media is among the only objective evidence of her condition and daily functioning. Mot. at 4, 12, 23. Indeed, Plaintiff herself admits that she used the deleted account to post about her "day-to-day life." Mot. at 11, 20.

The account's name also confirms its relevance. For a period of time after her trafficking purportedly ended, Plaintiff operated the account under the handle @sexy[Plaintiff's identity][1]—the same handle she shared alongside a boudoir photograph. Mot. Ex. F at 272:19–274:25; Resp. Ex. 2 at 275:9–24; Mot. Ex. R at JD(KRD)-18471–72; *see also* Mot. Ex. D at 2. None of Plaintiff's other social media accounts (which D.G. apparently did not object to) contain "sexy" in the name. That difference is why this account bears directly on Plaintiff's claimed damages, her credibility, and the nature, duration, and location of the alleged trafficking. Plaintiff's testimony that she never posted about trafficking or solicited sex on the account, Resp. at 2, 5, is exactly the kind of uncorroborated assertion that the deletion has made impossible to test. And even accepting that testimony as true, whatever was posted would still bear relevance to her claims. Posts, photographs, messages, and location tags from that period would show where Plaintiff was, who she was with, what she was doing, and how she presented herself publicly. That is direct evidence on whether, when, and where she was under a trafficker's control, and on the emotional distress she now claims. As a result, and as Hilton explained, the failure to have access to this critical evidence prejudices Hilton in preparing its defense. Mot. at 14–17, 22–23.

None of Plaintiff's counterarguments are availing. *First*, Plaintiff argues that "extrinsic evidence" confirms that the account was created in 2016 because cross-posts from Instagram to Facebook "did not start until 2016." Resp. at 5. But the Facebook account is not a reliable proxy. Plaintiff admitted in her deposition that she deleted Facebook content relating to her trafficker after his May 2016 arrest. Mot. Ex. F at 255:1–8. And the account contained relevant information regardless of when it was created—especially considering that Plaintiff initially claimed that she was trafficked at Hilton's property in 2016. *See Doe (K.R.D.) v. Hilton Worldwide Holdings Inc.*, 798 F. Supp. 3d 1082, 1087 (N.D. Cal. 2025).

*Second*, the deleted content is not duplicative of Plaintiff's other social media. Resp. at 6–7. Plaintiff's own explanation for the deletion refutes that contention. According to Plaintiff, D.G. "forced her to delete" the Instagram account "after they had a huge fight about it." *Id.* at 1, 8. Yet

---

[1] Hilton filed an Administrative Motion to Seal along with its Motion for Spoliation Sanctions. Dkt. No. 96. Here, Hilton redacts Plaintiff's social media handle and email address to protect her identity and refers to its previously-filed Motion to Seal.

Plaintiff did not delete her Facebook or Snapchat accounts. And if the Instagram content was merely duplicative of Facebook, there would have been no reason to delete only the Instagram account. Moreover, as Hilton explained, not all Instagram content was cross-posted to Facebook and Instagram-specific data—direct messages, comments, geotags, tagged accounts, follower lists, search and login history—does not exist in a Facebook export. Mot. at 16–17. Plaintiff offers nothing of substance in response. The volume of pages produced from other accounts says nothing about what was lost from the deleted Instagram account. Resp. at 2–3.

**C. Sanctions are warranted.**

Hilton moved for sanctions under Rule 37(e)(1) and (e)(2). Mot. at 12–13, 24–25. While this Court may choose either path, Hilton respectfully submits that dismissal is warranted.

**1. This Court should dismiss the case.**

Dismissal is appropriate where "'a pattern of deception and discovery abuse ma[kes] it impossible' for the district court to conduct a trial 'with any reasonable assurance that the truth would be available.'" *Valley Eng'rs Inc. v. Elec. Eng'g Co.*, 158 F.3d 1051, 1057 (9th Cir. 1998). Indeed, Plaintiff's own authority recognizes that terminating sanctions may be warranted "where a party has obviously engaged in deceptive practices during litigation, or where a court anticipates continued deceptive misconduct." Resp. at 12 (quoting *Colonies Partners, L.P. v. Cnty. of San Bernardino*, 2020 WL 1496444, at *11 (C.D. Cal. Feb. 27, 2020)). Both are present here.

**a.** Plaintiff has engaged in repeated deception. Plaintiff deleted the account on the eve of suit, concealed it in sworn discovery, and misrepresented its existence to the Court. And Plaintiff has also given irreconcilable accounts of its creation, use, and deletion. Mot. at 18–21. Because Plaintiff is the only source of information about what the account contained, and her representations have proven unreliable at every turn, no lesser sanction can restore confidence that the truth will be available at trial.

Moreover, Hilton has had to uncover every aspect of Plaintiff's misstatements and discovery violations. Specifically, Hilton discovered that Plaintiff's disclosed Instagram account was created in October 2024—the same month she filed this suit—contrary to her sworn response that she had used it since 2013. Mot. at 6–7. Only when confronted with that fact did Plaintiff

admit to a second, deleted account. *Id.* at 7. Hilton identified the "@sexy[Plaintiff's identity]" handle and the Snapchat account from its own review of Plaintiff's productions. *Id.* at 9, 12. Hilton identified that Plaintiff's productions did not comply with the Court's April 16 and May 13 orders. *Id.* at 6, 8, 21. And Hilton subpoenaed Meta, conferring with Meta and Plaintiff's counsel, in an effort to remedy the loss caused by the spoliation—without success. *Id.* at 9–10.

Plaintiff's response is that the production failures were her counsel's and her vendor's fault, and that the problems "were fixed as soon as they were discovered." Resp. at 2, 10. But these issues were "discovered" only because Hilton found and raised them. And counsel's conduct is directly relevant here. Rule 37 sanctions may be imposed on a party for discovery failures by its counsel even without a finding of bad faith. *See, e.g.*, *Hyde & Drath v. Baker*, 24 F.3d 1162, 1171 (9th Cir. 1994) (discussing sanctions for counsel for discovery violations and noting that the court has "not required a finding of bad faith on the part of the attorney before imposing sanctions under Rule 37"). Not one discovery violation in this case was self-reported. Each was uncovered only through Hilton's detailed and costly investigation.

**b.** Continued misconduct can be expected. Plaintiff and her counsel have continued to misrepresent the record. This includes Plaintiff's representations about her social media account (such as when it was created and why it was deleted), *see supra* Section II.A, and also about Hilton's arguments in its Motion (such as whether Hilton addressed Plaintiff's purported reasons for deletion), *see supra* Section II.A. Nor is Plaintiff correct that Hilton first disputed the deleted Instagram account's creation date in its Motion. Hilton sent Plaintiff multiple letters reminding her that her own verified interrogatory response claimed Instagram use dating back to 2013, Mot. Ex. M at 9; *see* Mot. Ex. A at 6, and confronted her with that response at her deposition. Mot. Ex. F at 268:22–269:22. Hilton only relied on the 2016 date in response to its Meta subpoena because Meta required the most precise information available about when the account was active, and the only information Hilton had was Plaintiff's own representation. Mot. at 9.[2]

---

[2] Plaintiff testified that she thought she created the deleted Instagram account with her [Plaintiff's identity]@gmail.com email address—an email account she admits she still controls—yet she has produced no account registration or other Meta correspondence from that inbox to substantiate her claimed 2016 creation date. Mot. Ex. F at 25:11–13, 28:6–8, 273:11–21; *see* Mot. Ex. S at 1–2; Mot. Ex. D at 2.

Nor has Plaintiff provided any comfort that there is "no reason to anticipate continued deceptive misconduct" because "all of KRD's other social media accounts have already been produced." Resp. at 13. At her August 25, 2026 deposition, Plaintiff disclosed for the first time two additional email accounts she maintained during the relevant trafficking and damages periods with data still available, neither of which had been collected or searched. Mot. at 11–12. As of the date of this filing, Plaintiff still has not produced responsive material from those accounts. In other words, the pattern continues.

**2. At a minimum, alternative sanctions should be awarded.**

Hilton explained why an adverse inference and attorneys' fees are also warranted. Mot. at 24–25. Plaintiff's only responses are procedural.

With respect to the adverse inference, she argues that one cannot issue because the account post-dated her trafficking. Resp. at 14. But her argument can be rejected outright because it depends entirely on crediting Plaintiff's last and ever-shifting account over her first verified statement—the very question her spoliation has made it impossible to resolve. Even now, Plaintiff cannot say whether the account was created in 2016 (which included her alleged trafficking period) or 2017. In any event, because the account also at least covered Plaintiff's alleged damages period, the Court may, at a minimum, presume the lost content would have been unfavorable on the timing and nature of the alleged trafficking. *Fast*, 340 F.R.D. at 354–55.

With respect to attorneys' fees, Plaintiff's only objection is that Hilton did not submit an itemization under Civil Local Rule 37-4(b). Resp. at 14–15. That objection is no barrier to a determination that fees are warranted. *See Guifu Li v. A Perfect Day Franchise*, 281 F.R.D. 373, 395 (N.D. Cal. 2012) (permitting counsel to "submit a supplemental declaration and accounting of the costs and fees" after finding sanctions were warranted). If this Court concludes that Hilton is entitled to the reasonable fees and costs incurred in uncovering and addressing the spoliation, the Court may direct Hilton to submit a declaration itemizing those fees and costs in compliance with Civil Local Rule 37-4(b) within 14 days of the Court's order.

Plaintiff's representation that she is a contingency-fee client is not a basis to excuse the destruction of evidence. Resp. at 15. Indeed, if that basis were valid, then contingency-fee

plaintiffs would never be on the hook for fees and costs. In any event, the Court may allocate responsibility for fees between Plaintiff and her counsel as it deems appropriate. Fed. R. Civ. P. 37(e)(1); *Cruz v. Nike Retail Servs., Inc.*, 346 F.R.D. 107, 119 (S.D. Cal. 2024) ("impos[ing] sanctions against counsel rather than defendant").

## III. CONCLUSION

Plaintiff asks the Court to resolve every question about the deleted Instagram account on the strength of her word alone. Her own record forecloses that request. For the reasons stated here and in its Motion, Hilton respectfully requests that the Court dismiss this action with prejudice or, in the alternative, issue an adverse inference instruction and/or award Hilton its reasonable attorneys' fees and costs, with an accounting to follow at the Court's direction.

Dated: November 17, 2026

Respectfully submitted,

JONES DAY

By: */s/ Nicole M. Perry*

Nicole M. Perry, Esq., *Pro Hac Vice*
JONES DAY
717 Texas Street, Suite 3300
Houston, TX 77002
Telephone: (832) 239-3939
Facsimile: (832) 239-3600
Email: nmperry@jonesday.com

Bethany K. Biesenthal, Esq., *Pro Hac Vice*
Allison L. McQueen, Esq., *Pro Hac Vice*
JONES DAY
110 North Wacker Drive, Suite 4800
Chicago, IL 60606
Telephone: (312) 782-3939
Facsimile: (312) 782-8585
Email: bbiesenthal@jonesday.com
amcqueen@jonesday.com

Andrew J. Clopton, Esq., *Pro Hac Vice*
JONES DAY
150 W. Jefferson, Suite 2100
Detroit, MI 48226
Telephone: (313) 733-3939
Facsimile: (313) 230-7997
Email: aclopton@jonesday.com

Emily F. Knox (State Bar No. 307035)
JONES DAY
555 California Street, 26th Floor
San Francisco, CA 94104
Telephone: (415) 626-3939
Facsimile: (415) 875-5700
Email: egoldbergknox@jonesday.com

Attorneys for Defendant
*Hilton Domestic Operating Company Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on November 17, 2026, a copy of the foregoing was filed using the CM/ECF system, which will effectuate service on all counsel of record.

*/s/ Nicole M. Perry*____________
Nicole M. Perry, Esq.

Attorney for Defendant
*Hilton Domestic Operating Company Inc.*